# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

United States of America, *Appellant*,

*v.*

Julien Giraud, Jr.; Julien Giraud, III, *Appellees.*

United States of America, *Appellant*,

*v.*

Cesar Humberto Pina, *Appellee.*

*On Appeal from the United States District Court for the District of New Jersey*,
Nos. 1:24-cr-768 & 2:25-cr-436, Sat Below: Judge Matthew W. Brann

## AMICUS BRIEF OF BIPARTISAN CURRENT AND FORMER MEMBERS OF CONGRESS IN SUPPORT OF NEITHER PARTY AND IN FAVOR OF AFFIRMANCE

MARK A. BERMAN, ESQ.
Hartman Doherty Rosa
Berman & Bulbulia LLP
433 Hackensack Avenue, Ste. 1002
Hackensack, NJ 07601
Telephone: (201) 441-9056

*Counsel of Record*

CAREY R. DUNNE
KEVIN TROWEL
MÓNICA FOLCH
ZACK GOLDBERG
MARTHA REISER
Free + Fair Litigation Group, Inc.
266 West 37th Street, 20th Floor
New York, NY 10018
Telephone: (646) 434-8604

JOSEPH T. BAIO
Joseph T. Baio LLC
240 Centre Street
New York, NY 10013
Telephone: (914) 523-2255

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................... 1

INTERESTS OF AMICI .......................................................................... 3

BACKGROUND ..................................................................................... 5

ARGUMENT .......................................................................................... 9

  I.  The Appointments Clause Mandates Congressional Involvement in Certain Executive Appointments ................................................. 9

  II.  The Appointment of U.S. Attorneys Is Subject to the Appointments Clause .......................................................................... 11

  III.  Congress's Authority under the Appointments Clause is Codified in Sections 541 and 546 of Title 28 ............................................. 12

  IV.  The Administration's Efforts to Keep Ms. Habba in Office Are Inconsistent with the Appointments Clause ................................... 14

CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bowsher v. Synar*,
478 U. S. 714 (1986) ............................................................................... 1

*Collins v. United States*,
14 Ct. Cl. 568 (1878) ............................................................................. 11

*Edmond v. United States*,
520 U.S. 651, 658 (1997) ..............................................1, 2, 9, 10, 11, 12

*Freytag v. Comm'r*,
501 U.S. 868 (1991) ................................................................................. 2

*Morrison v. Olson*,
487 U.S. 654 (1988) ................................................................................. 9

*N.L.R.B. v. Enter. Leasing Co. Se., LLC*,
722 F.3d 609 (4th Cir. 2013) ................................................................ 1, 2

*N.L.R.B. v. New Vista Nursing & Rehab.*,
719 F.3d 203 (3d Cir. 2013) ............................................................. 10, 15

*N.L.R.B. v. Noel Canning*,
573 U.S. 513 (2014) ................................................................................. 1

*Ryder v. United States*,
515 U.S. 177 (1995) ................................................................................. 2

*United States v. Baker*,
504 F. Supp. 2d 402 (E.D. Ark. 2007) .................................................. 11

*United States v. Baldwin*,
541 F. Supp. 2d 1184 (D.N.M. 2008) .................................................... 13

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) ................................................................. 11

*United States v. Garcia*,
No. 2:25-CR-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ......... 8

*United States v. Giraud*,
No. 1:24-CR-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ....................8, 15

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000) ................................................................11, 14

*United States v. Sotomayor Vazquez*,
69 F. Supp. 2d 286 (D.P.R. 1999) ....................................................13, 14

## United States Constitution

U.S. Const. art. II, § 2, cl. 2 ..............................................................*passim*

## Statutes

5 U.S.C. § 3345 et seq. ...........................................................................12

28 U.S.C. § 541 .........................................................................2, 12, 14

28 U.S.C. § 541(a)...................................................................................12

28 U.S.C. § 546 .........................................................2, 3, 12, 13, 14

28 U.S.C. § 546(a)...................................................................................13

28 U.S.C. § 546(c).........................................................................3, 6, 14

28 U.S.C. § 546(d) ...........................................................6, 8, 12, 13, 14

## Rules

Fed. R. App. P. 29(a).................................................................................1

