Nos. 25-2635 & 25-2636

IN THE

# United States Court of Appeals
# for the Third Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JULIEN GIRAUD, JR., JULIAN GIRAUD III, CESAR HUMBERTO PINA

*Defendants-Appellees*

On Appeal from the United States District Court
for the District of New Jersey,
Nos. 1:24-cr-768, 2:25-cr-436 (Brann, C.J. (M.D. Pa.))

**BRIEF FOR AMICUS CURIAE
ASSOCIATION OF CRIMINAL DEFENSE LAWYERS OF NEW JERSEY
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

JAMES I. PEARCE†
SAMANTHA BATEMAN
MARY L. DOHRMANN††
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
1717 K St NW, Suite 1120
Washington, D.C. 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 6, 2025                    *Counsel for Amicus Curiae*

† *Admitted only in New York and North Carolina; practicing under
the supervision of D.C. Bar Members*

†† *Admitted only in New York; practicing under the supervision of
D.C. Bar Members*

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae*, the Association of Criminal Defense Lawyers of New Jersey, is not a corporate entity and is not owned in whole or in part by any corporate entity.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................... iii

INTEREST OF THE *AMICUS CURIAE*.......................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT................................2

STATEMENT OF THE CASE....................................................................4

I.  LEGAL BACKGROUND .......................................................................4

II. FACTUAL BACKGROUND ...................................................................5

ARGUMENT ...........................................................................................7

I.  UNITED STATES ATTORNEYS EXERCISE EXTRAORDINARY AUTHORITY AND DISCRETION........................................................ 8

II. THE ATTORNEY GENERAL'S JULY 24 ORDER WAS UNLAWFUL.......................................................................................10

    A.    Neither Section 541 Nor Section 546 Supports Ms. Habba's Appointment .................................................. 11

    B.    The Attorney General's Purported Designation of Ms. Habba As A "Special Attorney" And Invocation of the Federal Vacancies Reform Act Does Not Make Ms. Habba The Acting U.S. Attorney ................................................ 13

    C.    The Attorney General Cannot Delegate Ms. Habba The Authority To Lead The U.S. Attorney's Office ...........................23

    D.    Accepting the Government's Theory Thwarts Senate Review And Raises Constitutional Concerns............................ 28

CONCLUSION ......................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ewing v. Mytinger & Casselberry,*
339 U.S. 594 (1950) ................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ...............................................................16

*Freytag v. Comm'r,*
501 U.S. 868 (1991) ............................................................3, 7

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v.
U.S. Dep't of Homeland Sec.,*
107 F.4th 1064 (9th Cir. 2024) .......................................... 26

*Hewitt v. United States,*
145 S. Ct. 2165 (2025) ................................................... 22, 23

*In re Grand Jury Proc.,*
671 F. Supp. 5 (D. Mass. 1987) .......................................... 30

*In re Persico,*
522 F.2d 41 (2d Cir. 1975) .................................................. 15

*INS v. Chadha,*
462 U.S. 919 (1983) ........................................................... 7-8

*Kajmowicz v. Whitaker,*
42 F.4th 138 (3d Cir. 2022) ................................................ 26

*Knight v. Comm'r,*
552 U.S. 181 (2008) ............................................................ 14

*L.M.-M. v. Cuccinelli,*
442 F. Supp. 3d 1 (D.D.C. 2020) ............................. 19, 21, 29

*Morrison v. Olson,*
487 U.S. 654 (1988) .............................................................. 8

*N.L.R.B. v. New Vista Nursing and Rehab.,*
719 F.3d 203 (3d Cir. 2013) ............................................... 29

*N.L.R.B. v. Noel Canning,*
573 U.S. 513 (2014) ......................................................21, 28

*N.L.R.B. v. SW Gen., Inc.,*
  580 U.S. 288 (2017) .........................................................*passim*

*Seila L. LLC v. Consumer Fin. Prot. Bureau,*
  591 U.S. 197 (2020) ..................................................................16

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001) ....................................................................27

*United States v. Armstrong,*
  517 U.S. 456 (1996) .................................................................. 9

*United States v. Arthrex, Inc.,*
  594 U.S. 1 (2021) ..................................................................... 29

*United States v. Batchelder,*
  442 U.S. 114 (1979) ................................................................. 9

*United States v. Garcia,*
  No. 2:25-CR-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) ..*passim*

*United States v. Serubo,*
  604 F.2d 807 (3d Cir. 1979) ..................................................... 9

*United States v. Trump,*
  740 F. Supp. 3d 1245 (S.D. Fla. 2024) .....................................13

**Statutes & Other Authorities:**

U.S. Const. art. II, § 2, cl. 2 ......................................................2, 4

