**Nos. 25-2635 & 25-2636**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JULIEN GIRAUD, JR., JULIAN GIRAUD III, CESAR HUMBERTO PINA

Defendants-Appellees.

———————————

On Appeal from the United States District Court for the District of New Jersey,
Nos. 1:24-cr-768, 2:25-cr-436 (Brann, C.J. (M.D. Pa.))

———————————

## REPLY BRIEF FOR APPELLANT

———————————

PAMELA J. BONDI
*Attorney General*

TODD BLANCHE
*Deputy Attorney General*

STANLEY WOODWARD
*Associate Attorney General*

ALINA HABBA
*Acting U.S. Attorney*
*Special Attorney*

HENRY C. WHITAKER
*Counselor to the Attorney General*

MATTHEW R. GALEOTTI
*Acting Assistant Attorney General*

MARK E. COYNE
*Supervisory Assistant U.S. Attorney*
*Chief, Appeals Division*
*District of New Jersey*

KATHERINE TWOMEY ALLEN
*Criminal Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-1935*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................1

I.    Ms. Habba Is Validly Serving As Acting U.S. Attorney ..........................................1

    A.    Section 3345(a)(1) Is Not Limited To Incumbent First Assistants............2

    B.    Ms. Habba's Withdrawn Nomination Does Not Preclude Her Service As Acting U.S. Attorney .................................................13

    C.    The Attorney General's Use Of § 546 Did Not Preclude Subsequent Use Of The FVRA .................................................17

II.    Ms. Habba Can Participate In And Supervise These Prosecutions Pursuant To The Attorney General's Delegation Of Authority ........................ 19

CONCLUSION .............................................................................................. 30

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

## Cases

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ...................................................... 22, 24, 25, 26, 27, 29

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ................................................................................................24

*Carr v. United States*,
560 U.S. 438 (2010) ................................................................................................14

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ................................................................................................16

*Edmond v. United States*,
520 U.S. 651 (1997) ................................................................................................17

*Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. U.S. Dept. of Homeland Security*,
107 F.4th 1064 (9th Cir. 2024) .........................................................................22, 24, 27

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
356 F. Supp. 3d 109 (D.D.C. 2019) .......................................................................18

*Hewitt v. United States*,
145 S. Ct. 2165 (2025) ............................................................................................15

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
816 F.3d 550 (9th Cir. 2016) .............................................................................17, 18

*In re Persico*,
522 F.2d 41 (2d Cir. 1975) ......................................................................................28

*Kajmowicz v. Whitaker*,
42 F.4th 138 (3d Cir. 2022) .............................................................................21, 24, 27

*L.M.-M. v. Cuccinelli*,
442 F. Supp. 3d 1 (D.D.C. 2020) ...........................................................................17

*Lucia v. Securities and Exchange Commission*,
585 U.S. 237 (2018) ................................................................................................23

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) ...................................................................29

*NLRB v. SW Gen., Inc.,*
580 U.S. 288 (2017) ................................................ 5, 14, 15, 16

*Ross v. Blake,*
578 U.S. 632 (2016) ...................................................................12

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) .....................................................................3

*Seila Law LLC v. CFPB,*
591 U.S. 197 (2020) ...................................................................13

*Stanley v. City of Sanford,*
145 S. Ct. 2058 (2025) ...............................................................14

*United States v. Giordano,*
416 U.S. 505 (1974) ...................................................................20

*United States v. Prueitt,*
540 F.2d 995 (9th Cir. 1976) ......................................................28

*United States v. Smith,*
962 F.3d 755 (4th Cir. 2020) ......................................................18

*United States v. Wrigley,*
520 F.2d 362 (8th Cir. 1975) ......................................................28

*Whitman v. American Trucking Assns., Inc.,*
531 U.S. 457 (2001) ...................................................................11

*Wilkins v. United States,*
598 U.S. 152 (2023) ...................................................................16

**Statutes**

1 U.S.C. § 1 ...............................................................................14

5 U.S.C. § 101 ...........................................................................23

5 U.S.C. § 105 .................................................................................................23

5 U.S.C. § 3345 ...........................................1, 2, 3, 4, 5, 8, 11, 13, 19, 23

5 U.S.C. § 3345 (1966) ...............................................................................11

5 U.S.C. § 3346 .......................................................................................17, 20

5 U.S.C. § 3346 (1966) ...............................................................................11

5 U.S.C. § 3347 .............................................................................................20

5 U.S.C. § 3348 .............................................................................................21

12 U.S.C. § 5491 .............................................................................................5

22 U.S.C. § 2503 .............................................................................................6

28 U.S.C. § 509 .............................................................................................28

28 U.S.C. § 510 .............................................................................................28

28 U.S.C. § 515 .............................................................................................28

28 U.S.C. § 541 .............................................................................................27

28 U.S.C. § 546 .......................................................................................17, 27

31 U.S.C. § 502 ...............................................................................................7

38 U.S.C. § 304 ...............................................................................................7

40 U.S.C. § 302 ...............................................................................................7

42 U.S.C. § 902 ...............................................................................................7

44 U.S.C. § 2103 .............................................................................................6

51 U.S.C. § 20111 ...........................................................................................6

Act of Feb. 13, 1795, 1 Stat. 415 ...............................................................10

Act of July 23, 1868, ch. 227, 15 Stat. 168 ...............................................10

Act of May 8, 1792, ch. 38, § 8, 1 Stat. 279 ..........................................................10

Pub. L. No. 89-554, 80 Stat. 378 (1966) ..............................................................11

Pub. L. No. 100-398, 102 Stat. 985 (1988) ..........................................................11

Pub. L. No. 105-277, 112 Stat. 2681 (1998) ........................................................15

Pub. L. No. 111-8, 123 Stat. 524 (2009) ..............................................................22

**Other Authorities**

144 Cong. Rec. S10868-69 (daily ed. Sept. 24, 1998)............................................8

144 Cong. Rec. S10996 (daily ed. Sept. 25, 1998)................................................8

144 Cong. Rec. S11022 (daily ed. Sept. 28, 1998)................................................8

144 Cong. Rec. S11037-39 (daily ed. Sept. 28, 1998)........................................ 8, 9

144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998) ................................................9

*Authority of the President to Prospectively Appoint a Supreme Court Justice*, 46 Op.
   O.L.C. __ (Apr. 6, 2022) ..................................................................................16