## Other Authorities

Alina Habba (@USAttyHabba), X (July 24, 2025, 5:04 PM) .............................7, 8

Donald J. Trump (@realDonaldTrump), Truth Social
(March 24, 2025, 10:37 AM) ....................................................................5

The Federalist No. 47 (James Madison)......................................................1

The Federalist No. 76 (Alexander Hamilton)..............................................2

*In re Appointment of United States Attorney for the District of New Jersey*,
Standing Order 2025-03 (D.N.J. July 22, 2025) ....................................................6, 7

Nomination of Alina Habba for Department of Justice,
119th Congress (2025-2026), PN379-12, 119th Cong. (2025) .................................6

Senate Committee on the Judiciary, *Durbin Calls On Trump White House To
Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee
Executive Business Meeting* (May 15, 2025) ...........................................................11

**INTRODUCTION**[1]

The Constitution's core, government-structuring provisions "reflect the founding generation's deep conviction that 'checks and balances were the foundation of a structure of government that would protect liberty.'" *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, joined by Roberts, C.J., Thomas, J. and Alito, J.) (quoting *Bowsher v. Synar*, 478 U. S. 714, 722 (1986)).[2] The Founders believed that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny." The Federalist No. 47 (James Madison).

In the constitutional scheme of checks and balances, the requirement—found in the Appointments Clause—that the President submit nominations for "principal" and "inferior" officers for the "Advice and Consent of the Senate," U.S. Const. art. II, § 2, cl. 2, plays a crucial role. *See generally Edmond v. United States*, 520 U.S. 651, 658–666 (1997). Since the Founding, the Clause has created a "shared responsibility between the President and the Senate" concerning senior executive

---

[1] In accordance with Federal Rule of Appellate Procedure 29, all parties have consented to the filing of this amicus brief. *See* Fed. R. App. P. 29(a)(2). No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

[2] All internal quotation marks, alterations, and citations are omitted from case quotations.

branch officials, which acts "as a 'check upon a spirit of favoritism in the President,'" and "prevent[s] the appointment of 'unfit characters.'" *N.L.R.B. v. Enter. Leasing Co. Se., LLC*, 722 F.3d 609, 633 (4th Cir. 2013) (quoting The Federalist No. 76 (Alexander Hamilton)). "The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "it is among the significant structural safeguards of the constitutional scheme," *Edmond*, 520 U.S. at 659. "The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991).

Amici respectfully submit that the Administration's effort to retain Alina Habba as United States Attorney for the District of New Jersey without the advice and consent of the Senate violates the letter and the spirit of the Appointments Clause, and the statutes that codify the congressional authority described therein. *See* U.S. Const. art. II, § 2, cl. 2; 28 U.S.C. §§ 541, 546. Indeed, the Administration's machinations appear designed to circumvent the public hearing and accountability the Clause requires. *See, e.g.*, *Enter. Leasing Co. Se.,* 722 F.3d at 633. Amici take no position as to whether defendants in this or any other criminal matter are entitled to relief, but they respectfully urge the Court to hold

that the Administration's attempt to sidestep the Appointments Clause with respect to Ms. Habba is unconstitutional and otherwise unlawful.

## INTERESTS OF AMICI

Amici curiae are a bipartisan group of current and former members of Congress who, during their tenures, exercised the legislative powers vested in Congress by Article I of the Constitution and their authority under the Appointments Clause to establish the statutory structure for the appointment of certain executive branch officers. Amici participated in the consideration and passage of the Preserving United States Attorney Independence Act of 2007 (the "Act"), codified in 18 U.S.C. § 546, which restored the 120-day limit on interim appointments of United States Attorneys now codified in § 546(c). The Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law.

In enacting the statutory scheme at issue here, Congress acted pursuant to its explicit constitutional prerogative to "by Law vest the Appointment of" inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. These provisions codify the balance struck by the Framers between executive branch flexibility and legislative branch

oversight, ensuring that a critical law enforcement position is filled without undue delay while preserving the Senate's essential role in confirming those who serve beyond a short interim period.