5 U.S.C. § 3345 ............................................................... 5, 16, 27

5 U.S.C. § 3345(a) ................................................................ 17, 18

5 U.S.C. § 3345(a)(1) ...........................................................*passim*

5 U.S.C. § 3345(a)(2) ............................................... 5, 16, 18, 30

5 U.S.C. § 3345(a)(3) ............................................... 5, 16, 18

5 U.S.C. § 3345(a)(3)(A) .............................................................19

5 U.S.C. § 3345(b) .....................................................................16

# TABLE OF AUTHORITIES—Continued

Page

5 U.S.C. § 3345(b)(1) ............................................... 19, 21, 22

5 U.S.C. § 3345(b)(1)(A) ............................................. 19, 22

5 U.S.C. § 3347 ............................................................. 11, 24

5 U.S.C. § 3347(a)(1) ........................................................... 24

5 U.S.C. § 3347(a)(2) ........................................................... 24

5 U.S.C. § 3347(b) ........................................................ 25, 26

5 U.S.C. § 3347(b)(1) ............................................................ 25

28 U.S.C. § 509 ...................................................13, 24, 25, 26

28 U.S.C. § 510 ...................................................13, 24, 25, 26

28 U.S.C. § 515 .............................................................. *passim*

28 U.S.C. § 515(a) ..................................................................14

28 U.S.C. § 515(b) .................................................................13

28 U.S.C. § 541 ......................................................... 14, 27, 29

28 U.S.C. § 541(a) ............................................................. 4, 12

28 U.S.C. § 543 .......................................................................14

28 U.S.C. § 546 ............................................................. *passim*

28 U.S.C. § 546(a) ......................................................... *passim*

28 U.S.C. § 546(b) .............................................................. 5, 23

28 U.S.C. § 546(c) .....................................................................5

28 U.S.C. § 546(c)(2) ........................................................... 28

28 U.S.C. § 546(d) ......................................................... *passim*

28 U.S.C. § 547(1) ................................................................... 9

44 Cong. Rec. 4544 (1909) ...................................................15

An Act to Establish the Department of Justice, ch. 150, sec. 17, 16
    Stat. 162 (1870) ............................................................15

Chicago Manual of Style § 5.132 (17th ed. 2017) ......................................... 23

*Designation of Acting Associate Attorney General*,
    25 Op. O.L.C. 177 (2001) ................................................................ 20

*Guidance on Application of Federal Vacancies Reform Act of 1998*,
    23 Op. O.L.C. 60 (1999) ............................................................. 20

H.R. Rep. No. 59-2901 (1906) ...................................................... 15

Judiciary Act, ch. 20, sec. 35, 1 Stat. 73 (1789) ........................................ 15

Letter from Victor S. Rezendes, Managing Director, Strategic
    Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan
    Burton (Dec. 7, 2001) ................................................................. 20

Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney
    General, Office of Legal Counsel, to William P. Tyson, Director,
    Executive Director, Executive Office of United States Attorneys 3
    (Nov. 13, 1986) ................................................................. 12, 30

Motion to Dismiss, *United States v. Garcia*, No. 25-CR-655, ECF
    No. 21 (C.D. Cal.) (filed Aug. 29. 2025) .................................................. 21

R. Jackson, *The Federal Prosecutor*, Address Delivered at the
    Second Annual Conference of United States Attorneys (April 1,
    1940) ................................................................. 10

Rodney Huddleston & Geoffrey Pullum, The Cambridge Grammar
    of the English Language (2002) ............................................................. 23

S. Rep. 105-250 ................................................................. 17, 18, 25

Senate Rule XXXI(6) ................................................................. 23

Temporary Filling of Vacancies in the Office of United States
    Attorney, 27 Op. O.L.C. 149 (2003) .......................................................... 27

The Federalist No. 76 (J. Cooke ed. 1961) ..................................................... 8

## INTEREST OF THE *AMICUS CURIAE*[1]

*Amicus curiae*, the Association of Criminal Defense Lawyers of New Jersey, is the primary organized voice of the New Jersey criminal defense bar. *Amicus* has more than 500 members who represent hundreds of defendants in the District of New Jersey directly affected by a ruling in this case.

Given the New Jersey criminal defense bar's extraordinary interest in the outcome of this matter, *amicus* was granted leave by the district court to file briefing and participate in oral argument below.

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity of person, aside from *amicus curiae* and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Alina Habba is ineligible to act as the United States Attorney for the District of New Jersey. The Attorney General appointed Ms. Habba in March to be the interim United States Attorney under 28 U.S.C. § 546, but that term has expired. She was nominated in June by the President to serve permanently as the U.S. Attorney, but the Senate did not act. The district court for the District of New Jersey refused to reappoint Ms. Habba, instead appointing Desiree Grace, who had been serving as the First Assistant U.S. Attorney.

Determined to keep Ms. Habba as U.S. Attorney, the Attorney General did something unprecedented: She purported to: (i) make Ms. Habba a "Special Attorney" under 28 U.S.C. § 515; (ii) designate Ms. Habba as the First Assistant (having already removed Ms. Grace); and then (iii) assert that Ms. Habba was the acting U.S. Attorney under the Federal Vacancies Reform Act ("FVRA"). To our knowledge, no prior Attorney General has ever attempted this.

This Court should reject the Attorney General's convoluted attempt to circumvent the law. The Appointments Clause, U.S. Const. art. II, § 2, cl. 2, provides Congress sole authority to define the offices that the President may fill and the method of their appointment. Congress exercised that authority

and enacted detailed provisions delineating who may serve as a U.S. Attorney in a permanent or acting capacity. It is inconceivable that Congress intended to empower the executive to sidestep these comprehensive statutes—and install whomever the President wants—in such a roundabout manner. The same is true even if the government describes Ms. Habba not as the acting U.S. Attorney, but instead as performing functions of the office under authority delegated by the Attorney General.

The legal issue presented by Ms. Habba's unlawful appointment is no technical matter, and the practical stakes extend far beyond this case. The government's machinations here undermine the rights of thousands of criminal defendants and 9.5 million residents subject to the jurisdiction of the top federal prosecutor for New Jersey. *See Freytag v. Comm'r*, 501 U.S. 868, 880 (1991) ("The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic."). Acutely conscious that the "manipulation of official appointments" was a "powerful weapon" in the Crown's hands, *id.* at 883 (citation omitted), the Framers provided Congress, not the executive branch, the role of defining offices and appointment methods.