Christopher M. Davis, Congressional Research Service, *Invoking Cloture in the
   Senate*, Rep. No. 98-425 (2017) ........................................................................8

*Designating an Acting Attorney General*,
   42 Op. O.L.C. 182 (2018)............................................................................ 7, 18

*Designating an Acting Director of National Intelligence*,
   43 Op. O.L.C. 291 (2019)....................................................................................7

*Designating an Acting Director of the Bureau of Consumer Financial Protection*,
   41 Op. O.L.C. 99 (2017)......................................................................................7

*Designating an Acting Director of the Federal Housing Finance Agency*,
   43 Op. O.L.C. 70 (2019)......................................................................................7

*Designation of Acting Director of the Office of Management and Budget*,
   27 Op. O.L.C. 121 (2003)....................................................................................7

*Designation of Acting Solicitor of Labor*,
  26 Op. O.L.C. 211 (2002)..................................................................................7

Executive Order 13251 of December 28, 2001...................................................7

Executive Order 13915 of April 14, 2020 ........................................................7

Executive Order 13963 of December 10, 2020................................................7

S. Rep. No. 105-250 (1998)....................................................................8, 25, 26

Senate Rule XXII (1986) ................................................................................8

# INTRODUCTION

The Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3345 *et seq.*, applies across the Executive Branch.  It embodies a careful balance between the important roles for the President and Senate in appointing and confirming permanent officials and the ability of the Executive Branch to continue to operate in times of vacancies.  As the government explained, the plain text of the statute permits Alina Habba to serve as Acting U.S. Attorney or, at minimum, to conduct and supervise litigation in the District of New Jersey pursuant to the Attorney General's express delegation of that authority to her.  The defendants' primary responses are policy arguments based on the circumstances of this case and the result of the statute's application to the office of U.S. Attorney.  This Court should not distort the text of the FVRA to achieve the defendants' desired policy outcomes or undermine widespread Executive Branch practices that are critically important during times of Presidential transition and extended vacancies.

# ARGUMENT

## I.    Ms. Habba Is Validly Serving As Acting U.S. Attorney

Although the defendants would prefer it to be otherwise, a straightforward reading of the statute shows that Ms. Habba is in fact the Acting U.S. Attorney for the District of New Jersey.  The Attorney General appointed her First Assistant U.S. Attorney, which—as neither the defendants nor their amici dispute—is "the first assistant to the office" of U.S. Attorney.  5 U.S.C. § 3345(a)(1).  Accordingly, by

operation of § 3345(a)(1), she "shall perform the functions and duties of the office temporarily in an acting capacity." *Id.*; *see* USB16-27.[1]  The defendants' efforts to resist that simple logic fail from start to finish.

### A.    Section 3345(a)(1) Is Not Limited To Incumbent First Assistants

The office of U.S. Attorney for the District of New Jersey, as relevant here, first became vacant on January 8, 2025, when the last Senate-confirmed U.S. Attorney resigned during the presidential transition.  The defendants insist that the only kind of "first assistant" eligible to be the acting U.S. Attorney in the district was an incumbent from the previous presidential administration who was serving on January 8.  But the statute contains no such temporal requirement.

1.  As the government's opening brief showed, two straightforward features of the statute demonstrate just that.  First, the statute says that "the first assistant *to the office* of such officer shall perform" the functions and duties of the office in an acting capacity.  5 U.S.C. § 3345(a)(1) (emphasis added).  Not the first assistant to any particular "officer."  Not the first assistant who served at the specific time the vacancy arose.  The first assistant *to the office*, period.  Second, a vacancy is a continuing condition and the statute, in the present tense, authorizes acting service whenever the PAS office "is"—not became—vacant.  *Id.* § 3345(a); USB18-19.  The statute therefore is indeed

---

[1] "USB" refers to the United States's opening brief.  "GB" refers to the Girauds' response brief.  "PB" refers to Pina's response brief.

"self-executing," GB15, and "automatic[]," PB22: if a vacancy continues to exist, and the FVRA's time limits have not expired, whoever is occupying the office of first assistant at present by default automatically becomes the acting officer. USB18-19.

On the text, the defendants have little to say in response. The Girauds, but not Pina, contend that the definite article used in "the first assistant" "clearly refers to the deputy already in place at the time the vacancy arises." GB15. But the definite article at most would just show that there is only one first assistant at a time, not that the first assistant must be the incumbent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("use of the definite article" signifies "only one" person). It is perfectly natural to refer to "the first assistant" to mean the specific person occupying the office at present.

The defendants' remaining efforts to account for the "first assistant to the office" language undermine their cause. They repeat the district court's contention that the "first assistant to the office language" "refers to a specific position within a department or agency." PB24; *see* GB16 (observing that this language "'*depersonalize[d]*'" the first assistant (emphasis the Girauds')). That is the point. The relevant first assistant is whoever is occupying the office, not the person (if any) who happened to occupy the office when the vacancy first arose. *See* USB23.

2. Other parts of the statute reinforce the government's reading of § 3345(a)(1). USB19-20, 23-24. In § 3345(a)(3) and (b)(1), Congress created eligibility requirements that turned on the circumstances at and before the time of the vacancy, and that type of language is entirely absent in (a)(1). USB19-20. Section 3345(a)(3) says that only a

person who served in the agency for 90 days prior to the vacancy at a certain rate of pay is eligible to be designated by the President as an acting officer. By contrast, § 3345(a)(1) says nothing about the timing of the first assistant to the office's service. Section 3345(b)(1) is even more on the nose. It makes a person ineligible to be both the acting officer and the nominee for the vacancy if, prior to the vacancy's arising, the person "did not serve in the position of first assistant to the office of such officer." 5 U.S.C. § 3345(b)(1). That language contemplates that first assistants appointed after the vacancy arises may serve as acting officers—otherwise, Congress would not have taken pains to make such officials ineligible to be the nominee.

The defendants have no cogent response to those points. As to (a)(3) and (b)(1), they emphasize that those provisions are "automatic," PB30-31; GB19-20, and focus on a *period* of time before the vacancy arose rather than the *precise* time when the vacancy arose. GB20-21; PB31-33. But that fails to explain why, unlike in (a)(3) and (b)(1), Congress did not include express language in (a)(1) specifying a temporal constraint on that automatic provision if it wanted to impose one: "the first assistant to the office of such officer at the time the vacancy arose."