Amici have a strong interest in ensuring that the federal courts interpret the statutory framework governing the appointment of United States Attorneys in a manner faithful to this constitutional design and the original intent of Congress in passing these critical appointment provisions. The Administration's recent actions to extend Ms. Habba's tenure as U.S. Attorney beyond the statutory limit, without Senate confirmation, implicates the very separation of powers concerns amici and Congress sought to address in 2007. Amici submit this brief not to advance the position of either party on the merits of the underlying criminal case, but to provide the Court with the legislative and constitutional context in which the relevant statutory scheme was enacted, and to underscore the structural principles at stake in the proper application of these provisions.

The current and former members of Congress in support of this brief are:

- Rep. Lloyd Doggett, Texas's 10th Congressional District, 1995–2005, Texas's 25th Congressional District, 2005–13, Texas's 35th Congressional District, 2013–23, and Texas's 37th Congressional District, 2023–Present.

- Rep. Wayne Gilchrest, Maryland's 1st Congressional District, 1991–2009.

- Rep. Stephen Lynch, Massachusetts's 9th Congressional District, 2001–13, and Massachusetts's 8th Congressional District, 2013 – Present.

- Rep. Frank Pallone, New Jersey's 3rd Congressional District, 1988–93, and New Jersey's 6th Congressional District, 1993–Present.

- Rep. Bennie Thompson, Mississippi's 2nd Congressional District, 1993–Present.

- Rep. Nydia Velázquez, New York's 12th Congressional District, 1993–2013, and New York's 7th Congressional District, 2013–Present.

## BACKGROUND

President Trump nominated Alina Habba to serve as U.S. Attorney for the District of New Jersey in a March 24, 2025 post on his social media website, Truth Social. He posted that "Alina Habba . . . will be our interim U.S. Attorney for the District of New Jersey . . . effective immediately!"[3] Attorney General Pamela Bondi subsequently executed Ms. Habba's interim appointment and made it effective as of March 28, 2025. (*See* No. 1:24-cr-768 (D.N.J.), Dkt. No. 108-1.)[4] On June 30, 2025, President Trump formally nominated Ms. Habba to serve as the

---

[3] Donald J. Trump (@realDonaldTrump), Truth Social (March 24, 2025, 10:37 AM), https://truthsocial.com/@realDonaldTrump/posts/114217913229258108.

[4] Amici cite here and elsewhere in this brief to the relevant district court dockets, rather than the Appendix submitted by the Government, because Volume II of the Government's Appendix is under seal.

U.S. Attorney for the District of New Jersey by transmitting her nomination to the Senate for its advice and consent.[5]  *See* U.S. Const. art II, § 2, cl. 2.

The duration of Ms. Habba's interim appointment was limited by statute and has now expired.  Specifically, 28 U.S.C. § 546(c) provides that her interim appointment was limited "until the earlier of" the Senate's confirmation of her nomination, or "the expiration of 120 days after [her] appointment by the Attorney General."  Although there is some uncertainty about whether Ms. Habba's 120-day term as interim U.S. Attorney began on March 24, 2025 (the day of Mr. Trump's social media post) or March 28, 2025 (the day Ms. Bondi appointed her to the interim position), the Senate has not confirmed her nomination and therefore her term has expired in either case.

Once Ms. Habba's appointment expired, the post of U.S. Attorney was vacant, and the district court was authorized to appoint an interim U.S. Attorney. Section 546(d) provides that, where, as here, "an [interim] appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 546(d).  On July 22, 2025, the district court exercised its authority under § 546(d) and appointed Ms. Habba's First Assistant, Desiree L. Grace, as interim United States Attorney.

---

[5] Nomination of Alina Habba for Department of Justice, 119th Congress (2025-2026), PN379-12, 119th Cong. (2025), https://www.congress.gov/nomination/119th-congress/379/12.

*See In re Appointment of United States Attorney for the District of New Jersey*,

Standing Order 2025-03 (D.N.J. July 22, 2025).  To account for the ambiguity

concerning the end date of Ms. Habba's term as interim U.S. Attorney, the district

court's order made Ms. Grace's appointment by the district court effective as of

"July 22, 2025 or 'upon the expiration of 120 days after appointment by the

Attorney General' of the Interim U.S. Attorney Alina Habba, whichever is later."

*Id.*

The Department of Justice responded by immediately terminating Ms.