This Court should enforce the statutes Congress passed with respect to the awesome position of U.S. Attorney—an office that wields great

responsibilities for securing justice and protecting civil liberties—by concluding that Ms. Habba is barred from serving as the acting U.S. Attorney in this or any other case in the District of New Jersey. It should also reject the government's alternative theory that Ms. Habba can exercise power delegated directly from the Attorney General.

## STATEMENT OF THE CASE

### I. LEGAL BACKGROUND

The Appointments Clause provides that federal officers shall be appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. But "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* By law, the President must nominate, and the Senate must confirm, all U.S. Attorneys. 28 U.S.C. § 541(a).

To address circumstances in which a U.S. Attorney position is vacant, Congress enacted 28 U.S.C. § 546. Under Section 546, the Attorney General may appoint an interim U.S. Attorney when a vacancy arises, § 546(a), so long as the Attorney General's appointee is not a person that the President nominated to the same office and to whom "the Senate refused to give advice and consent," § 546(b). An interim U.S. Attorney appointed under Section

546(a) serves until either the "qualification" of a presidentially appointed and Senate-confirmed nominee or for 120 days. § 546(c). If the 120 days expires, the district court in the relevant judicial district "may appoint" a U.S. Attorney "to serve until the vacancy is filled." § 546(d).

Congress has also long supplied the President with "limited authority to appoint acting officials to temporarily perform the functions . . . without first obtaining Senate approval" in an office that otherwise requires presidential appointment and Senate confirmation.[2] *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017). The current law, enacted in 1998, is the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345 *et seq.* ("FVRA"), which identifies three types of government officials who may perform acting service in a PAS office, *see* § 3345(a)(1)-(3). The FVRA also prohibits any person otherwise qualified to serve as an acting officer "if the President has nominated them to fill the vacant office permanently." *SW Gen.*, 580 U.S. at 293.

## II.  FACTUAL BACKGROUND[3]

On March 3, John Giordano was named interim U.S. Attorney under 28 U.S.C. § 546(a). On March 24, the President posted on social media that

---

[2] Such offices are referred to as "PAS" offices.

[3] The facts are drawn from the district court's recitation. *See* ECF No. 116 at 1-7.

Ms. Habba would replace Mr. Giordano as interim U.S. Attorney "effective immediately." Four days later, on March 28, the Attorney General appointed Ms. Habba U.S. Attorney under 28 U.S.C. § 546(a). On June 30, while Ms. Habba was still serving as interim U.S. Attorney, the President nominated her as U.S. Attorney. As Ms. Habba's interim term was set to expire, on July 22, the district court judges in New Jersey appointed then-First Assistant Desiree Grace as interim U.S. Attorney under 28 U.S.C. § 546(d) effective that day or "upon the expiration of 120 days after appointment by the Attorney General." In communications sent on July 22 and on July 26, the Department of Justice announced that Ms. Grace had been removed from the interim U.S. Attorney position and the Department entirely, and that Ms. Habba's 120-day term under Section 546 had not expired.

On July 24, three things happened. First, Ms. Habba's U.S. Attorney nomination was withdrawn. Second, she resigned as interim U.S. Attorney. Third, in a single order, the Attorney General (i) appointed Ms. Habba as a "Special Attorney to the Attorney General" under 28 U.S.C. § 515; (ii) designated Ms. Habba as the "First Assistant United States Attorney" for New Jersey; and (iii) stated that Ms. Habba "will have authority to serve" as acting U.S. Attorney "upon a vacancy in that office" under the Federal Vacancies Reform Act. *See* ECF No. 108-7.

Since March, Ms. Habba has been exercising the authority of a U.S. Attorney for the District of New Jersey, including issuing press releases and signing indictments as either the "Acting U.S. Attorney" or the "Acting U.S. Attorney and Special Assistant to the United States Attorney General." At the time the district court disqualified Ms. Habba in August, over 2,000 individuals were being prosecuted by Ms. Habba's office, with more than 600 in custody. ECF No. 136 at 5.

## ARGUMENT

"[T]he power of appointment to offices was deemed the most insidious and powerful weapon of eighteenth century despotism." *Freytag*, 501 U.S. at 883 (citation modified). The Framers had "lived under a form of government that permitted arbitrary governmental acts to go unchecked" and "recognized the serious risk for abuse and corruption posed by permitting one person to fill every office in the Government." *SW Gen., Inc.*, 580 U.S. at 317 (Thomas, J., concurring) (first quoting *INS v. Chadha*, 462 U.S. 919, 959 (1983); and then citing The Federalist No. 76, at 513 (J. Cooke ed. 1961)). The Framers thus crafted the Appointments Clause to empower Congress to define the duties of officers; provide the Senate the critical role in confirming the appointment of all principal officers; and allow Congress

to vest the appointment of inferior officers in the President, the heads of department, or the Courts.

Congress has required Senate approval for U.S. Attorney appointments and restricted who may serve as a U.S. Attorney temporarily in the case of a vacancy. Under the laws that Congress has enacted, Ms. Habba is disqualified from serving as U.S. Attorney on an acting or interim basis. She is also ineligible to perform as though she were the U.S. Attorney by acting under authority delegated from the Attorney General.

## I. UNITED STATES ATTORNEYS EXERCISE EXTRAORDINARY AUTHORITY AND DISCRETION

It is critical that the Court fully enforce the Appointments Clause in this case: United States Attorneys are precisely the kind of extraordinarily mighty officers that prompted the Framers to adopt the Appointments Clause in the first place.