As for (b)(1), Pina is mistaken that the government's structural inference "has been rejected expressly by the Supreme Court" in *SW General*. PB32-33. In that case, the Supreme Court held that the nominee-ineligibility requirement in § 3345(b)(1) applies to not only a first assistant who serves as an acting official as a first assistant under § 3345(a)(1), but also an individual designated by the President to serve as an

4

acting official under § 3345(a)(2) or (a)(3). *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301-02 (2017). In other words, it "applies to *anyone* performing acting service under the FVRA." *Id.* at 299 (emphasis added). Pina wrongly suggests that § 3345(b)(1) applies only to "an acting officer that the President selected through either subsection 3345(a)(2) or (a)(3)." PB33. Just the opposite, § 3345(b)(1) *expressly contemplates* that it also applies to a first assistant who assumes acting duties under § 3345(a)(1)—as it applies "[n]otwithstanding subsection (a)(1)." 5 U.S.C. § 3345(b)(1). That prohibition has ample purchase when a first assistant takes office, and becomes the acting officer, after the vacancy arises.

3. With nothing plausible to say about the text of the FVRA, the defendants support their atextual incumbency requirement with dubious structural inferences about the statute, the statute's legislative history, and previous versions of the statute. None of those punches land.

The defendants contend that, unless § 3345(a)(1) contains an implicit incumbency requirement, subsections (a)(2) and (a)(3) are superfluous. PB21, 29-30; GB18-22. But as the government explained, (a)(1) is not available, and (a)(2) and (a)(3) play an important role, when (1) the first assistant position is itself a PAS office or (2) the President wants the current first assistant to continue serving as first assistant. USB22-23. Subsection (a)(1) is also not available in a third scenario: when the office of agency head is vacant and the first assistant must be appointed by the agency head. *See, e.g.*, 12 U.S.C. § 5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C.

§ 2103(c) (National Archives and Records Administration). In all three circumstances, a presidential designation under (a)(2) or (a)(3) is the only way to designate an acting official under the FVRA.

Recognizing the flaw in their "surplusage" argument, the defendants retreat to the complaint that, under the government's interpretation, the circumstances in which (a)(2) and (a)(3) would operate, are unduly "rare." GB21-22; *see* PB30. Pina objects, for instance, that the government's interpretation makes (a)(2) and (a)(3) operate only for "cabinet-level offices" because only those have first assistant offices that are also PAS offices. PB30. Even if that were true—and even if rarity, rather than surplusage, were a reason to rewrite Congress's work—it would not be anomalous for Congress to have reserved (a)(2) and (a)(3) Presidential designations for some of the most important positions in government. But the statute is not that narrow anyway: non-cabinet agency heads have PAS first assistants too, *see, e.g.*, 51 U.S.C. § 20111(b) (NASA); 22 U.S.C. § 2503(a) (Peace Corps). Moreover, even apart from the circumstance where the first assistant is a PAS office, (a)(1) also is not available where the office of agency head is vacant and the first assistant must be appointed by the agency head, or when the President wants the current first assistant to continue serving as first assistant.

Presidential designations under § 3345(a)(2) and (a)(3) are not rare. On the first day of this Administration alone, rather than relying on § 3345(a)(1), the President designated 31 officials to serve in an acting capacity, at least 27 of which he designated under (a)(2) and (a)(3) of the FVRA. *See* https://www.whitehouse.gov/presidential-

6

actions/2025/01/designation-of-acting-leaders/.[2]  The President later relied on (a)(2) to name Secretary of State Marco Rubio, a Senate-confirmed PAS official, as the Acting Archivist of the United States.  *See* https://www.archives.gov/about/organization/senior-staff.  More broadly, Presidents have issued standing orders of succession for agencies pursuant to their authority under (a)(2) and (a)(3).[3]  And many proposed Presidential designations under § 3345(a)(2) and (a)(3) have occasioned formal opinions issued by the Office of Legal Counsel.[4]

4.    Defendants' reliance on the FVRA's legislative history, besides being irrelevant given the clarity of the text, is misplaced.

The Girauds repeat the district court's error, Appx69-72, in placing significant weight on a Senate Report, which they read to reflect that Congress intended the first-assistant provision to apply only to incumbents. GB24-25.  That is wrong.  That "report

---

[2] The government has reviewed the statutory authority underlying those designations.  Based on that review, only four of them could have been based on a statute other than the FVRA.  *See* 38 U.S.C. § 304 (Acting VA Secretary); 31 U.S.C. § 502 (Acting OMB Director); 40 U.S.C. § 302(b) (Acting GSA Administrator); 42 U.S.C. § 902(b)(4) (Acting SSA Commissioner).

[3] *See e.g.*, Executive Order 13251 of December 28, 2001 (Department of State); Executive Order 13963 of December 10, 2020 (Department of Defense); Executive Order 13915 of April 14, 2020 (Department of the Interior); *see also Designating an Acting Director of National Intelligence,* 43 Op. O.L.C. 291, 300-02 (2019) (discussing the order of succession for the Office of the Director of National Intelligence).

[4] *See Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. 291 (2019); *Designating an Acting Director of the Federal Housing Finance Agency*, 43 Op. O.L.C. 70 (2019); *Designating an Acting Attorney General*, 42 Op. O.l.C. 182 (2018); *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. 99 (2017); *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121 (2003); *Designation of Acting Solicitor of Labor*, 26 Op. O.L.C. 211 (2002).

concerned an earlier version of the bill with critically different language." USB24. "Namely, the bill … defined the first assistant as 'the first assistant of such officer,' S. Rep. No. 105-250 at 25 (1998), *not* 'first assistant to the office of such officer,' 5 U.S.C. § 3345(a)(1)." USB24.