Grace.  (*See* No. 1:24-cr-768 (D.N.J.), Dkt. No. 108–3.)  The Department then took

steps to reinstall Ms. Habba, notwithstanding the expiration of her interim

appointment.  Those maneuvers included:

(1)     the Trump Administration's withdrawal of Ms. Habba's nomination to the Senate to be U.S. Attorney;

(2)     Ms. Habba's resignation of her position as interim U.S. Attorney;

(3)     Ms. Bondi's appointment of Ms. Habba as a "Special Attorney to the Attorney General";

(4)     Ms. Bondi's appointment of Ms. Habba to the position of First Assistant to the U.S. Attorney for the District of New Jersey; and

(5)     Ms. Habba's automatic elevation from the position of First Assistant to the position of Acting U.S. Attorney under the Federal Vacancies Reform Act.

(*See generally* No. 1:24-cr-768 (D.N.J.), Dkt. No. 116 at 6–7.) Ms. Habba promptly confirmed in a social media post that she was now "the Acting United States Attorney for the District of New Jersey."[6]

Shortly thereafter, Defendants moved to dismiss their indictments or, in the alternative, to bar Ms. Habba—and any Assistant U.S. Attorney acting at her direction—from prosecuting their cases. (*See* No. 1:24-cr-768 (D.N.J.), Dkt. No. 99; *see* No. 2:25-cr-0436 (D.N.J), Dkt. No. 52.) Defendants argued that Ms. Habba's appointment as Acting U.S. Attorney was in violation of the Federal Vacancy Reform Act, 28 U.S.C. § 546(d), the Appointments Clause of the Constitution, and the Due Process Clause of the Constitution. (*See generally id.*) The Court denied Defendants' request to dismiss their indictments, but granted Defendants' request to disqualify Ms. Habba from prosecuting them and from supervising the prosecution of their cases. *See United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737, at *30 (D.N.J. Aug. 21, 2025).[7] The government then filed this appeal.

---

[6] Alina Habba (@USAttyHabba), X (July 24, 2025, 5:04 PM), https://x.com/USAttyHabba/status/1948489536507707793.

[7] On September 30, 2025, a district court judge in Nevada ordered the disqualification of Sigal Chattah, whom the Trump Administration attempted to keep in the position of U.S. Attorney for the District of Nevada using the same unlawful maneuvers the Administration used with respect to Ms. Habba. *See United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025).

ARGUMENT

## I. THE APPOINTMENTS CLAUSE MANDATES CONGRESSIONAL INVOLVEMENT IN CERTAIN EXECUTIVE APPOINTMENTS

The Appointments Clause provides that:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., art. II, § 2, cl. 2; *see also Edmond*, 520 U.S. 658–59. The Clause contemplates two kinds of officers: "principal" and "inferior" officers. *See Morrison v. Olson*, 487 U.S. 654, 670–71 (1988). Although the line between the two categories "is far from clear," *id*. at 671, the Supreme Court has explained that, in general, "inferior" officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. Factors relevant to this determination include whether the official in question is "subject to removal by a higher Executive Branch official," "empowered . . . to perform only certain, limited duties," and "limited in jurisdiction." *Morrison*, 487 U.S. at 671–72. The Clause makes clear that, for "principal" and "inferior" officers alike, "the *default*

manner of appointment" is Presidential nomination followed by Senate

confirmation.  *Edmond*, 520 U.S. at 660 (emphasis added).

      The Framers, with their extraordinary foresight, tempered the advice and

consent requirement with a certain amount of flexibility in the appointment of

inferior officers.  *See id*.  The final provision in the Appointments Clause—known

as the "Excepting Clause"—authorizes Congress to "vest the Appointment of such

inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of

Departments."  *Id.*  The "obvious purpose" of this flexibility "is administrative

convenience," which the Framers "deemed to outweigh the benefits of the more

cumbersome" advice and consent process that applies without exception to

principal officers.  *See id.*

      The role of the Appointments Clause as the "primary, or general, method of

appointment" is confirmed by the scope of the Recess Appointments Clause found

in Article II, section 2, clause 3.  *N.L.R.B. v. New Vista Nursing & Rehab.*, 719