United States Attorneys exercise the "vast power" and "immense discretion" of a prosecutor at the highest level. *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). They decide how "to enforce the Nation's criminal laws," and courts afford "the presumption of regularity" to their "prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted); *see* 28 U.S.C. § 547(1) (duties of U.S. Attorneys).

To be sure, the defense bar and the courts play a critical role in protecting against prosecutorial abuse once a case has been filed. But "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion" alone. *United States v. Batchelder*, 442 U.S. 114, 124 (1979). Indeed, "grand jury proceedings are secret, Ex parte[,] and largely under the control of the federal prosecutor." *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979). In that setting, "the prosecutor operates without the check of a judge or a trained legal adversary, and [is] virtually immune from public scrutiny." *Id.* at 817. As this Court has explained, there is "great" "potential" that the prosecutor can "abuse [] the grand jury process", "and the consequences of a mistaken indictment" are "serious" such that "the obligation of the judiciary to protect against even the appearance of unfairness" is "correspondingly heightened." *Id.* In the case of less serious offenses where the Fifth Amendment's Grand Jury Clause does not apply, a prosecutor may charge someone directly in court by information, making allegations publicly, without even the involvement of a grand jury. *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950) (noting the "impact" of an "indictment" or "information" "on the reputation or liberty of a man" and the "incalculable" "harm" caused "by the mere institution of proceeding").

In an address to U.S. Attorneys, then-Attorney General Robert H. Jackson identified "the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted."  R. Jackson, *The Federal Prosecutor*, Address Delivered at the Second Annual Conference of United States Attorneys (April 1, 1940). One judge in the District of New Jersey has already raised specific concerns about the U.S. Attorney's Office under Ms. Habba's leadership.  *See United States v. Baraka*, Case No. 25-MJ-11131, ECF No. 15 (D.N.J.) (May 21, 2025) (prosecution's conduct "suggests a failure to adequately investigate, to carefully gather facts, and to thoughtfully consider the implications of your actions before wielding your immense power").

## II.    THE ATTORNEY GENERAL'S JULY 24 ORDER WAS UNLAWFUL

The Attorney General's action in this case is precisely the type of executive-branch aggrandizement against which the Appointments Clause protects.  As the district court correctly concluded, Congress did not cede authority to the executive branch to appoint whomever it wants—for whatever duration—to the awesome position of U.S. Attorney.

First, the Attorney General cannot use the combination of the FVRA and Section 515 to appoint anyone to be an acting U.S. attorney.  The Attorney General purported to: (i) appoint Ms. Habba as a "Special Attorney"

under Section 515; (ii) designate her the First Assistant U.S. Attorney; and (iii) authorize her as the acting U.S. Attorney "upon a vacancy in that office" under the FVRA. *See* ECF No. 108-7. But text, structure, and history indicate Section 515 is a narrow provision that allows the appointment of special attorneys for special cases—not an expansive method to appoint acting U.S. Attorneys. And the government's position makes a hash of the FVRA's carefully structured limits on who may serve in an acting capacity.

Second, the Attorney General cannot circumvent the FVRA by delegating authority to Ms. Habba. The text of the FVRA is clear that it is, with exceptions not relevant to this case, the "exclusive" route for appointing acting officers. 5 U.S.C. § 3347. The government's contrary interpretation flouts that plain text, undermines the FVRA's purpose, and risks rendering the FVRA surplusage.

Taken together, the government's misreading of Section 515 and the FVRA and its faulty delegation theory raise serious constitutional concerns.

### A. Neither Section 541 Nor Section 546 Supports Ms. Habba's Appointment

As a threshold matter, it is important to note the powers the executive branch does possess to appoint permanent and temporary U.S. attorneys that the government is not invoking in this case. These provisions underscore just how unusual the government's actions are.

Section 541 permits the President to nominate a U.S. Attorney. The President previously nominated Ms. Habba as U.S. Attorney under Section 541(a), but the Senate did not confirm her to that position, and the President later withdrew the nomination. Meanwhile, Section 546(a) allows the Attorney General to appoint certain persons as interim U.S. Attorneys for a period of 120 days. But the government does not rely on that provision now.[4] *See* ECF No. 108-7.

---

[4] Ms. Habba was previously appointed under Section 546(a). Several factual and legal questions surround the timing and validity of that appointment. If Section 546 contemplates only the appointment of a single person for a single 120-day term, *see* Memorandum of Samuel A. Alito, Jr., Deputy Assistant Attorney General, Office of Legal Counsel, to William P. Tyson, Director, Executive Director, Executive Office of United States Attorneys 3 (Nov. 13, 1986) ("Alito Memo"), then Ms. Habba was ineligible following Mr. Giordano's appointment. If Section 546 allows multiple appointments but can extend no longer than 120 days in total, then Ms. Habba's appointment would have ended on July 1, 2025. *See* ECF No. 121 at 9-11; *see* Appx57 58 (district court adopting that interpretation). If Section 546 permits Ms. Habba to serve for 120 days from the date of her appointment, it is unclear whether that appointment began on March 24 or March 28. To resolve the issue on appeal—"whether Ms. Habba's continuing participation in these prosecutions is valid under the Federal Vacancies Reform Act or by virtue of her appointment as Special Attorney," Order (Sept. 9, 2025)—the Court need not address those questions.