Pina, for his part, principally relies on a colloquy on the Senate floor supposedly showing that the phrase "first assistant to the office" limited first assistants to incumbents. PB26 (citing 144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998) (statement of Sen. Lieberman)). The passage in fact suggests the opposite. The subject of the debate (a cloture vote) was the very same "first assistant of such officer" language that was in the Senate Report but eventually deleted from the final version of the bill after the cloture motion failed. *See* 144 Cong. Rec. S10868-69 (daily ed. Sept. 24, 1998) (listing the text of S. 2176, the bill that was the subject of the "cloture vote" scheduled for "Monday, September 28"); 144 Cong. Rec. S11022 (daily ed. Sept. 28, 1998) (statement of Sen. Thompson) (explaining that under the bill being debated "the first assistant to the officer becomes the acting officer").[5]

Some Senators voted against cloture precisely because the "first assistant to such officer" language proposed in the bill was too restrictive, and Congress as a result

---

[5] Pina notes that Senator Thompson proposed the "first assistant to the office" language as an amendment on September 25, 1998, three days before the cloture debate. PB26 (citing 144 Cong. Rec. S10996). But under the Senate's rules, that proposed amendment and others were not (yet) part of the bill that was the subject of the cloture debate. *See* Senate Rule XXII (1986); Christopher M. Davis, Congressional Research Service, *Invoking Cloture in the Senate*, Rep. No. 98-425 (2017).

changed the language to the "first assistant to the office of such officer" to address those concerns. For example, Senator Lieberman worried that "by the terms of the bill, a first assistant apparently can take over only if he or she was the first assistant at the time of the vacancy." 144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998). Senator Lieberman continued:

> Also troubling is what can happen when a new President comes into office. If individuals in Senate-confirmed positions leave before the new President takes office, as often happens, then the only people who would be qualified to serve as acting officials as the new administration gets off the ground, because they were the first assistants at the time of the vacancy, are holdovers, often political appointees from the previous administration. That would create an awkward situation that would require a new administration to staff itself with a previous administration's political appointees.

*Id.* at S11038.

In response, Senator Thompson assured the Senate that "just to be the acting officer, anyone who serves in that position would become the acting officer without having been there any length of time." *Id.* But those assurances were not enough, and the cloture motion failed. *Id.* at S11039. To secure passage of the bill, as Senator Thompson later explained, "subsequent changes" were made, including using "[t]he term 'first assistant to the office' … rather than 'first assistant to the officer.'" 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). "This change [was] made to 'depersonalize' the first assistant." *Id.* To the extent the Court even considers legislative history (and it should not, given the clarity of the text), this deliberate shift in language supports the

government's position that the first assistant is not limited to one specific person at one specific time.

5.  Pina also invokes two centuries of precursors to the FVRA and accuses the government of "disregard[ing]" the significance of those changes over the years.  PB22; *see* PB20-24.  A comparison of the language of the FVRA's predecessors to what Congress enacted in 1998, however, underscores that the statute as it exists today contains no first-assistant-incumbency requirement.

The first of those statutes, enacted in 1792 and amended in 1795, allowed the President "to authorize any person or persons, at his discretion, to perform the duties of the said respective offices."  *See* Act of May 8, 1792, ch. 38, § 8, 1 Stat. 279, 281; Act of Feb. 13, 1795, 1 Stat. 415.  Congress changed that in 1868, to place limits on who could serve in an acting capacity.  Section 1 of that enactment, which applied only to a vacancy in the "head" of an Executive Department, read: "in case of the death, resignation, absence, or sickness *of the head of any executive department* of the government, the first or sole assistant *thereof* shall, unless otherwise directed by the President of the United States … perform the duties of such head until a successor be appointed, or such absence or sickness shall cease."  Act of July 23, 1868, ch. 227, § 1, 15 Stat. 168 (emphases added).  Section 2 of the 1868 statute, which applied to lower-level officers, likewise by default authorized "the deputy of *such chief* or of *such officer*" to serve as an acting official.  *Id.* § 2 (emphases added).  Both statutes therefore contained language

limiting eligible first assistants to incumbents—similar to the language that Congress left on the cutting room floor when it enacted the FVRA in 1998.

The recodification of the statute in 1966, which Pina ignores, tells the same story even more clearly. That year, Congress revised and recodified the Vacancies Act at 5 U.S.C. § 3341 *et seq. See* Pub. L. No. 89-554, 80 Stat. 378, 424 (1966). The recodified statute provided that, if the PAS officer died, resigned or was sick or absent, "his first assistant" presumptively would "perform the duties of the office until a successor is appointed or the absence or sickness stops." 5 U.S.C. §§ 3345, 3346 (1966). The 1988 amendments to the Vacancies Act left the "his first assistant" language in place. *See* Pub. L. No. 100-398, 102 Stat. 985, 988 (1988).

Thus, for more than a century prior to the FVRA, the default candidate for temporarily filling a vacancy was the first assistant *of* the officer whose death, resignation, sickness or absence made the office vacant. But in 1998, Congress chose different language. The version of the FVRA that became law abandoned the "his first assistant" language in the 1966 and 1988 versions of §§ 3345-3346. Instead, Congress used "the first assistant to the office of such officer" to define the presumptive default for acting service in all PAS offices. 5 U.S.C. § 3345(a).

This is not, as Pina contends, PB23, a case of Congress's "hid[ing] elephants in mouseholes." *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001). As discussed above, Congress debated and deliberately broadened the statutory language to permit post-vacancy first assistants to serve. *See supra* at 8-10. Congress's broadening

11

that aspect of the statute, while narrowing it in others, reflects a carefully crafted legislative compromise that the Court should respect, not an anomaly. *See, e.g.*, *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) ("When Congress amends legislation, courts must presume it intends" the change "to have real and substantial effect.") (quotations omitted).

6. The defendants do not dispute that accepting their position, as the opening brief explained (USB20, 24-25), would require upending a quarter-century of Executive Branch practice of having agency heads appoint first assistants after a vacancy arises and would, consistent with Senator Lieberman's concerns, cripple a new administration's ability to name acting officials early in a President's term. GB22-23; PB35-36. The defendants even declare that the Attorney General has "no role in triggering this succession" and that the only people eligible should "ordinarily be a career official familiar with the office." GB19, 25; *see* PB20, 27n.4. But even under their view, the Attorney General is fully empowered to appoint someone with no experience in the agency as first assistant one second before a PAS official resigns—*e.g.*, in cases where that official provided advance notice of his intended resignation—and that person would automatically assume acting status. The defendants identify no reason why Congress would have wanted such accidents of timing to determine whether an official can be named the acting. And it is utterly implausible that Congress intended the default to be that the President must rely on career officials who may

disagree with his policies to serve as acting political officers during the critical period at the start of an administration.

More fundamentally, the Constitution entrusts to the Executive Branch considerable freedom in selecting the officials entrusted to execute the laws on the President's behalf. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 213-14, 223-24 (2020). That the first-assistant provision of the FVRA gives the Attorney General substantial flexibility in selecting an acting official to help execute the core Article II function of overseeing criminal prosecutions in accordance with the electorate's choice of President is thus a great virtue of the government's position here, not a vice.