F.3d 203, 228 (3d Cir. 2013).  The Appointments Clause "lacks any limitation on

when this power is operative—the president *always* has the power to fill vacancies

through nomination and the advice and consent of the Senate"—which "stands in

contrast to the power given to the president in the Recess Appointments Clause,

which explicitly allows him to fill vacancies unilaterally only during the Recess of

the Senate."  *Id.*  Read together, these clauses "reveal a constitutional preference

for divided power over the appointments process, which is deviated from only in specified situations." *Id.*

## II. THE APPOINTMENT OF U.S. ATTORNEYS IS SUBJECT TO THE APPOINTMENTS CLAUSE

"United States Attorneys are clearly 'officers' of the United States under the Appointments Clause," *United States v. Baker*, 504 F. Supp. 2d 402, 414 (E.D. Ark. 2007), and to amici's knowledge, every court to have considered the issue has held that U.S. Attorneys are "inferior" officers under the Appointments Clause. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 25–26 (1st Cir. 2000) ("United States Attorneys are inferior officers."); *United States v. Gantt*, 194 F.3d 987, 999–1000 (9th Cir. 1999) (same), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). This is not to suggest that U.S. Attorneys are "inferior" "in the sense of petty or unimportant," *Collins v. United States*, 14 Ct. Cl. 568, 574 (1878), but rather that their "work is directed and supervised at some level by others who are" principal officers, "appointed by Presidential nomination with the advice and consent of the Senate," *Edmond*, 520 U.S. at 663. As the First Circuit noted in *Hilario*, "Congress has ceded to the Attorney General plenary authority over United States Attorneys," and "[t]hey are subject to much closer supervision by superiors than" the officers held to be "inferior" by the Supreme Court in *Edmond*. 218 F.3d at 25.

Accordingly, U.S. Attorneys are subject to the constitution's "default" requirement of Presidential nomination and Senate confirmation. *Edmond*, 520 U.S. at 658–60.[8] Congress has codified its authority under the Appointments Clause in a statutory scheme applicable to the appointment of interim and acting U.S. Attorneys, *see* 5 U.S.C. §§ 3345–3349c; 28 U.S.C. §§ 541, 546, but it has so far declined to exercise its authority under the Appointments Clause to delegate final appointment authority for U.S. Attorneys to the President, the judiciary, or to the Attorney General, *see* U.S. Const., art. II, § 2, cl. 2.

## III. CONGRESS'S AUTHORITY UNDER THE APPOINTMENTS CLAUSE IS CODIFIED IN SECTIONS 541 AND 546 OF TITLE 28

Congress has codified its constitutional authority under the Appointments Clause in the United States Code. Section 541(a) of Title 28 confirms the "default" rule under the Clause: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). In § 546(d), Congress has also codified the longstanding practice—dating to 1863—of vesting authority to appoint an interim

---

[8] During President Trump's first term as President, he nominated 85 U.S. Attorneys and all were moved through the Senate Judiciary Committee and confirmed by the Senate. *See* U.S. Senate Committee on the Judiciary, *Durbin Calls On Trump White House To Honor Blue Slip Rule For U.S. Attorneys During Senate Judiciary Committee Executive Business Meeting* (May 15, 2025), https://www.judiciary.senate.gov/press/dem/releases/durbin-calls-on-trump-white-house-to-honor-blue-slip-rule-for-us-attorneys-during-senate-judiciary-committee-executive-business-meeting.

U.S. Attorney in the federal courts. *See generally United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001) (discussing Appointments Clause and history of U.S. Attorney appointments); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1191 (D.N.M. 2008) (same). Indeed, the practice codified in § 546(d) was the *only* mechanism by which an interim U.S. Attorney could be appointed from 1863 to 1995. Section 546(a) and (c) reflect Congress's 1995 decision to grant limited authority to the Attorney General to appoint an interim U.S. Attorney, but only so long as the appointee has not previously been rejected by the Senate during the advice and consent process and serves no longer than 120 days. *See* 28 U.S.C. §§ 546(a), (c); *see also Sotomayor Vazquez*, 69 F. Supp. 2d at 295 (discussing authority granted to Attorney General in 1995).