### B. The Attorney General's Purported Designation of Ms. Habba As A "Special Attorney" And Invocation of the Federal Vacancies Reform Act Does Not Make Ms. Habba The Acting U.S. Attorney

The government instead invokes a novel legal theory that combines the Attorney General's power to appoint and designate a "Special Attorney" under 28 U.S.C. § 515 with its reading that Ms. Habba would, because of her own resignation as the interim U.S. Attorney, become the acting U.S. Attorney under the FVRA. The Court should reject that cynical effort to manipulate the appointment process.

1. The Attorney General's use of Section 515 effectively to appoint Ms. Habba as the acting U.S. Attorney for the District of New Jersey is inconsistent with that provision's text, purpose, and history, as well as the larger statutory scheme governing U.S. Attorney appointments.[5]

Start with text. Section 515 enables the Attorney General to appoint "special attorney[s]" or "special assistant[s]," § 515(b), and to empower them to "conduct any kind of legal proceeding, civil or criminal . . . *which United States attorneys are authorized by law to conduct*," § 515(a) (emphasis added). By granting the Attorney General the authority to appoint a "special

---

[5] The order also cites 28 U.S.C. §§ 509 and 510, but neither Section 509 nor Section 510 supplies "an officer-appointing power." *See United States v. Trump*, 740 F. Supp. 3d 1245, 1266 (S.D. Fla. 2024).

attorney" or a "special assistant" with powers analogous to a duly-authorized U.S. Attorney, Congress necessarily distinguished those "special" positions from the U.S. Attorney. Congress "easily could have" said in Section 515 that an Attorney-General-appointed "special attorney" could serve "as" a U.S. Attorney, and it "presumably would have" if it intended the result the government seeks here. *Knight v. Comm'r*, 552 U.S. 181, 188 (2008).

Context leads to a similar conclusion. Congress has legislated a default rule of presidential nomination and Senate confirmation (in Section 541), a U.S. Attorney-specific vacancy provision (in Section 546), and a broader interstitial mechanism for addressing executive-branch vacancies that can be applied to U.S. Attorneys (in the FVRA). Congress has also authorized the Attorney General to appoint special attorneys to assist U.S. Attorneys. *See* 28 U.S.C. § 543. But what Congress has not done is empower the Attorney General to appoint a special attorney under Section 515 and orchestrate a series of removals and resignations to transform that special attorney—to whose nomination under Section 541 the Senate refused to consent and who is not eligible under Section 546, *see supra* at 11-12, or the FVRA, *see infra* at 16-23—into an acting U.S. Attorney. Abiding that result here would almost certainly fuel future efforts at circumvention. Indeed, the executive appears to have adopted a similar approach in other judicial districts, leading at least

one other district court (so far) to reject the government's theory. *See United States v. Garcia*, No. 2:25-CR-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025).

Section 515's history confirms its narrow purpose. The U.S. Attorney position is venerable and was established as the "district attorney" shortly after the founding under the 1789 Judiciary Act. *See* Judiciary Act, ch. 20, sec. 35, 1 Stat. 73, 92-93 (1789). Not until 1870—when creating the Department of Justice—did Congress empower the Attorney General to appoint assistants for herself and for district attorneys. *See* An Act to Establish the Department of Justice, ch. 150, sec. 17, 16 Stat. 162, 164-65 (1870). Congress intended the Attorney General to use this authority where necessary to "employ special counsel in special cases." *See* H.R. Rep. No. 59-2901, at 2 (1906). It was never intended to displace the longstanding separate regime for the appointment and operation of U.S. Attorneys. Indeed, although "Attorneys General [have] made extensive use of special attorneys," *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975), including to prosecute U.S. Attorneys, *see* 44 Cong. Rec. 4544 (1909), the July 24 order appears to be the first time an Attorney General has used the special-attorney appointment provision in Section 515 or its predecessors to install an acting U.S. Attorney. *Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197,

220 (2020) ("Perhaps the most telling indication of [a] severe constitutional problem' with an executive entity 'is [a] lack of historical precedent' to support it.") (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010)).

2.  The government's theory also relies on a flawed reading of the FVRA. That law provides that where a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of his office" 5 U.S.C. § 3345, the "first assistant to the office of such officer" temporarily fills the vacancy to "perform the functions and duties of the office . . . in an acting capacity," *id.* Although first assistants "automatically assume acting duties" under Section 3345(a)(1), *SW Gen.*, 580 U.S. at 305, the FVRA provides that "notwithstanding" that default rule, "the President (and only the President)" may fill the vacant office—but only with either a different PAS officer or a senior official in the relevant agency who has served for at least 90 days within the past year, 5 U.S.C. § 3345(a)(2)-(3). Section 3345(b) imposes certain limitations on the pool of eligible acting officers under Section 3345(a)(1).

a.  The district court correctly concluded that Ms. Habba was ineligible to serve as an acting officer under Section 3345(a)(1) because she was not serving as the first assistant when the vacancy arose. Appx62-75. That

conclusion flows from Section 3345(a)'s text.  Section 3345(a)'s present-tense verbs ("dies, resigns, or is otherwise unable to perform the functions and duties of the office") and Section 3345(a)(1)'s mandatory directive (the first assistant "shall perform") establish a default rule that the incumbent first assistant fill the position as soon as the vacancy occurs without "the President or anyone else" playing "a role in this process."  Appx65.  That default incumbent-first-assistant rule exists "because such person is often a career official with knowledge of the office or a Senate-confirmed individual" who could perform "the routine functions of the office" for "a limited period of time."  S. Rep. 105-250, at 12 (1998).[6]  The default rule also means that "[i]f there is no first assistant, no one is permitted by law to become an acting officer until the President designates" either a "Senate-confirmed individual" or an eligible senior official in the relevant agency under Section 3345(a)(2) or (3).  *Id.* at 13.