### B.    Ms. Habba's Withdrawn Nomination Does Not Preclude Her Service As Acting U.S. Attorney

The defendants insist that Ms. Habba's previous nomination to be U.S. Attorney bars her from serving as Acting U.S. Attorney under 5 U.S.C. § 3345(b)(1) even though the President withdrew her nomination before she became First Assistant U.S. Attorney. GB29-33; PB39-44. Their arguments are mistaken.

1. The bar on acting service by nominees applies when "the President submits" a "nomination … to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1)(B). Because a vacancy is a continuing condition, and because the statute is expressed in the present tense, the statute requires a presently existing submission— a nomination that has not been withdrawn or acted on—for the bar to be triggered. USB25-26.

Defendants downplay the bar's use of the present tense.  GB31; PB42-43.  But to "ascertain a statute's temporal reach," the Supreme Court "has frequently looked to Congress' choice of verb tense."  *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) (quotations omitted); *see, e.g., Carr v. United States*, 560 U.S. 438, 447-48 (2010) ("That § 2250 sets forth the travel requirement in the present tense ('travels') rather than in the past or present perfect ('traveled' or 'has traveled') reinforces the conclusion that preenactment travel falls outside the statute's compass.").

"The Dictionary Act also ascribes significance to verb tense."  *Carr*, 560 U.S. at 448.  It provides that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] … words used in the present tense include the future as well as the present."  1 U.S.C. § 1.  "By implication, then, the Dictionary Act instructs that the present tense generally does not include the past."  *Carr*, 560 U.S. at 448.  By contrast, the defendants' reading would have the Court reword the present-tense wording of the nomination-bar to past tense.

2.  The Girauds claim that § 3345(b) uses the phrase "'who has been nominated to fill a vacant office'" to describe a person to whom the nomination bar applies.  GB29, 31-32.  But those words appear in *SW General*, not in the statute.  580 U.S. at 299, 304-05.  And the Court's use of the present perfect tense in some parts of *SW General* to describe § 3345(b)(1)(B)'s scope in no way means that scope includes nominations no longer pending.  "Today, if an event is merely a relic of history because it was voided by a subsequent action, the past-perfect (not the present-perfect) tense would usually

be the more appropriate verb choice." *Hewitt v. United States*, 145 S. Ct. 2165, 2172-73 (2025). The withdrawal of Ms. Habba's nomination voided it, so it has no continuing consequence under § 3345(b)(1)(B).

The FVRA's effective date and application provision further supports the government's interpretation of subsection (b)(1)(B), because that provision uses the past-perfect tense that § 3345(b)(1)(B) does not. Under that provision, "[i]f the President *submits* to the Senate the nomination of any person after the effective date of this section … for an office for which such person *had been nominated* before such date, the next nomination of such person after such date shall be considered a first nomination of such person to that office" when applying §§ 3345-3349 and 3349d. Pub. L. No. 105-277, Div. C, Title I, § 151(d), 112 Stat. 2681, 2681-616 (1998) (emphases added). Using the past-perfect tense—"had been nominated"—to refer to someone previously nominated and not confirmed differs markedly from the phrase "has been nominated" and from the use of the present tense in § 3345(b)(1)(B)— "submits a nomination"—to describe a condition necessary to trigger the nomination bar. *See Hewitt*, 145 S. Ct. at 2172-73.

3. Pina, on the other hand, takes a different tack. PB32-33, 39-42. He too claims that the Supreme Court resolved this issue in *SW General*, albeit in a different way. He too is wrong. Far from foreclosing the argument that § 3345(b)(2) requires a pending nomination, *SW General* expressly declined to reach that issue. *SW Gen.*, 580 U.S. at 298 n.2. The Supreme Court has made clear in any event that its decisions should not

be read as precedents on issues lurking in the record.  *See, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004).  The Court "looks for definitive interpretations, not holdings in hiding."  *Wilkins v. United States*, 598 U.S. 152, 164 (2023).

4. Pina's remaining arguments fare no better.  PB42-44.  He starts by assuming his conclusion:  because § 3345(a)(1) refers only to the person serving as first assistant when the vacancy arises, it would "have been impossible for the President to have 'submitted'" a nomination to fill that vacancy before § 3345(a)(1) would be triggered.  PB42.  That is wrong both legally and factually.  As discussed above, subsection (a)(1) has no pre-vacancy incumbency requirement.  And regardless, Presidents are fully empowered to, and do, submit nominations to offices before vacancies occur.[6]  *Contra* PB42.  Nor would giving effect to § 3345(b)(1)(B)'s use of the present tense ("submits") make the withdrawal of Ms. Habba's nomination irrelevant.  PB42-43.  If Ms. Habba's nomination had remained pending, she could not serve as Acting U.S. Attorney.  *See SW Gen.*, 580 U.S. at 296, 309.  As for Bill Lann Lee's installation on an acting basis, PB43, the nomination bar would have applied to him while he was serving as the acting official and a pending nominee during the debates on the FVRA.  *See* https://www.congress.gov/nomination/105th-congress/865.  In any event, the FVRA allows an officer to serve in an acting capacity even if the Senate has *rejected* that person's

---

[6] *See, e.g.*, *Authority of the President to Prospectively Appoint a Supreme Court Justice*, 46 Op. O.L.C. __ (Apr. 6, 2022) (slip op.) (discussing the prospective nomination of Justice Jackson).

nomination. *See* 5 U.S.C. §§ 3345(b)(2), 3346(b). That of course was not true of Ms. Habba—her nomination was withdrawn, not rejected.[7]

## C. The Attorney General's Use Of § 546 Did Not Preclude Subsequent Use Of The FVRA

Pina alternatively argues that if the Attorney General invokes 28 U.S.C. § 546 to appoint an interim U.S. Attorney for a vacant office, then § 546 displaces the FVRA for purposes of that vacancy because it is the more specific statute. PB44-48. The district properly rejected that argument, which misapplies the specific-governs-the-general canon. Appx57-61. "Ordinarily, where a specific provision conflicts with a general one, the specific governs." *Edmond v. United States*, 520 U.S. 651, 657 (1997). But Pina recognizes that there is no conflict here: he agrees that both the FVRA and § 546 are available mechanisms for designating an officer to temporarily serve as U.S. Attorney when the office is vacant and that "the President is permitted to elect between [them]." PB45-46 (quoting *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (emphasis omitted)). The specific-governs-the-general canon thus provides no support for Pina's strange suggestion that § 546 somehow becomes the more specific