The provisions enacted in § 546 reinforce and codify the allocation of constitutional authority described in the Appointments Clause. The appointment powers under § 546 "are permissive, and the President, with the advice and consent of the Senate, at all times retains the power to essentially veto" the interim U.S. Attorney—whether appointed by the district court or the Attorney General—"and appoint someone of his choosing." *Baldwin*, 541 F. Supp. 2d at 1210. They also "ensure[] that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power

under 28 U.S.C. § 541" and his constitutional power under the Appointments

Clause. *Sotomayor Vazquez*, 69 F. Supp. 2d at 295.

## IV. THE ADMINISTRATION'S EFFORTS TO KEEP MS. HABBA IN OFFICE ARE INCONSISTENT WITH THE APPOINTMENTS CLAUSE

The Administration's attempt to retain Ms. Habba as the U.S. Attorney

without presenting her nomination to the Senate for advice and consent, and

therefore without the kind of public accountability envisioned by the Founders, is

inconsistent with the Appointments Clause.  Only Congress has the constitutional

authority to establish procedures for the appointment of inferior officers, including

U.S. Attorneys, short of advice and consent.  Article II expressly provides that

Congress "may by Law vest the Appointment of [United States Attorneys], as they

think proper, in the President alone, in the Courts of Law, or in the Heads of

Departments."  U.S. Const. art. II, § 2, cl. 2.  In exercising this constitutional

authority, Congress has delegated some of its authority to the Attorney General and

the district courts, successively, but it has specifically limited the maximum term a

person selected by the Attorney General may serve on an interim basis to 120 days.

*See* 28 U.S.C. § 546; *Hilario*, 218 F.3d at 29 (rejecting constitutional challenge to

§ 546(d)).[9]  Even if, as the district court concluded, the Federal Vacancies Reform

---

[9] The 120-day limit established by § 546(c)—and the absence of any such limit in § 546(d)—is plainly "deliberate, rather than serendipitous, especially in view of the contrast between adjacent sections of a single statute."  *Hilario*, 218 F.3d at 23.

Act ("FVRA") can serve as "an alternative means of temporary appointment" after the 120-day period expires, that is only true where the individual appointed is statutorily eligible to be appointed under the FVRA. *See Giraud*, 2025 WL 2416737, at \*12–13. That was not the case for Ms. Habba. *See id.* at 13.

The Administration's maneuvers to keep Ms. Habba in place beyond the 120 days permitted by statute are an attempt to nullify the limitations that Congress established in the exercise of its authority under the Appointments Clause. For a federal court to endorse these efforts "would eviscerate the divided-powers framework" that the Appointments Clause requires. *New Vista Nursing & Rehab.*, 719 F.3d at 230. Just as the Recess Appointments Clause must not be construed to "swallow the rule of the Appointments Clause," *id.*, the statutory scheme that codifies Congress's constitutional authority under the Appointments Clause should not be construed to eliminate the Senate's essential role in providing advice and consent concerning Ms. Habba.

## CONCLUSION

Amici respectfully submit that the Court should resolve the issues presented in this matter consistent with the allocation of constitutional authority under the

Appointments Clause and, therefore, to affirm the order entered by the district court.

Respectfully submitted,

Dated: October 6, 2025

*/s/ Mark A. Berman*
Mark A. Berman, Esq.
HARTMANN DOHERTY ROSA
BERMAN & BULBULIA LLP
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
Telephone: (201) 441-9056
mberman@hdrbb.com

*Counsel of Record*

Carey R. Dunne
Kevin Trowel
Mónica Folch
Zack Goldberg
Martha Reiser
FREE AND FAIR LITIGATION GROUP, INC.
266 W. 37th St., 20th Floor
New York, NY 10018
Telephone: (646) 434-8604
carey@freeandfair.org
kevin@freeandfair.org
monica@freeandfair.org
zack@freeandfair.org
martha@freeandfair.org

Joseph T. Baio
JOSEPH T. BAIO LLC
240 Centre Street
New York, NY 10013
Telephone: (914) 523-2255
josephtbaiolaw@icloud.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32.  It contains 3,477 words.

The text of the electronic brief is identical to the text in the paper copies.

At least one of the attorneys whose names appear on this brief is a member of the bar of this Court.

The electronic version of this brief has been scanned for viruses using VirusTotal and no virus was detected.

_____ /s/ Mark A. Berman _____