Section 3345(a)'s structure confirms that interpretation.  If, as the government contends (Br.18-25), the Attorney General could simply

---

[6] By contrast, the government's (flawed) textual argument (Br.18-19)—that the phrase "to the office" in Section 3345(a)(1) would allow the appointment of a first-assistant-who-immediately-becomes-the-acting-officer at any time during a vacancy—would result in inexperienced, noncareer appointees who do not understand the routine functions of the offices they are to lead.

designate anyone as the "first assistant" at any time after a vacancy has arisen with the result that that person then becomes the acting officer, Congress would have had no plausible reason to identify—and narrowly cabin—the alternatives to the automatic first-assistant rule. *See* Appx65-66 (noting that the government reading "would render the limits in subsections (a)(2) and (a)(3) surplusage in the vast majority of cases"). The government suggests Congress may have sought to address circumstances when "the first assistant is itself a PAS office," but the fact that it offers only a single example, Br.22, illustrates that its interpretations would render Sections 3345(a)(2) and (3) "meaningless in all but the most unlikely situations," *Garcia*, 2025 WL 2784640, at *6, if not "entirely irrelevant," Appx66.[7]

The government's other counterarguments are equally meritless. It contends (Br.19) that Congress did not use "backward-looking language" in Section 3345(a)(1) to confirm the incumbent-first-assistant rule even though it used such language in other parts of statute, namely Sections 3345(a)(3)(A) (the person chosen by the President must have been a senior officer in the relevant office for at least 90 of the 365 days that preceded the vacancy) and (b)(1)(A) (disqualifying from acting service anyone who did not serve as first

---

[7] Similarly unlikely—and buttressed with a sole example—is the situation where the President wants to bypass the current first assistant. *See* Br. 22.

assistant in the year preceding the vacancy or served less than 90 days and has been nominated to the position permanently).  True enough, but irrelevant.  Those latter provisions serve as limitations on who may serve, while the first-assistant provision in Section 3345(a)(1) designates an automatic first choice.  Section 3345(a)(3)(A) is designed "to limit the President's choices to 'officials with both experience and seniority.'" *Garcia*, 2025 WL 2784640, at *6 (quoting *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 28 (D.D.C. 2020)).  And Section 3345(b)(1), which disqualifies certain persons otherwise eligible to serve as acting officers, "imposes limitations on presidential nominees" from serving.  *Id.* at *7.  By contrast, Section 3345(a)(1) affirmatively articulates a default rule in which the President plays no role—unless the government's ill-founded interpretation governs.

The government also invokes "longstanding" executive-branch practice.  Br.20.  But as the district court explained, the government's reliance on history runs headlong into Congress's effort in the FVRA to stem the very roundabout vacancy-appointment practices that the government is now pursuing.  *See* Appx70-72.  To the extent the government also relies on the General Accounting Office and the Office of Legal Counsel, those offices have issued conflicting opinions on whether the FVRA requires that the individual who serves as the acting officer by virtue of being the first assistant

must have been the first assistant at the time the vacancy arose. *Compare Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 63-64 (1999) ("[T]he better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer."), *with Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 181 (2001) (taking the opposite view); *see* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001) (acknowledging conflicting views). That inconsistency "undermines the persuasiveness" of those views, *Garcia*, 2025 WL 2784640, at *8, and any resulting historical practice on which the government relies.

Indeed, history undercuts the government's position. In prior litigation in another case, the government "failed to identify a single example of a post-vacancy first assistant serving in an acting capacity prior to enactment of the FVRA," a history that "casts some doubt on whether Congress intended the phrase 'first assistant' to encompass those appointed to the first-assistant position after the vacancy arose." *L.M.-M.*, 442 F. Supp. 3d at 27-28. It strains credulity to imagine that any historical examples exist of what occurred here: the individual installed as the post-vacancy first assistant was elevated to fill an empty position created only moments earlier

by her very own resignation from a time-limited, interim appointment.[8]  The absence of any historical practice supporting the government's unorthodox approach to a question that "concern[s] the allocation of power between two elected branches of Government" is a "significant weight" against it.  *See N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014).

b.  The government cannot invoke the FVRA for a second reason. Section 3345(b)(1) forbids a person from serving as an acting officer if "(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person" either "(ii) did not serve in the position of first assistant to the office of such officer," or "(ii) served in the position of first assistant to the office of such officer for less than 90 days," and "(B) the President submits a nomination of such person to the Senate for appointment to such office."  There is no dispute that Ms. Habba does not satisfy Section 3345(b)(1)(A) because to the extent she served as the first

---

[8] Although the government has offered no *historical* examples of this dubious practice, the executive branch over the last six months appears to have used this approach repeatedly throughout the country.  *See, e.g.*, *Garcia*, 2025 WL 2784640, at *1 (District of Nevada); *see also* Motion to Dismiss, *United States v. Garcia*, No. 25-CR-655, ECF No. 21, at 14-15, 20-22 (C.D. Cal.) (filed Aug. 29. 2025) (describing similar approaches to U.S. Attorney vacancies in the Central District of California, the Northern District of New York, and the District of New Mexico).

assistant, her service was far shorter than 90 days.  Meanwhile, Ms. Habba was nominated for the same position.