---

[7] Relying on an inapposite district court decision, Pina also argues that Ms. Habba cannot be a "first assistant" in the sense that § 3345(a)(1) requires because the President wants her to lead the U.S. Attorney's Office. PB38-39 (citing *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24-26 (D.D.C. 2020)). Unlike the appointment in *Cuccinelli*, however, Ms. Habba's appointment as Special Attorney and First Assistant U.S. Attorney is not limited to the duration of the vacancy in the office of U.S. Attorney; thus, under her appointment, she would report to the U.S. Attorney once one is confirmed, like any other "first assistant."

statute only if the Attorney General invokes it, but until the Attorney General does so, the more general FVRA continues to allow service as an acting officer (including by an earlier First Assistant U.S. Attorney prior to Ms. Habba's interim appointment here, PB46).

The availability of both statutory mechanisms in no way creates "difficult constitutional questions." PB47. If there is a vacancy in the office of U.S. Attorney, and there is a first assistant, that person by default becomes the Acting U.S. Attorney under § 3345(a)(1). If the Attorney General or the district court invoke § 546, an interim U.S. Attorney displaces the Acting and serves until his term expires or until he is removed. If an interim U.S. Attorney's term expires or he is removed, the FVRA becomes available once again for an official to become the acting officer, subject to its time limits and other eligibility restrictions.

None of that is problematic. Courts have recognized that, when two statutes are available alongside one another to designate an official to perform the functions of an office, the President may choose which statute to invoke. *See Hooks*, 816 F.3d at 556. For example, President Trump could designate Matthew Whitaker to be the Acting Attorney General under § 3345(a)(3) of the FVRA, notwithstanding that 28 U.S.C. § 508 provides a different line of succession within the Department of Justice when there is a vacancy in the Office of Attorney General. *See Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 356 F. Supp. 3d 109, 138-41 (D.D.C. 2019); *United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020); *Designating an Acting Attorney General*, 42

Op. O.L.C. 182 (2018).  In short, the Attorney General's previous appointment of Ms. Habba as interim U.S. Attorney under § 546 does not prevent application of the FVRA once that interim service ended.

## II.    Ms. Habba Can Participate In And Supervise These Prosecutions Pursuant To The Attorney General's Delegation Of Authority

Even if Ms. Habba cannot serve as the Acting U.S. Attorney, she may continue to exercise prosecutorial and supervisory authority in the District of New Jersey in her capacity as Special Attorney and First Assistant U.S. Attorney because the Attorney General expressly delegated that authority to her.  *See* USB27-49.  The defendants do not dispute that the Attorney General has authority to conduct and supervise litigation in the District of New Jersey, that she can delegate that authority, and that she has delegated that authority to Ms. Habba.  Instead, they argue that the FVRA's exclusivity provision, 5 U.S.C. § 3347, bars the Attorney General's delegation.  PB50; GB36.  That is wrong under the plain text of the statute.  And again, the defendants' arguments largely sound in purpose and legislative history and are not persuasive in any event.

1.  The FVRA authorizes service as an "acting officer" and is generally the exclusive means for authorizing that type of service, but it does not purport to prohibit the exercise of lawfully delegated powers by non-acting officials.  *See* USB33-46.  Section 3345 is titled "Acting officer" and provides for certain officials to "perform the functions and duties" of a vacant PAS office "temporarily in an *acting capacity* subject to the time limitations of section 3346."  5 U.S.C. § 3345(a)(1)-(3) (emphasis added).

Section 3346 sets forth the time limits for "serving as an *acting officer*" under § 3345. *Id.* § 3346 (emphasis added). And § 3347 provides that §§ 3345 and 3346 are the "exclusive means for temporarily authorizing an *acting official* to perform the functions and duties" of a PAS office, unless (1) another statute expressly authorizes the designation of someone to serve in an "acting capacity" for a particular office, or (2) the President makes a recess appointment. *Id.* § 3347(a) (emphasis added).

An "acting officer" is one who can perform *all* the functions and duties of the vacant office without qualification—*i.e.*, the person can fully act as the absent officer. Indeed, that is why the person uses the title of the vacant office—*e.g.*, Acting U.S. Attorney—and why the title has significance. The plain text of § 3347(a) makes the FVRA the exclusive means for temporarily authorizing service as an acting official.

Delegation is different. A delegation of authority occurs when one officer empowers another official to perform a function vested in that officer. Delegations are limited by the scope of the delegation; they are not necessarily limited to times of vacancies; they do not confer titles; and they are valid only if the function is delegable. *See, e.g.*, *United States v. Giordano*, 416 U.S. 505, 512-23 (1974). But a delegation cannot include any functions solely vested in the PAS official by statute or regulation.

Section 3347(b) reinforces the distinction between exercising authority delegated from an agency head and acting service. It confirms that general statutes that authorize an agency head to delegate her functions do *not* count under § 3347(a)(1) as office-specific statutes that authorize *acting* service. *See id.* § 3347(b) ("Any statutory provision

20

providing general authority to the head of an Executive agency … to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies.").  What § 3347(a) establishes, in other words, is that general delegation statutes may not be used to "temporarily authoriz[e] an *acting official*" to perform *all* the functions and duties of a vacant PAS office.  But that prohibition does not bar conferring on an official the delegable functions of a vacant PAS office.

The FVRA's remedial provision (§ 3348) further underscores that § 3347 does not prohibit the delegation of a vacant office's delegable duties because § 3348 does not provide a remedy for the unlawful exercise of delegable duties.  Instead, § 3348 provides that when a PAS office is vacant, the exercise of non-delegable duties by someone who is not validly serving under the FVRA or an office-specific statute that authorizes acting service "shall have no force or effect" and "may not be ratified."  *Id.* § 3348(a), (d); *Kajmowicz v. Whitaker*, 42 F.4th 138, 148-49 (3d Cir. 2022).  Congress thereby ensured that only validly "acting" officials under the FVRA could perform both the delegable and non-delegable functions of a vacant office, but other officials could continue performing delegable functions.