In the government's view, however, Section 3345(b)(1)'s prohibition on nominees does not apply because the President withdrew her nomination. Br.25-27.  The FVRA's text refutes that mistaken interpretation.  Section 3345(b)(1) "prohibit[s] any person *who has been nominated* to fill any vacant office from performing that office's duties in an acting capacity." *SW Gen.*, 580 U.S. at 304 (emphasis added).  That prohibition covers Ms. Habba, whose nomination to the U.S. Attorney position came less than a month before the Attorney General purported to install her as the acting U.S. Attorney through Section 515 and the FVRA, and whose nomination withdrawal apparently occurred mere minutes or seconds before the order that purported to place her in the acting U.S. Attorney role.[9]

---

[9] Contrary to the government's claim that the present-perfect tense— "has been nominated"—necessarily connotes an event that "continues to be true or valid," Br.26 (quoting *Hewitt v. United States*, 145 S. Ct. 2165, 2172 (2025)), the present-perfect tense just as readily encompasses "an act, state, or condition that is *now* completed," such that it can describe "situations 'involving a specific change of state' that produces a 'continuing result,'" *Hewitt*, 145 S. Ct. at 2171 (first quoting The Chicago Manual of Style § 5.132, p. 268 (17th ed. 2017); and then quoting Rodney Huddleston & Geoffrey Pullum, The Cambridge Grammar of the English Language 145 (2002)) (brackets omitted).  That is the case here.  Ms. Habba's (past) nomination to the U.S. Attorney position for the District of New Jersey renders her ineligible to serve in that role in an acting capacity only shortly after that nomination was withdrawn.

Moreover, the timeline of Ms. Habba's supposed appointment defeats the government's fanciful concern (Br.27) that a past nomination will impose a "lifetime ban" on a person from serving in an acting capacity in the office to which the person had been nominated. When the executive both has nominated and seeks to install the same person as an acting officer within the same congressional session, there is no specter of a lifetime ban from serving in an acting capacity in that office.  As with an unacted-upon nominations, the prohibition would last no longer than the congressional session itself.  *See* Senate Rule XXXI(6) (noting that unacted-upon nominations are returned to the White House at the end of a congressional session).  In any event, Congress may well have intended such a permanent ban for U.S. Attorney positions, without exception for a President who withdraws a nomination to circumvent the Senate's advice-and-consent role. *See* 28 U.S.C. § 546(b) (forbidding the Attorney General from appointing "a person to whose appointment by the President to that office the Senate refused to give advice and consent," without providing a time limitation).

### C. The Attorney General Cannot Delegate Ms. Habba The Authority To Lead The U.S. Attorney's Office

The government offers yet another rationale to keep Ms. Habba in charge of the U.S. Attorney's Office: Ms. Habba need not actually serve as the acting U.S. Attorney because she can simply perform that job without the

title while in fact exercising powers delegated from the Attorney General. Br.27-49. That proconsul theory of federal prosecutorial power conflicts with the FVRA's exclusivity provision, reprises the very evil that led to the FVRA's enactment in the first place, and would render superfluous the statutory scheme for U.S. Attorney appointments.

1. The government's theory that the Attorney General is empowered under 28 U.S.C. §§ 509, 510, and 515 to delegate to Ms. Habba the powers of a U.S. Attorney "runs headlong into the exclusivity provisions of the FVRA." *Garcia*, 2025 WL 2784640, at *11. Congress made the FVRA "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS officer, 5 U.S.C. § 3347, with exceptions for a statute that "expressly authorizes" filling a vacancy (such as 28 U.S.C. § 546), *id.* § 3347(a)(1), and for a recess appointment, *id.* § 3347(a)(2). But the FVRA exclusivity provision makes clear that the "expressly authorizes" carveout in Section 3347(a)(1) does *not* include "[a]ny statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency." *Id.* § 3347(b). That clear textual prohibition precludes the government from relying on the Attorney

General's delegation powers under Section 509, 510 and 515 to fill the U.S. Attorney's office position.[10]

Interpreting Section 3347(b) consistently with its text to forbid the government's delegation theory effectuates the FVRA's purpose. Congress enacted the FVRA in response to Justice Department efforts to "fill[] high-level positions, sometimes in obvious contravention of the Senate's wishes" and in view of "a threat to the Senate's advice and consent power." *SW Gen.*, 580 U.S. at 295. The FVRA's exclusivity provision took specific aim at arguments "raised by the Justice Department that sections 28 U.S.C. §§ 509 and 510, rather than the Vacancies Act, apply to vacancies in that department," S. Rep. No. 105-250, at 17—in other words, the very argument the government advances here. *See id.* at 3 ("Given the growing number of federal departments and agencies that now claim exemption from the Vacancies Act, Congress must explicitly reject the position that general organic statutes for various agencies and departments, such as 28 U.S.C. §§ 509 and 510, trump the specific provisions of the Vacancies Act.");

---

[10] The two district courts that have rejected the government's U.S. Attorney delegation theory—and no court has yet accepted it—persuasively explain why the government's reliance (*see* Br.33-46) on a different provision in the FVRA and court of appeals' decisions that do not squarely address the issue here cannot overcome Section 3347(b)(1)'s plain text. *See* Appx81-90; *Garcia*, 2025 WL 2784640, at *11-13.

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't' of Homeland Sec.*, 107 F.4th 1064, 1078 n.7 (9th Cir. 2024) (noting that Section 3347(b) responded to Justice Department efforts to "evad[e]" pre-FVRA vacancy-filling requirements by invoking the Attorney General's "general 'vesting-and-delegation authority'") (citation omitted). It would be perverse to countenance the very evasion that led to the FVRA's enactment in the first place.