Both courts of appeals that have considered § 3347 have agreed with the government's plain-text interpretation.  The Federal Circuit explained that § 3347(b) "provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA."  *Arthrex, Inc. v. Smith &*

*Nephew, Inc.*, 35 F.4th 1328, 1338 (Fed. Cir. 2022).  And the Ninth Circuit agreed that "§ 3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the *acting officer* under the FVRA."  *Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. U.S. Dept. of Homeland Security*, 107 F.4th 1064, 1078 (9th Cir. 2024) (emphasis added).

The defendants do not dispute the legal differences between acting service and the exercise of delegable functions.  Nor do they offer any explanation for the FVRA's use of different terms or any reason why Congress would have prohibited the delegation of the delegable functions of a vacant office but then provided no remedy for violating that prohibition.  Instead, the defendants simply ignore the statute's repeated use of the terms "acting officer," "acting official," and "acting capacity."  The FVRA was the first time in the history of the Vacancies Act that Congress used those terms, and in doing so Congress clarified the distinction between acting service and the mere performance of delegated functions.  Since enacting the FVRA, Congress has continued to recognize that an official can exercise the functions of a vacant PAS office in an "acting *or temporary* capacity."  Pub. L. No. 111-8, Div. D, Title VII, § 749, 123 Stat. 524, 693 (2009) (emphasis added).  The plain text of the FVRA does not prohibit the delegation of delegable functions or provide a remedy for the unlawful exercise of delegable functions.  Accordingly, the FVRA does not prohibit the delegation at issue here.

Section 3347 also does not prohibit the delegation at issue here because the Attorney General did not solely delegate the powers of the vacant office of the U.S.

22

Attorney but also delegated her own separate authority to prosecute crimes and supervise litigation in the District of New Jersey. USB40, 45-46. The FVRA does not prohibit the Attorney General from delegating her own powers merely because they overlap with the powers of a vacant office. The defendants have no response to that.

2. The defendants' resort to policy-based arguments and legislative history fails. First, they argue that if all the duties of the office of U.S. Attorney are delegable, then there is no functional difference between someone serving as Acting U.S. Attorney and merely exercising the delegable duties of the office of U.S. Attorney, so § 3347 must prohibit such a delegation. PB50-51; GB35-43. That is wrong on multiple grounds.

At the outset, there are indeed functional differences between the types of service: duties could be made non-delegable by regulation or statute in the future; a delegee may face litigation concerning the delegability of functions, *see* USB44n.11; and a delegee cannot use the title of acting officer, *see* USB30-31. But even if there were no functional differences in the context of the particular office of U.S. Attorney, that would not justify an atextual interpretation of the FVRA, which applies to *all* Executive Branch PAS officers unless specifically excluded. 5 U.S.C. §§ 101, 105, 3345(a). The difference between acting service and delegated functions would still have significance for many other PAS officials under the FVRA. For example, because the power to appoint inferior officers is a non-delegable function constitutionally vested in an agency head, *Lucia v. Securities and Exchange Commission*, 585 U.S. 237, 244 (2018), an Acting Attorney General may appoint inferior officers under the FVRA, but an individual who has

merely been delegated the Attorney General's powers under 28 U.S.C. § 510 may not; it would make no sense, however, to leap from that proposition to the defendants' conclusion that the FVRA also atextually preempts delegations that are valid under § 510. And in all events, this Court and others have rejected similar functional arguments regarding the FVRA on multiple occasions, recognizing that such complaints are properly directed at Congress, not the courts. *See Kajmowicz*, 42 F.4th at 151; *Arthrex*, 35 F.4th at 1337; *Gonzales*, 107 F.4th at 1080.

Second, the defendants' and the district court's suggested rule that the FVRA prohibits the delegation of *all* of a vacant office's duties to a *single* person yields odd results and would not eliminate the circumvention concern driving that rule. For example, if a vacant PAS office has one non-delegable function, then the FVRA would not prohibit the delegation of the rest of the office's functions. Or, if a vacant PAS office's functions were delegated to two people, then the FVRA would not prohibit the delegation. Indeed, both the district court and Giraud acknowledge that the FVRA does not prohibit the Attorney General from delegating to Assistant U.S. Attorneys some prosecutorial authority that overlaps with the office of U.S. Attorney. Appx22; GB35. But if that is true, it is impossible to see why Ms. Habba cannot be delegated that same authority.

Finally, the defendants rely heavily on the legislative history. "[L]egislative history is not the law." *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (quotations omitted). In any event, as the government has noted (USB32, 43n.10), the Senate

Report adopted the same interpretation of § 3347(b) that the government advances: "any statutory provision providing general authority to the head of an executive agency to delegate or reassign duties within that executive agency is not a statutory provision that qualifies within the exception contained in section [3347(a)(1)] for existing statutes that provide for the filling of a vacancy in a specific office." S. Rep. No. 105-250 at 17. The Senate Report and other legislative history criticized DOJ's view that its general delegation statutes "exempte[d]" DOJ from the Vacancies Act and authorized the "designation of acting officials" outside of that statute. *See id.* at 3, 4, 5, 17. The report explained that § 3347 forecloses the argument that an agency's delegation statutes "rather than the Vacancies Act, apply to vacancies" in the agency. *Id.* at 17.

At the same time, however, the Senate Report expressly recognized that when there is no validly serving acting officer, "[d]elegable functions of the office could still be performed by other officers or employees, but the functions and duties to be performed only by the officer whose appointment is by the President by and with the advice and consent of the Senate could be performed solely by the head of the executive agency." *Id.* at 18. The additional and minority views also emphasized that the remedies are limited to "nondelegable duties" and the exercise of delegable duties "would continue," so that the statute "does not cause an unintended shutdown" of the agency with the vacancy. *Id.* at 31; *see also id.* at 36.

At most, the legislative history includes "competing narratives," and it cannot alter the plain language of the statute in any event. *Arthrex*, 35 F.4th at 1336-37.

Regardless of what prompted Congress to act, when Congress enacted the FVRA, it cemented the distinction between acting officers and mere delegees. Indeed, the Senate Report notes that GAO repeatedly disapproved of the practice under the Vacancies Act of agencies relying on general delegation statutes to "designat[e]" acting officials, S. Rep. No. 105-250 at 3, but GAO has consistently approved of the practice under the FVRA of non-acting officials exercising the delegable functions of a vacant PAS office without using the acting title, *see* USB32.