The government nonetheless insists that its delegation theory is necessary to avoid "crippl[ing] the operation of the federal government." Br.45 (citing *Kajmowicz v. Whitaker*, 42 F.4th 138, 151 (3d Cir. 2022)). That consequentialist claim is overstated, *see* Appx90-94, and it would blink reality to invoke it here. The district court for the District of New Jersey had acted under Section 546(d) to ensure that Ms. Grace, an experienced federal prosecutor, could step into the U.S. Attorney position after Ms. Habba's tenure under Section 546 ended. Even assuming the executive was intent on removing Ms. Grace, it would have been easy for the Attorney General or the President to appoint someone other than Ms. Habba under the FVRA, or possibly Section 546(a). The continuity of the U.S. Attorney's office in New Jersey was not under threat—until the executive removed Ms. Grace and the Attorney General issued the legally flawed July 24 order.

2.    The government's delegation theory also creates needless superfluity.  Courts should avoid an interpretation that is "contrary to Congress' apparent intent" and that would have the "practical effect" of rendering a statutory scheme "entirely superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).  Yet that is precisely what the government advocates here.  Never mind that Congress has provided no fewer than three ways to fill a U.S. Attorney vacancy: presidential nomination and Senate confirmation, 28 U.S.C. § 541; a time-limited Attorney-General appointment followed by a within-district judiciary appointment, 28 U.S.C. § 546; and a mechanism for filling vacant executive-branch PAS offices that the government has used interchangeably with Section 546, 5 U.S.C. §§ 3345 *et seq.*; *see* Temporary Filling of Vacancies in the Office of United States Attorney, 27 Op. O.L.C. 149, 149-50 (2003) (explaining the government's view that both Section 546 and FVRA are available to fill U.S. Attorney vacancies).  If the Attorney General can simply handpick her preferred lawyers—lawyers who under Section 515 could have been private citizens only moments before being appointed as a "special attorney"—to run the ninety-plus U.S. Attorney's offices throughout the country under her delegated authority, Congress need not have bothered with such a system.

### D. Accepting the Government's Theory Thwarts Senate Review And Raises Constitutional Concerns

Accepting the July 24 order's purported installation of Ms. Habba as the U.S. Attorney "necessarily raises the question whether that appointment complied with the Appointments Clause." *SW Gen.*, 580 U.S. at 313 (Thomas, J., concurring). At bottom, the government's untenable legal theory operates in service of the "ignoble" aim of "enabling the President to circumvent the Senate's role in the appointment process." *Noel Canning*, 573 U.S. at 580 (Scalia, J., concurring).

Consider what has happened so far. Following Ms. Habba's appointment under Section 546 as the interim U.S. Attorney, she served at least a full 120-day term under Section 546(c)(2) and potentially longer. At that point, when the judiciary, consistent with its role under Section 546(d), decided to appoint a different person to serve as U.S. Attorney, the executive removed that person and sought another way to reinstall Ms. Habba as the (acting) U.S. Attorney—this time under the FVRA, apparently (at least on the government's theory) giving Ms. Habba another 210 days on the job all without scrutiny by the Senate. And to achieve that result, the executive *withdrew* Ms. Habba's nomination, and has not submitted another one,

meaning the Senate is unable to perform its critical advice-and-consent function for the top federal prosecutor in New Jersey.

The executive branch's conduct in shoehorning Ms. Habba into the U.S. Attorney role has thus bypassed not only the Senate's role envisioned in Section 541, but also the additional safeguard through the judiciary that Congress provided in Section 546(d). And on the government's delegation theory, Ms. Habba could remain the *de facto* U.S. Attorney permanently. Permitting such conduct would "eviscerate the divided-powers framework" that the Appointments Clause establishes. *N.L.R.B. v. New Vista Nursing and Rehab.*, 719 F.3d 203, 230 (3d Cir. 2013).

A conclusion that Ms. Habba is not validly serving as the U.S. Attorney furthers the accountability the Appointments Clause was designed to guarantee, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021), without preventing the filling of a vacancy through lawful operation of the FVRA and Section 546. The FVRA provides the President with other "tools," *L.M.-M*, 442 F. Supp. at 34, to temporarily fill vacancies before the Senate confirms a presidential nominee. Those include relying on an experienced first assistant (like Ms. Grace), § 3345(a)(1), or another PAS officer or sufficiently senior agency official to assume the role, § 3345(a)(2)-(3). And where (unlike here) a district court fails to act under Section 546(d), that provision may also

permit a "second interim appointment," *In re Grand Jury Proc.*, 671 F.Supp. 5, 7 (D. Mass. 1987); Alito Memo at 4, albeit not for Ms. Habba.

# CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

October 6, 2025

/s/ James I. Pearce
JAMES I. PEARCE†
SAMANTHA BATEMAN
MARY L. DOHRMANN††
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org
sbateman@washingtonlitigationgroup.org
mdohrmann@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

*† Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Members*

*††Admitted only in New York; practicing under the supervision of D.C. Bar Members*

*Counsel for Amicus Association of Criminal Defense Lawyers of New Jersey*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, James I. Pearce, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

October 6, 2025

/s/ James I. Pearce
JAMES I. PEARCE†
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

† *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Member*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 31.1, I certify the following:

1. This brief complies with Fed. R. App. P. 29(a)(5) because it contains 6,499 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Georgia 14-point font using Microsoft Word 2018.

3. This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because OpenText was run on the file containing the electronic version of this brief and no viruses were detected.

/s/ James I. Pearce
JAMES I. PEARCE†
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 6, 2025

† *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Member*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on October 6, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ James I. Pearce
JAMES I. PEARCE†
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 6, 2025

† *Admitted only in New York and North Carolina; practicing under the supervision of D.C. Bar Member*