3. The defendants offer no persuasive reason to disregard the numerous court of appeals decisions that support the government's interpretation of the FVRA. PB52-53; GB44. In very similar circumstances, the Federal Circuit in *Arthrex* held that the FVRA did not prohibit an officer's exercise of a delegable function pursuant to the wholesale delegation of the delegable functions of a vacant PAS office. 35 F.4th at 1335-38. That decision strongly supports the legality of Ms. Habba's continued supervision of these prosecutions pursuant to the Attorney General's delegation of authority.

Without citation, the district court dismissed *Arthrex* on the ground that the Federal Circuit erroneously applied the narrow definition of "'functions and duties'" from § 3348 to the entire statute, Appx89, and Pina adopts that view, PB53. That was not *Arthrex*'s reasoning. The Federal Circuit was rejecting Arthrex's argument that § 3348(d) deprived the Commissioner's action of any "force or effect," *Arthrex*, 35 F.4th at 1335, and the narrow definition of "functions and duties" plainly applies in § 3348(d).

The Federal Circuit's statements that "the FVRA applies" only to non-delegable duties should be read in context as referring to § 3348(d). That is how this Court and the Ninth Circuit have understood *Arthrex*. *See Kajmowicz*, 42 F.4th at 151; *Gonzales*, 107 F.4th at 1073. The Federal Circuit also expressly rejected Arthrex's reliance on § 3347(b), explaining that the text of that provision "merely provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA." *Arthrex*, 35 F.4th at 1338. That reasoning applies fully here, and this Court should not create a conflict with the Federal Circuit.

As the government explained, this Court and others have uniformly held that the FVRA does not invalidate the exercise of the delegable functions of a vacant office. USB37-40 (citing decisions from the Second, Third, Ninth, and D.C. Circuits). The defendants' only response is that those decisions involved § 3348, rather than § 3347. PB52-53; GB44. But the Ninth Circuit in *Gonzales*, 107 F.4th at 1078, expressly agreed with *Arthrex*'s analysis of § 3347(b). And the cases addressing § 3348 are relevant to the interpretation of § 3347. There is no reason why Congress would have prohibited the exercise of otherwise lawfully delegated duties of a vacant office in § 3347 but then provided no remedy for violating that prohibition in § 3348.

4.    Contrary to the defendants' assertion (PB53-54; GB43), the Attorney General's ability to delegate functions of a U.S. Attorney does not render the FVRA, 28 U.S.C. § 541, and 28 U.S.C. § 546 superfluous. As discussed, there are formal as well as practical distinctions between service as a delegee and service as a Senate-confirmed,

interim, or Acting U.S. Attorney.  A delegee cannot use the title of U.S. Attorney or exercise any exclusive, non-delegable functions of that office (and may face litigation regarding the delegability of functions), and must actually be delegated the relevant functions.  Moreover, the FVRA applies across the Executive Branch, so it cannot be interpreted based on the result of its application to the office of U.S. Attorney.  As for the Executive Branch supposedly having no reason to use any mechanism other than delegation, PB50, that is belied by the confirmation of 16 U.S. Attorneys last week, https://www.senate.gov/pagelayout/legislative/one_item_and_teasers/nom_confc.h tm, and the Executive Branch's actions in this very case to ensure that Ms. Habba can continue serving as Acting U.S. Attorney.

5.  Pina erroneously argues that a Special Attorney under 28 U.S.C. § 515 cannot exercise supervisory authority or be delegated authority to conduct a broad category of cases.  PB56-57.  It is well-settled that there is no requirement that the Attorney General limit an appointment under 28 U.S.C. § 515 to a specific case or cases.  *See, e.g.*, *United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976); *In re Persico*, 522 F.2d 41, 62 (2d Cir. 1975); *United States v. Wrigley*, 520 F.2d 362, 369 (8th Cir. 1975).  Moreover, Ms. Habba's § 515 authority is limited to legal proceedings in the District of New Jersey.  Appx161.  Furthermore, the Attorney General's appointment of Ms. Habba and designation of her as First Assistant U.S. Attorney was not limited to § 515; it was based on authority "including" § 515 and specifically mentioned §§ 509 and 510 as well.  Appx165.  The

appointment was also based on the Attorney General's authority to appoint other attorneys within DOJ, including Assistant U.S. Attorneys.  USB28-30.

To the extent the defendants are complaining (GB41; PB50n.11), that the Attorney General's order purported to confer on Ms. Habba any exclusive functions vested in a U.S. Attorney in addition to delegable ones, that complaint would not be a basis for disqualifying Ms. Habba from these cases.  Neither Defendants nor the district court have ever disputed that the authority to supervise these criminal cases is a fully delegable function of a U.S. Attorney.  Even if the order were unlawful in other applications not before the Court involving exclusive functions—though it is not—that would be no basis for invalidating the Attorney General's order as applied to these cases.  *See Arthrex*, 35 F.4th at 1339 n.5 (declining to address whether functions of the Director that were not directly at issue were delegable); *cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (facial challenge can succeed only if the challenger establishes that the law "lacks a 'plainly legitimate sweep'").

6.  Finally, the defendants largely ignore the widespread practice of principal deputies and first assistants performing the delegable functions of a vacant PAS office in a non-acting capacity.  They have never disputed that this practice is routine and well-established, and, as the government explained, all three branches of government have consistently approved of the practice.  USB30-32.  The district court's holding would upset this important tool that ensures the continued functioning of the Executive Branch when acting service is not available.

# CONCLUSION

For the foregoing reasons, the district court's disqualification orders should be reversed.

Respectfully submitted,

PAMELA J. BONDI
*Attorney General*

TODD BLANCHE
*Deputy Attorney General*

STANLEY WOODWARD
*Associate Attorney General*

ALINA HABBA
*Acting U.S. Attorney*
*Special Attorney*

HENRY C. WHITAKER
*Counselor to the Attorney General*

MATTHEW R. GALEOTTI
*Acting Assistant Attorney General*

MARK E. COYNE
*Supervisory Assistant U.S. Attorney*
*Chief, Appeals Division*
*District of New Jersey*

*s/ Katherine Twomey Allen*
KATHERINE TWOMEY ALLEN
*Criminal Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-1935*

October 2025

# COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This brief complies with the type-volume limit of this Court's October 13, 2025 order because it contains 7,952 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

3.      The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4.      This document was scanned for viruses with the most recent version of Microsoft Defender Antivirus, which is continuously updated, and according to that program is free of viruses.

*s/ Katherine Twomey Allen*
Katherine Twomey Allen