

**U.S. Department of Justice**

*950 Pennsylvania Avenue N.W.*
*Washington, DC 20530-0001*

October 29, 2025

The Honorable Patricia S. Dodszuweit
Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

> Re:  *United States v. Giraud*, No. 25-2635
> *United States v. Pina*, No. 25-2636
> Argued October 20, 2025 before Judges Restrepo, Smith and Fisher
> Letter submitted under Fed. R. App. P. 28(j)

Dear Ms. Dodszuweit,

Yesterday's opinion ("Slip op.") in the consolidated cases of *United States v. Ramirez, Garcia, Jr.* and *Rojas*, Nos. 5:25-cr-264-SSS, 2:25-cr-655-MEMF and 22-cr-573-FWS (C.D. Cal.) (together, *Rojas*) supports the Government's delegation argument in these appeals. For the Court's convenience, a copy of *Rojas* is attached.

*Rojas* held that Bilal A. Essayli, a FAUSA similarly situated to Alina Habba, could not serve as Acting U.S. Attorney for the Central District of California under the FVRA because he was not the FAUSA when the last Senate-confirmed U.S. Attorney resigned. Slip op. at 5-6, 8-29. *Rojas* also held that under 5 U.S.C. § 3347, the Attorney General could not use general appointment-and-delegation statutes to install Mr. Essayli as the Acting U.S. Attorney and therefore disqualified him from participating in or supervising the consolidated cases in that capacity. Slip op. at 29-34, 49.

But contrary to *Giraud*, *Rojas* also held that because Mr. Essayli "was properly appointed as a Special Attorney and designated as the FAUSA," the "court has no basis to preclude" him "from performing the lawful duties of a FAUSA." *Id.* at 50. In "*that* capacity, he could supervise these prosecutions (even though he cannot do so as Acting United States Attorney)." *Id.* He "would not be doing so in violation of the FVRA," because "that statute precludes him from serving as Acting United States Attorney" but "says nothing about other duly-authorized positions." *Id.* Furthermore, "the statutes and regulations" that "define the Attorney General's duties and powers" authorize FAUSAs "to perform duties that are not exclusive to the office of the United States Attorney." *Id.* at 52. "The result"—that Mr. Essayli "may perform certain functions and

duties as the FAUSA—stems from the power of the Attorney General to delegate authority." *Id.* at 53.

So too here. Even if Ms. Habba cannot serve as the Acting U.S. Attorney for the District of New Jersey under the FVRA, she is still the FAUSA in the District. In that role, she can do anything any other FAUSA could—including supervise the *Giraud* and *Pina* prosecutions. So the district court's disqualification orders should be reversed.

October 29, 2025

Respectfully submitted,

PAMELA J. BONDI
   *Attorney General*

TODD BLANCHE
   *Deputy Attorney General*

STANLEY WOODWARD
   *Associate Attorney General*

HENRY WHITAKER
   *Counselor to the Attorney General*

ALINA HABBA
   *Acting U.S. Attorney*
   *Special Attorney*

MATTHEW R. GALEOTTI
   *Acting Assistant Attorney General*

KATHERINE TWOMEY ALLEN
   *Criminal Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-1935*

MARK E. COYNE
   *Supervisory Assistant U.S. Attorney*
   *Chief, Appeals Division*
   *District of New Jersey*

(Attachment: *Rojas* opinion)

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>JAIME HECTOR RAMIREZ,<br><br>   Defendant.<br>_____ | Case No. 5:25-cr-264-SSS |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>ISMAEL GARCIA, JR.,<br><br>   Defendant.<br>_____ | Case No. 2:25-cr-655-MEMF |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>RONNY ROJAS,<br><br>   Defendant. | Case No. 22-cr-573-FWS |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS INDICTMENTS AND TO DISQUALIFY**

# I. __INTRODUCTION__

As this Order explains in detail, Bilal A. Essayli ("Essayli") is not lawfully serving as Acting United States Attorney for the Central District of California. The Attorney General's July 29, 2025 order did not function to put him in that role. And he has been unlawfully serving in that role since he resigned as Interim United States Attorney.

This consolidated order resolves three motions to dismiss indictments and to disqualify Essayli as Acting United States Attorney. The motions were brought in three pending criminal cases by Defendants Jaime Hector Ramirez ("Ramirez") (Case No. 5:25-cr-264-SSS); Ismael Garcia, Jr. ("Garcia") (Case No. 2:25-cr-655-MEMF); and Ronny Rojas ("Rojas") (Case No. 2:22-cr-00573-FWS) (collectively, "Defendants").

Defendants contend that Essayli is unlawfully serving as Acting United States Attorney based on the manner by which he assumed the duties of an office that, by statute, requires the permanent occupant to be appointed by the President, by and with the advice and consent of the United States Senate. *See* 28 U.S.C. § 541(a). Defendants seek to dismiss the indictments against them, arguing that Essayli was not lawfully serving when they were indicted, or is now unlawfully supervising their prosecutions. They also seek to disqualify Essayli and

those he supervises from participating in their prosecutions and all other prosecutions in the Central District.

Based on the following, the court determines that Essayli unlawfully assumed the role of Acting United States Attorney. He is disqualified from participating in Defendants' prosecutions as Acting United States Attorney. Nevertheless, the court denies the requests to dismiss the indictments, and the prosecutions remain valid. And despite Essayli's unlawful service as Acting United States Attorney, he remains the First Assistant United States Attorney ("FAUSA") for the Central District.

## II. <u>BACKGROUND</u>

### A. **Statutory Background**[1]

The motions primarily involve the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345–3349c, which addresses the filling of vacancies in Executive branch offices. The central provision of the FVRA is § 3345, which is triggered when "an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the

---

[1] The statutes described in this section relate to the merits of Defendants' motions. These statutes, as well as those discussed in the court's ruling on remedies, are laid out in full in the Appendix to this Order.

Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a).[2]

When § 3345(a) is triggered, "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." *Id.* § 3345(a)(1). Section 3345 also authorizes the President "and only the President" to select a different acting officer—either (1) a person appointed to a different Executive branch office by the President with the advice and consent of the Senate (a "PAS officer"), *id.* § 3345(a)(2), or (2) a person who served in the agency for at least 90 days during the year before § 3345 was triggered, at or above a certain minimum rate of pay. *Id.* § 3345(a)(3).

The FVRA generally allows a vacancy to be filled by an acting officer "for no longer than 210 days beginning on the date the vacancy occurs." *Id.* § 3346(a)(1). When a vacancy exists at the transition of presidential administrations or arises shortly thereafter, the time limit is extended. *Id.* § 3349a.

The motions also implicate 28 U.S.C. § 546, which authorizes the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant." 28 U.S.C. § 546(a). The term of a § 546 appointee, known as an "Interim" United States Attorney, expires upon the

---

[2] For ease of reference, this Order often uses the term "incapacity" to refer to the condition of an officer being "otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a).

confirmation of a nominee or "120 days after appointment by the Attorney General" under § 546, whichever is earlier. *Id.* § 546(c). If an Interim United States Attorney's term expires, the district court for the district "may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

## B. Factual Background

The court sets forth the relevant events in the following timeline:

| Dec. 7, 2022 | Rojas is indicted for racketeering and firearm violations. The indictment was signed by an Assistant United States Attorney ("AUSA"), with United States Attorney E. Martin Estrada's ("Estrada") name listed first on the signature block, along with two other AUSAs. *See Rojas*, ECF No. 1 at PageID#18. Estrada had been nominated by President Joseph Biden and confirmed by the Senate on September 13, 2022. https://www.congress.gov/nomination/117th-congress/2212 (retrieved October 27, 2025). |
|---|---|
| Jan. 17, 2025 | Estrada resigns, three days before President Donald Trump's inauguration. |
| Jan. 17, 2025 | FAUSA Joseph McNally becomes Acting United States Attorney under 5 U.S.C. § 3345(a)(1). |
| Mar. 27, 2025 | Attorney General Pamela Bondi appoints Essayli Interim United States Attorney under 28 U.S.C. § 546(a). *See, e.g.*, *Ramirez*, ECF No. 10 at PageID#118. |
| Apr. 2, 2025 | Essayli becomes Interim United States Attorney. His term is limited by statute to 120 days. *See* 28 U.S.C. § 546(c)(2). Measured from April 2, it would expire on July 31. |

| July 29, 2025 | Two days before July 31,[3] Attorney General Bondi issues an order that purportedly does three things: |
|---|---|
| | 1.  appoints Essayli as a Special Attorney "effective upon his resignation as United States Attorney;" |
| | 2.  designates Essayli as the FAUSA, also "effective upon his resignation as United States Attorney;" and |
| | 3.  orders that "[a]s First Assistant United States Attorney, Essayli will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations" of the FVRA. |
| | *See, e.g.*, *Ramirez*, ECF No. 10 at PageID#169. |
| July 29, 2025 | By letter addressed to Attorney General Bondi, Essayli writes: "I hereby resign my position as Interim United States Attorney for the Central District of California effective at 5:00 p.m. PDT today, July 29, 2025."  The letter then states: "I look forward to continuing to lead the U.S. Attorney's Office for the Central District of California."  *See, e.g.*, *Ramirez*, ECF No. 10 at PageID#171. |
| July 31, 2025 | Essayli's term as Interim United States Attorney would have expired after 120 days.  *See* 28 U.S.C. § 546(c)(2). |
| Aug. 8, 2025 | Garcia is indicted for federal firearms violations.  The indictment is signed by an AUSA, with Essayli listed first on the signature block, along with three other AUSAs.  *See Garcia*, ECF No. 13 at PageID#37. |

---

[3]  Defendants state that Essayli's lawful term under 28 U.S.C. § 546 expired on July 30, 2025.  *See, e.g.*, *Ramirez*, ECF No. 10 at PageID#106.  Whether the appointment would have expired on July 30 or 31, Essayli resigned shortly before.

| Aug. 13, 2025 | Ramirez is indicted for federal firearms violations.  The indictment is signed by an AUSA, with Essayli listed first on the signature block, along with two other AUSAs.  *See Ramirez*, ECF No. 1 at PageID#5. |
|---|---|

## C.      Procedural Background

On August 28, 2025, Ramirez filed his Motion to Dismiss Indictment and to Disqualify.  *Ramirez*, ECF No. 10.  On August 29, 2025, Garcia filed his Motion to Dismiss Indictment and to Disqualify.  *Garcia*, ECF No. 21.[4]  On September 11, 2025, Rojas filed his Motion to Dismiss the Indictment.  *Rojas*, ECF No. 258.  On September 19, 2025, the government filed—in all three cases—a Consolidated Response in Opposition to Defendants' Motions to Dismiss and Disqualify.  *See Ramirez*, ECF No. 33; *Garcia*, ECF No. 36; *Rojas*, ECF No. 271.[5] Replies were filed on September 26, 2025 and September 29, 2025.  *See Ramirez*, ECF No. 38; *Garcia*, ECF No. 38; *Rojas*, ECF No. 276.[6]  The court heard the Motions on October 14, 2025.

---

[4]  In both *Ramirez* and *Garcia*, two substantively identical motions to dismiss appear on the docket.  *See Ramirez*, ECF Nos. 8, 10; *Garcia*, ECF Nos. 21, 32.  For purposes of this Order, the operative motions are *Ramirez*, ECF No. 10, and *Garcia*, ECF No. 21.  Because the operative motions are substantively identical, this Order will cite only *Ramirez*, ECF No. 10, for the Motion.

[5]  This Order will cite only *Ramirez*, ECF No. 33, for the Opposition.

[6]  Ramirez and Garcia, both represented by the Federal Public Defender, filed a consolidated Reply in both cases.  This Order will cite only *Ramirez*, ECF No. 38, for the Reply.

7

Supplemental briefs from both sides were filed on October 16, 2025. *See Ramirez*, ECF Nos. 49, 50; *Garcia*, ECF Nos. 46, 47; *Rojas*, ECF Nos. 293, 294. The court also considers an amicus brief filed by a "Bipartisan Group of Current and Former Members of Congress." *Ramirez*, ECF No. 41-1.[7]

## III.  DISCUSSION

Defendants move to dismiss their indictments under Federal Rule of Criminal Procedure 12(b), which permits the assertion of "any defense which is capable of determination without trial of the general issue." *See United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation and internal quotation marks omitted). Defendants' motions assert that Essayli is not lawfully serving as Acting United States Attorney under subsection 3345(a)(1) of the FVRA. The court agrees and rejects the government's arguments in opposition. First, § 3345(a) is triggered only by the death, resignation, or incapacity of a PAS officer, so Essayli's service as Acting United States Attorney cannot be premised on his resignation from the interim role. And second, subsection (a)(1) assigns the acting role only to a first assistant in place when a PAS officer dies, resigns, or is incapacitated. Essayli was not the FAUSA when Estrada resigned, so Essayli's service as Acting United States Attorney cannot be premised on that resignation.

---

[7] The Unopposed Motion for Leave to File Amicus Brief, *Ramirez*, ECF No. 41, is GRANTED. The brief, *Ramirez*, ECF No. 41-1, is deemed filed on October 10, 2025.

Because Essayli is not lawfully serving as Acting United States Attorney, the final question centers on a remedy. Defendants seek dismissal of their indictments (with or without prejudice) and an order disqualifying Essayli from supervising their and others' prosecutions. The government argues that any remedy should go no further than prohibiting Essayli from supervising Defendants' prosecutions as Acting United States Attorney. Here, the court agrees with the government.

## A.    Is Essayli Lawfully Serving as Acting United States Attorney?

The court begins by addressing the merits—that is, whether Essayli is and has been unlawfully serving as Acting United States Attorney.

### 1.    Section 3345(a) of the FVRA Is Triggered Only by the Death, Resignation, or Incapacity of a PAS Officer

The court first considers whether Essayli's service as Acting United States Attorney can be premised on his resignation as the lawfully appointed Interim United States Attorney. During the October 14, 2025 hearing, the government argued that § 3345(a) was triggered on July 29, 2025, when Essayli resigned from his position as Interim United States Attorney. *Ramirez*, ECF No. 47 at PageID#432–33 (hearing transcript).[8] Defendants disagree, arguing that § 3345(a) was triggered only when Estrada—the office's last PAS occupant—

---

[8] Under the Government's view, Essayli's § 3345(a)(1) term began on July 29, 2025 and runs until February 24, 2026. *Ramirez*, ECF No. 47 at PageID#480 (hearing transcript).

resigned.  *Ramirez*, ECF No. 10 at PageID#135–136.  The court agrees with
Defendants.

Section 3345(a) is triggered only when "an officer of an Executive
agency . . . whose appointment to office is required to be made by the President, by
and with the advice and consent of the Senate, dies, resigns, or is otherwise unable
to perform the functions and duties of the office . . . ."  5 U.S.C. § 3345(a).  Under
its plain language, § 3345(a) applies to an officer of an Executive agency, but only
if that officer's appointment "is required to be made by the President, by and with
the advice and consent of the Senate."  *Id.*  In other words, only the death,
resignation, or incapacity of a certain category of officers—those nominated by the
President and confirmed by the Senate—can trigger § 3345(a).

The government, citing *United States v. Gantt*, 194 F.3d 987 (9th Cir.
1999), *overruled in part by United States v. Grace*, 526 U.S. 499 (9th Cir. 2008)
(en banc), argues that an Interim United States Attorney appointed under 28 U.S.C.
§ 546 is a "statutory U.S. attorney, like any other U.S. attorney, just time-limited."
*Ramirez*, ECF No. 47 at PageID#432 (hearing transcript).  In particular, the
government relies on *Gantt's* statement that United States Attorneys appointed
under § 546 are "fully-empowered United States attorneys" like those nominated
by the President and confirmed by the Senate.  194 F.3d at 999 n.5.  But *Gantt*
made that statement in relation to the conclusion that § 546 appointees, like PAS

United States Attorneys, are inferior officers. *Id.* at 999.  That conclusion has no

bearing on whether the resignation of a § 546 appointee triggers § 3345(a).  *See*

*Skokomish Indian Tribe v. United States*, 410 F.3d 506, 512 (9th Cir. 2005)

("When the statutory language is clear, it trumps.").  The plain language of

§ 3345(a) indicates that it is triggered only by the death, resignation, or incapacity

of an officer "whose *appointment to office* is required to be made *by the President,*

*by and with the advice and consent of the Senate*."  5 U.S.C. § 3345(a) (emphases

added).  An officer placed in the role of United States Attorney through a different

mechanism—be it a § 546 appointee, or an Acting United States Attorney serving

pursuant to § 3345—does not satisfy that statutory requirement.

In sum, because Essayli was not a PAS officer when he resigned from

the position of Interim United States Attorney, his resignation from that position

could not and did not trigger § 3345(a).

### 2.    *Subsection 3345(a)(1) Operates Immediately When § 3345(a) Is Triggered, and Cannot Be Invoked at Will*

The court next addresses whether Essayli became Acting United

States Attorney on July 29, 2025, based on Estrada's resignation on January 17,

2025.  The government argues that "whoever is the first assistant to a vacant office,

at any time during the period of the vacancy, automatically becomes the acting

officer" under the FVRA.  *Ramirez*, ECF No. 33 at PageID#258.  In contrast,

Defendants argue that § 3345(a)(1) contains a "contemporaneity requirement"—that is, for this subsection to apply, "the relevant individual must have been serving as first assistant when the vacancy occurred." *Ramirez*, ECF No. 10 at PageID#129, 133.  Again, the court agrees with Defendants.

"To determine the meaning of a statute, we begin with the statute's plain text and then consider its structure, object, and policy." *Kelly v. Comm'r of Internal Revenue*, 139 F.4th 854, 857 (9th Cir. 2025).  The words of a statute "must be read in their context and with a view to their place in the overall statutory scheme." *Gale v. First Franklin Loan Servs*., 701 F.3d 1240, 1244 (9th Cir. 2012) (internal quotation marks omitted) (citing *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005)).  Similarly, statutes "are to be interpreted as a whole," and "[o]ne provision of a statute should not be interpreted in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous." *United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999) (citations and quotation marks omitted).

The court starts with a discussion of the plain language of subsection 3345(a)(1), then turns to a review of the law's overall structure.  Finally, applying the canons of statutory construction, the court determines that only the first assistant in place when § 3345(a) is triggered may serve as acting officer under subsection 3345(a)(1).

a.   *Subsection 3345(a)(1) is automatic and self-executing, whereas subsections (a)(2) and (a)(3) are discretionary alternatives with defined limits*

Section 3345(a) is triggered at a specific and defined moment in time: when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a).  At that moment, subsection (a)(1) provides that the first assistant "shall perform the functions and duties of the office temporarily in an acting capacity."  The word "shall" indicates that subsection (a)(1) is "mandatory and self-executing." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 303 (2017).  In other words, when § 3345(a) is triggered, subsection (a)(1) "fills the role automatically." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 557 (9th Cir. 2016).

This "if-then" framework—set forth in the present tense—strongly indicates that subsection (a)(1) operates automatically and only at the moment when § 3345(a) is triggered.  Under the government's contrary interpretation, subsection (a)(1) is susceptible to manipulation through the designation of a first assistant for the specific purpose of having that person serve as the acting officer (as happened here).  Stated differently, the plain text of subsection (a)(1) indicates that it operates passively with no room for discretion, yet the government reads that same text as creating a tool that it can actively invoke at will.  That view is

inconsistent with the simple "if-then" mechanism contemplated by the statute's text.

The government's reading of subsection (a)(1) is also inconsistent with the broader structure of § 3345(a).  Subsection (a)(1) is a "default rule, by which the first assistant automatically becomes the acting officer." *Hooks*, 816 F.3d at 560.  That default rule is followed by subsections (a)(2) and (a)(3), which provide "two ways the President may override the automatic operation of (a)(1)." *Id.* at 557.  The use of "notwithstanding" in subsections (a)(2) and (a)(3) indicates that "subsection (a)(1) is unique." *SW Gen.*, 580 U.S. at 303.  That uniqueness is evident in several ways.

First, subsection (a)(1) uses the mandatory term "shall," while subsections (a)(2) and (a)(3) use the permissive phrase "may direct."  Although the use of permissive language in subsections (a)(2) and (a)(3) allows for the exercise of discretion, the use of mandatory language in subsection (a)(1) leaves no such discretion.  *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (observing that in some sections of a statute Congress "used 'shall' to impose discretionless obligations," in contrast with the "the permissive 'may'" elsewhere in the same statute); *Anderson v. United States*, 44 F.3d 795, 799 (9th Cir. 1995) ("The word 'shall' leaves no room for discretion.").  In other words, these three subsections are not on

equal footing—one is a self-executing default rule while the other two are discretionary alternatives.

Second, subsections (a)(2) and (a)(3) include discretion-limiting language absent from subsection (a)(1)—they specify that only other PAS officers or certain high ranking officials within the agency may be selected for acting service. The government reads the absence of similar discretion-restricting language in subsection (a)(1) to imply that *any* person eligible to be designated first assistant is also eligible to assume the acting role.[9] But the government reads too much into these differences. There is a much more plausible and straightforward interpretation: In contrast to subsections (a)(2) and (a)(3), Congress wrote subsection (a)(1) to apply automatically and confer no discretion at all. *See United States v. Hohri*, 482 U.S. 64, 70 (1987) (noting that where statutory text is susceptible to different interpretations, courts must "determine[] the more plausible interpretation").

Third, although subsection (a)(1) names no appointing official, subsections (a)(2) and (a)(3) require an appointing official—the President, "and

---

[9] Some first assistant positions are subject to eligibility requirements imposed by statute, but others—including FAUSAs—are not. *Compare* 10 U.S.C. § 137a(a)–(b) (providing that each Deputy Under Secretary of Defense "shall be appointed from civilian life by the President, by and with the advice and consent of the Senate" and "shall be the first assistant to an Under Secretary of Defense"), *with* 28 C.F.R. § 0.137(b) ("Where there is no position of Principal Deputy to the PAS office, the First Assistant shall be the person whom the Attorney General designates in writing.").

only the President"—to take action.  The absence of an appointing official in

subsection (a)(1) suggests that Congress did not intend *any* appointing official

(from the President on down) to have *any* role in that subsection's operation.  *See*

*Collins v. Yellen*, 594 U.S. 220, 248 (2021).

      b.    *Subsection 3345(a)(1) does not allow an end-run around the restrictions imposed in subsections (a)(2) and (a)(3)*

The government's reading of subsection (a)(1) would permit an end-

run around the express limits imposed in subsections (a)(2) and (a)(3).  Under the

government's view of the statute, instead of the President "and only the President"

having discretion to override subsection (a)(1) by selecting an acting official from

a limited pool of qualified individuals, *any* agency official with the power to

designate a first assistant could override subsection (a)(1) by installing *any* person

eligible for that subordinate role.  Stated differently, the government's reading

would allow an appointing official—someone downstream from the President—to

de facto designate the acting officer to fill a PAS office.  Context is telling; it is

highly unlikely that Congress would provide limited power to the President, but at

the same time give greater power to the head of an agency or department.  *See*

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)

("Context is a primary determinant of meaning.  A legal instrument typically

contains many interrelated parts that make up the whole. The entirety of the document provides the context for each of its parts.").

The court also considers the meaning of subsection (a)(1) in relation to the FVRA's overall object and policy. *Kelly*, 139 F.4th at 857. Reading the statute in its entirety, it becomes clear that Congress established a detailed framework intended to install highly qualified individuals into an acting role. Again, allowing an appointing official to de facto designate an acting officer regardless of the person's qualifications is inconsistent with this FVRA policy.

In short, the court rejects the government's reading of subsection (a)(1) because its "substantive effect" is not "compatible with the rest of the law." *Sackett v. EPA*, 598 U.S. 651, 676 (2023) (citation and quotation marks omitted).

Finally, the court agrees with *United States v. Giraud*, 2025 WL 2416737, at *15 (D.N.J. Aug. 21, 2025), and *United States v. Garcia*, 2025 WL 2784640, at *5 (D. Nev. Sept. 30, 2025),[10] that the government's reading of subsection (a)(1) would render subsections (a)(2) and (a)(3) superfluous in most situations. As in those cases, the government argues that subsections (a)(2) and (a)(3) would still be relevant when the first assistant position is a PAS position and

---

[10] The court will refer to *Giraud*, 2025 WL 2416737, as "*Giraud II*," and the earlier order in the same case, *United States v. Giraud*, 2025 WL 2196794 (D.N.J. Aug. 1, 2025), as "*Giraud I*." And the court will refer to *Garcia*, 2025 WL 2784640, as "*Garcia (Nevada)*," to avoid confusion with one of the Defendants in this case (Ismael Garcia, Jr.).

is vacant, or when the President wishes to leave an incumbent first assistant in place. *Ramirez*, ECF No. 33 at PageID#259–260. Under the government's view, Congress accounted for these situations by making subsection (a)(1) available to install any first assistant into the acting role. The courts in *Giraud II* and *Garcia (Nevada)* rejected that argument, determining that the surplusage canon applies not only when a reading of one statutory provision would render other provisions meaningless in every case, but also when that would be the result in all but the rarest of circumstances. *See TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001) (rejecting an interpretation that would render a statutory provision "entirely superfluous in all but the most unusual circumstances"). But most importantly, Congress would not account for these situations in a way that severely undermines the rest of the statutory scheme, instead of providing a more narrowly tailored solution. *See Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir. 2000) (stating that a statutory provision "must be read in context with a view to its place in the statutory scheme, not in isolation").

In sum, the government's reading of subsection (a)(1) is inconsistent with its plain text and the overall "structure, object, and policy" of § 3345(a). *Kelly*, 139 F.4th at 857. Reading subsection (a)(1) "in context and with a view to [its] place in the overall statutory scheme," *Gale*, 701 F.3d at 1244, the court concludes that subsection (a)(1) operates automatically at the moment § 3345(a) is

18

triggered, and cannot be invoked after the fact to install a later-designated first

assistant into the acting role.

### 3. The Government's Other Arguments for a Contrary Reading of Subsection (a)(1) Are Also Unpersuasive

The government makes several other arguments in support of its

reading of subsection (a)(1).  These arguments focus on:

- the grammatical tense of § 3345(a);

- the phrase "to the office" in subsection (a)(1);

- the inclusion of eligibility requirements elsewhere in § 3345; and

- the function of subsection 3345(b)(1)(A)(i).

These arguments also fail.

#### a. The government confuses the present tense with the present-perfect

First, the government argues that because the triggering event

described in subsection (a)(1)—"[i]f an officer . . . dies, resigns, or is otherwise

unable to perform the functions and duties of the office"—is stated in the present

tense, it necessarily reflects "the ongoing nature of a vacancy."  *Ramirez*, ECF No.

33 at PageID#257.  But the government's reliance on the use of present tense is

misplaced:  It confuses the present tense with the present-perfect.

Suppose that § 3345(a) instead read:  "If an officer . . . *has died, has*

*resigned,* or otherwise *has become unable to perform* the functions and duties of

the office."  The use of the present-perfect tense would suggest an ongoing

condition.  *See Hewitt v. United States*, 605 U.S. ---, 145 S. Ct. 2165, 2171–72

(2025) (stating that the present-perfect tense can refer to "a past action that comes

up to and touches the present" and that "one might employ the present-perfect

tense to describe situations involving a specific change of state that produces a

continuing result" (brackets, citations, emphasis, and internal quotation marks

omitted)).  The present-perfect tense would provide some support for the

government's position that "whoever is the first assistant to a vacant office, at any

time during the period of the vacancy, automatically becomes the acting officer"

by operation of subsection (a)(1).  *Ramirez*, ECF No. 33 at PageID#258.  But the

statute does not use present-perfect tense, and the use of present tense does not

support the government's position.[11]

       Relatedly, the government argues that a "vacant office" under

§ 3345(a) and its subsections is a "continuing state."  *Id.* at PageID#257.  But

within § 3345(a), the term "vacant office" appears *only* in subsections (a)(2) and

(a)(3).  The selective use of that phrase indicates that a "vacant office" exists as an

ongoing condition (in the government's words, a "continuing state") only after the

---

[11]  The court also agrees with *Garcia (Nevada)* that the use of present tense can simply be read as making clear that the first assistant assuming the duties is the one in place at the time (present tense) when the PAS officer dies, resigns, or is unable to perform the duties of the office.  *See* 2025 WL 2784640, at *6.

triggering event has passed and the "automatic operation" of subsection (a)(1) has occurred. *Hooks*, 816 F.3d at 557. In other words, the use of "vacant office" only in subsections (a)(2) and (a)(3) suggests that only those subsections—and *not* subsection (a)(1)—may be invoked at any time an office is not occupied by a PAS officer, subject to the statute's time limits.

> b.  *The phrase "to the office" does not modify the timing of subsection (a)(1)'s operation*

Next, the government argues that because subsection (a)(1) assigns the acting role to the "first assistant *to the office*" of the PAS officer, it "does not require the individual to have been serving as the first assistant to any particular PAS officeholder, much less at any particular time." *Ramirez*, ECF No. 33 at PageID#258 (emphasis in original). Defendants respond that the phrase "to the office" can instead be read to make clear that "first assistant" is used in the formal sense (to refer to the first assistant within the organizational hierarchy), rather than in an informal sense (to refer to the PAS officer's closest advisor). *Ramirez*, ECF No. 38 at PageID#308–309. When the plain language of a statute is susceptible of more than one interpretation, courts "are left with the task of determining the more plausible interpretation of the language" that Congress used. *Hohri*, 482 U.S. at 70; *Microsoft Corp. v. Comm'r*, 311 F.3d 1178, 1183 (9th Cir. 2002). Here, the more plausible interpretation is that Congress included the phrase "to the office" to

foreclose disputes over who was the PAS officer's first assistant, in order to ensure that subsection (a)(1) performs its intended function to ensure continuity of leadership.[12]

        *c.*     *The inclusion of eligibility requirements elsewhere in § 3345 does not support the government's reading of subsection (a)(1)*

The government argues that the specific inclusion of "backward-looking eligibility requirements" in subsections (a)(3) and (b)(1) demonstrates that no such requirement applies under subsection (a)(1).[13] *See Ramirez*, ECF No. 33 at PageID#258 (arguing that subsection (a)(1) assigns the acting role to "whoever is the first assistant to a vacant office, at any time during the period of the vacancy . . . ."). This argument relies on the rule of statutory construction that where Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

---

[12] As *Garcia (Nevada)* reasoned in rejecting the same argument, "this language can be read just as readily to ensure that the 'assistant' covered by subsection (a)(1) is the first assistant to the office and not a personal assistant to the departed officer—an important distinction." 2025 WL 4784640, at *8.

[13] Subsection (a)(3) allows the President to override (a)(1) by selecting an "officer or employee of [the] agency" who "served in a position in such agency for not less than 90 days" at a rate of pay "equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule." 28 U.S.C. § 3345(a)(3)(A)–(B).

    Subsection (b)(1) prohibits a person from serving concurrently as the acting officer and the nominee for the permanent role if, during the year before § 3345(a) was triggered, the person "did not serve in the position of first assistant to the office of such officer" or "served in the position of first assistant to such officer for less than 90 days." 28 U.S.C. § 3345(b)(1)(A)(i)–(ii).

intentionally and purposely in the disparate inclusion or exclusion." *Id*. (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). But this rule of construction "should not be elevated to the level of interpretive trump card" where the statutory provisions at issue are not comparable, or where applying the rule would produce a result at which "common sense would balk." *Field v. Mans*, 516 U.S. 59, 66–69 (1995). Both limitations on the rule apply here.

As discussed earlier, subsections (a)(1) and (a)(3) serve different roles in the statutory scheme. Subsection (a)(1) is "unique," mandatory, and self-executing. *SW Gen.*, 580 U.S. at 303. In contrast, subsection (a)(3) is explicitly discretionary, and Congress tempered that discretion by including backward-looking tenure-and-pay requirements to ensure that only qualified individuals may be assigned the acting role. Given that distinct purpose, the inclusion of the backward-looking language in subsection (a)(3) says little about the meaning of subsection (a)(1). If anything, the absence of backward-looking language in subsection (a)(1) is evidence that it confers no discretion at all. *See Burns v. United States*, 501 U.S. 129, 136 (1991) (noting that in some cases, Congress's "silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective").

Subsection (b)(1)'s purpose within the statutory structure is likewise incomparable to that of subsection (a)(1). The eligibility requirements in

subsection (b)(1) do not limit who can serve as an acting officer, but rather who can serve concurrently as an acting officer and a nominee for the PAS role. Given their different purposes, Congress's decision in subsection (b)(1) to limit acting-and-nominee eligibility sheds no light on the meaning of subsection (a)(1). *See Martin v. Hadix*, 527 U.S. 343, 356 (1999) (declining to apply the canon of disparate inclusion and exclusion to statutes addressing "wholly distinct subject matters"); *see also L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27 (D.D.C. 2020) (emphasizing that subsection (b)(1) "is merely a clarifying clause that does not speak to the scope of § 3345(a)(1)").

### d. *Defendants' reading of subsection (a)(1) would not render subsection (b)(1)(A)(i) superfluous*

Subsection (b)(1) prohibits a person from serving as the acting officer while nominated for the PAS role if, during the year before § 3345(a) was triggered, the person "did not serve in the position of first assistant to the office of such officer," 28 U.S.C § 3345(b)(1)(A)(i), or "served in the position of first assistant to the office of such officer for less than 90 days," *id.* § 3345(b)(1)(A)(ii). The government argues that reading subsection (a)(1) to apply only to incumbent first assistants would render subsection (b)(1)(A)(i) superfluous, because any incumbent first assistant would necessarily satisfy the requirement. *See Ramirez*,

ECF No. 47 at PageID#439–440 (hearing transcript); *Ramirez*, ECF No. 33 at
PageID#258.

Subsection (b)(1) applies not only to first assistants assuming the
acting role under (a)(1), but also to qualifying individuals named to the acting role
under subsections (a)(2) or (a)(3). *See SW Gen.*, 580 U.S. at 305. With that in
mind, a close reading of subsection (b)(1)(A)(ii) reveals that subsection
(b)(1)(A)(i) serves a purpose even when subsection (a)(1) is interpreted to apply
only to incumbent first assistants. For example, suppose that the President invokes
subsection (a)(3) to name an acting officer who had never served as first assistant
to the PAS office. That person would satisfy subsection (b)(1)(A)(ii): She had not
"*served* in the position of first assistant . . . for less than 90 days" because she had
not *served* as first assistant *at all*. But for that same reason, she *would not* satisfy
subsection (b)(1)(A)(i). In other words, subsection (b)(1)(a)(i)—not subsection
(b)(1)(a)(ii)—would prevent her from serving as the acting officer while
nominated for the PAS role. In short, interpreting subsection (a)(1) to apply only
to incumbent first assistants does not render subsection (b)(1)(A)(i) superfluous.

**4.**      **The FVRA's Legislative History Is Consistent with the
Interpretation That Subsection (a)(1) Applies Only to Incumbent
First Assistants**

Based on the statutory text and structure, the court concludes that
subsection (a)(1) unambiguously applies only to first assistants in place when

§ 3345(a) is triggered.  Given the lack of ambiguity, the court need not consider the statute's legislative history.  *See United States v. Lewis*, 67 F.3d 225, 229 (1995) ("A court looks to legislative history only if the statute is unclear.").  Even so, the court will briefly address that legislative history, which provides "additional support" for the court's independent textual conclusion.  *See, e.g.*, *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1048 (9th Cir. 2023) (en banc) (Wardlaw, J., concurring) ("[T]he legislative history confirms our reading of the text of the statute, and therefore bears reciting.").

For decades before enactment of the FVRA, the Department of Justice had maintained that its enabling and delegation statutes superseded the FVRA's predecessor, the Vacancies Act.  S. Rep. No. 105-250, at 3–4 (1998).[14]  Based on that view, the Department had filled PAS offices with acting officers "for years without the submission to the Senate of a nominee," *id.* at 5, "sometimes in obvious contravention of the Senate's wishes."  *SW Gen.*, 580 U.S. at 295.  A "growing number of federal departments and agencies" also joined the Department of Justice in claiming exemption from the Vacancies Act.  S. Rep. No. 105-250, at

---

[14]  Congress adopted several amendments between the publication of Senate Report 105-250 and final passage of the legislation.  One amendment altered § 3345(a)(1), replacing "the first assistant of such officer" with "the first assistant to the office of such officer."  *Compare* S. Rep. No. 105-250, at 25 (1998), *with* 5 U.S.C. § 3345(a)(1).  Other amendments added § 3345(a)(3) and extended the time limits on acting service.  These amendments, however, do not suggest any change in the overall legislative intent in enacting the FVRA.  In any case, the court's textual analysis is entirely independent from the FVRA's legislative history.

3 (1998). This trend threatened to render the Vacancies Act ineffectual, "thwarting the constitutional mandate that persons serving in advice and consent positions do so through the Senate's approval of such service." *Id.* at 3–4.

Recognizing that the Senate's confirmation power was "being undermined as never before," Congress enacted the FVRA to ensure that "the Constitution's separation of powers is . . . maintained, and officers of the government [are] subjected to the scrutiny of the Senate for the benefit of the liberty of the people . . . ." *Id.* at 5. Through the FVRA, Congress sought to establish "a clear and exclusive process to govern the performance of duties" of PAS offices during vacancies. *Id.* at 1, 5.

The centerpiece of the FVRA was an overhaul of § 3345, intended to clarify that the statute applies to "all officers of executive agencies whose appointments require Senate confirmation." *Id.* at 12. When a PAS officer dies, resigns, or is incapacitated, a "vacancy arises" and is filled by an acting officer subject to the FVRA's time limits. *Id.* When those time limits expire, "the position again becomes vacant, but there is no 'vacancy' that permits another person to serve" as an acting officer. *Id.* at 14. In other words, an acting officer cannot trigger § 3345 a second time and reset the clock. "Otherwise, a string of acting officials could serve" in succession, rendering the time limits meaningless.

27

*Id.* ("[T]he Committee reaffirms that there is only one vacancy that triggers the [time limits].").

The FVRA's default rule—subsection (a)(1)—"provides for the automatic performance of the functions and duties of the vacant office" by the first assistant. *Id.* at 12. Subsection (a)(1) allows "flexibility in the performance of governmental operations since, if a first assistant exists, the President need not take any action for an acting official to serve." *Id.*

Congress provided subsection (a)(2) as an alternative, to allow "the President (and only the President)" to "direct a person who has already received Senate confirmation for another position" to serve as acting officer. *Id.* at 12–13. The final legislation included an additional alternative—subsection (a)(3)— allowing the President to select a high-ranking official from within the same agency. *See id.* at 31 (additional views) (encouraging consideration of a "third category of individuals to temporarily fill positions, such as . . . qualified individuals who have worked within the agency in which the vacancy occurs for a minimum number of days and who are of a minimum grade level").

From this legislative history, Congress's intent as to the FVRA as a whole becomes clear. Congress recognized that the first assistant to a PAS office is "often a career official with knowledge of the office or a Senate-confirmed individual," and believed that "the routine functions of the office should be

allowed to continue for a limited period of time *by that one person*." *Id.* at 12 (emphasis added). If "there is no first assistant, no one is permitted by law to become an acting officer" until the President names a qualified individual under subsection (a)(2) or (a)(3). *Id.* at 13. The discretion conferred by these subsections is exclusive to the President: "[W]hen an acting officer is to be designated, as opposed to automatically gaining acting status as a first assistant, only the President may" do so. *Id.* at 12. In short, the FVRA allows "limited flexibility in appointing temporary officers," *id.* at 13, and that flexibility is available to the President alone, not to agency or department heads.

This legislative history undermines the government's interpretation. Contrary to the clear purpose of the FVRA, the government's reading of subsection (a)(1) would broaden—not limit—the Executive branch's options in selecting an acting officer. The statute is not ambiguous, but even if it were, its legislative history would weigh heavily against the government.

### 5. *Essayli's Appointment as a Special Attorney and Designation as the FAUSA Do Not Empower Him to Serve as Acting United States Attorney*

On July 29, 2025, Attorney General Bondi appointed Essayli as a Special Attorney and designated him as the FAUSA for the Central District, citing "the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 515." *See, e.g.*, *Ramirez*, ECF No. 10 at PageID#169. In doing so, she

29

also purported to give Essayli "authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations" of the FVRA. *Id.* Defendants argue (and the government ultimately agrees) that the Attorney General could not use the general appointment and delegation statutes cited in the order to authorize Essayli's service as Acting United States Attorney.

Defendants' argument is based on the FVRA's exclusivity provisions under 5 U.S.C. § 3347. Section 3347 provides in full:

> (a) Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless—
>
> > (1) a statutory provision expressly—
> >
> > > (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
> > >
> > > (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
> >
> > (2) the President makes an appointment to fill a vacancy in such office during the recess of the

> Senate pursuant to clause 3 of section 2 of article II
> of the United States Constitution.
>
> (b)     Any statutory provision providing general authority to
> the head of an Executive agency (including the Executive
> Office of the President, and other than the Government
> Accountability Office) to delegate duties statutorily
> vested in that agency head to, or to reassign duties
> among, officers or employees of such Executive agency,
> is not a statutory provision to which subsection (a)(1)
> applies.

Under § 3347(a), the FVRA is the only way to authorize someone to temporarily perform the functions and duties of a PAS office, unless another statute: (1) *expressly* authorizes "the President, a court, or the head of an Executive department" to do so; or (2) *expressly* designates someone directly.[15]  28 U.S.C. § 546, which authorized the temporary appointment of Essayli as Interim United States Attorney, is an example of the first type of statute.  *See* § 3347(a)(1)(A).

Section 3347(b) limits the type of statutes that qualify under § 3347(a)(1) as alternative means for authorizing an official to perform the functions and duties of a PAS office on a temporary basis.  It precludes the use of a general delegation statute (i.e., a statute that provides "general authority to the head of an Executive agency . . . to delegate duties") to authorize an official to serve temporarily in an acting capacity.  That is, a general delegation statute "is not a

---

[15]  The President may also make a recess appointment under "clause 3 of section 2 of article II of the United States Constitution."  5 U.S.C. § 3347(a)(2).

statutory provision to which subsection (a)(1) applies." 5 U.S.C § 3347(b); *see, e.g.*, *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 107 F.4th 1064, 1078 (9th Cir. 2024) ("[Section] 3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize [a] department to choose the acting officer under the FVRA . . . ."). Because the provisions upon which Attorney General Bondi's order relied (§§ 509, 510, and 515) are general delegation provisions, Defendants argue that the order did not lawfully authorize Essayli's service as Acting United States Attorney. That is, in Defendants' view, those provisions do not fit within § 3347(a)(1)'s exception to the FVRA's exclusivity requirement. The court agrees.

This is the same conclusion made in *Giraud II* and *Garcia (Nevada)*. *See Giraud II*, 2025 WL 2416737, at *22 ("The Government's 'Special Attorney' theory crashes headlong into this unambiguous barring provision."); *Garcia (Nevada)*, 2025 WL 2784640, at *12 ("[The § 3347(a)(1)] exception to the FVRA's exclusivity does not include general delegation statutes like those relied on by the government. Section 3347(b) makes this clear . . . . As a result, the [government] cannot rely on §§ 509, 510, and 515 to temporarily fill the vacant U.S. Attorney position . . . .").

Indeed, *Gonzales* noted that § 3347(b) was enacted to address "a specific past practice of the executive branch" in which the Department of Justice

had used its general vesting and delegation statutes to "reassign the duties of . . .

Senate-confirmed positions to other officials of the Department outside the limits

of the Vacancies Act,'" as discussed earlier. 107 F.4th at 1078 n.7 (quoting The

Vacancies Act, 22 Op. O.L.C. 44, 45 (1998)); *see also Garcia (Nevada)*, 2025 WL

2784640, at *14 ("The legislative history of the FVRA is even clearer: . . . 'This

provision forecloses the argument raised by the Justice Department that sections 28

U.S.C. §§ 509 and 510, rather than the Vacancies Act, apply to vacancies in that

department.'" (quoting S. Rep. No. 105-250, at 17 (1998) (emphasis omitted)).

Further, as analyzed in *Garcia (Nevada)*, the vesting-and-delegation

statutes at issue here "say nothing expressly about designating officers or

employees to perform the functions and duties of a specified office temporarily,"

*id.* at *13, and so—even if § 3347(b) did not apply—these general statutory

provisions would not fall within § 3347(a)(1)'s exception because they do not

"expressly" authorize such a designation.

Although it did not do so explicitly in its written Opposition, the

government agreed at the October 14, 2025 hearing with the Defendants' position

in this regard. The government agreed that—given the exclusivity provisions of

§ 3347 and its legislative history—the Department of Justice may not use Special

Attorney and delegation statutes to designate someone as the Acting United States

Attorney. *Ramirez*, ECF No. 47 at PageID#483–84 (hearing transcript). And so,

the government agreed that "if [the court] rules against us on the FVRA merits issue . . . Mr. Essayli cannot serve as the acting United States Attorney." *Id.* at PageID#484.[16]

\* \* \*

In sum, Essayli's service as Acting United States Attorney is unlawful and has been unlawful since it began on July 29, 2025. His service cannot be premised on his resignation from the interim role, because that event could not and did not trigger § 3345(a). His service also cannot be premised on Estrada's resignation, because Essayli was not the FAUSA when Estrada resigned. And finally, Essayli's service cannot be premised on his appointment as a Special Attorney; that theory is foreclosed by the FVRA's exclusivity provisions.

## B.     What Remedies Are Appropriate?

Having concluded that Essayli's service as Acting United States Attorney is unlawful, the court turns to possible remedies. The court considers:

- nullification of actions taken by Essayli while unlawfully serving;

- dismissal of Defendants' indictments; and

- disqualification of Essayli and those he supervises from participation in Defendants' prosecutions and other prosecutions in the Central District.

---

[16] The government argues, however, that Essayli remains a validly-appointed FAUSA. The court discusses this argument later in addressing Defendants' proposed remedy to disqualify Essayli from supervising their and others' prosecutions.

### 1. *Nullification Under 28 U.S.C. § 3348(d)(1) Is Improper*

Defendants argue that the FVRA "provides a remedy for improperly appointed individuals: nullification." *Ramirez*, ECF No. 10 at PageID#130. For this argument, Defendants rely primarily on § 3348(d)(1), which provides that any "action taken by any person who is not acting under section 3345, 3346, or 3347 . . . in the performance of any function or duty of a vacant office" to which the FVRA applies "*shall have no force or effect*." (emphasis added). They argue that because Essayli has not been lawfully serving as Acting United States Attorney, his actions since he purported to assume that role on July 29, 2025 "have no force or effect." *Id.* Ramirez and Garcia argue that because their indictments were secured under Essayli's "name and supervision as an improperly designated acting U.S. Attorney," their indictments are "void and should be dismissed with prejudice." *Id.* at PageID#132.[17] Defendants further argue that at a minimum, Essayli "and all those under his supervision should be disqualified from participating in criminal prosecutions" in the Central District. *Id.* Similarly, Rojas, who was indicted under the supervision of Estrada—a United States

---

[17] Ramirez and Garcia were both indicted in August 2025—which was after 120 days had passed from Essayli's April 2, 2025 appointment under 28 U.S.C. § 546(a). The motions to dismiss cannot challenge Essayli's actions before the 120-day period in § 546(c)(2) had expired. During that period before expiration, Essayli was lawfully acting as Interim United States Attorney.

Attorney lawfully appointed during the prior administration—nevertheless argues that his indictment should be dismissed given "Mr. Essayli's role in supervising this ongoing prosecution." *Rojas*, ECF No. 258 at PageID#1241.

But § 3348(d)(1)'s "no force or effect" directive is narrowly cabined. Under subsection (d)(1), even if a person was improperly appointed and thus was "not acting under section 3345, 3346, or 3347," only that person's "performance of any function or duty" of the office has "no force or effect." In turn, "function or duty" has a specific and limited definition for purposes of § 3348:

> (a)    In this section—
>
>                               .  .  .
>
>          (2)  the term "function or duty" means any function or duty of the applicable office that—
>
>                (A)(i) is established by statute; and
>
>                      (ii) is required by statute to be performed by the applicable officer (*and only that officer*); or
>
>                (B)(i)(I) is established by regulation; and
>
>                           (II) is required by such regulation to be performed by the applicable officer (*and only that officer*); and
>
>                      (ii) includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

5 U.S.C. § 3348(a)(2) (emphases added).

*Gonzalez* interpreted § 3348(a)(2)'s phrase "function or duty" and its qualifier "and only that officer," and concluded that "[a] 'function or duty' under § 3348 must be exclusive to the officer, or nondelegable . . . ." 107 F.4th at 1074. The Ninth Circuit agreed with other Circuits that interpreted "function or duty" for purposes of § 3348 to mean *nondelegable* functions or duties. *Id.* at 1075 ("[T]he definition of 'function or duty' does not include delegable functions and duties.") (citing *Kajmowicz v. Whitaker*, 42 F.4th 138, 148–49 (3d Cir. 2022)). *Gonzales* applied that reading to the "ratification bar" in § 3348(d)(2), under which the actions of an improperly appointed person under the FVRA not only lack "any force and effect" under § 3348(d)(1) but also "may not be ratified" later by a properly appointed person.[18] The Ninth Circuit concluded that because the

---

[18] Section 3348(d) provides:

(1) An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect.

(2) An action that has no force or effect under paragraph (1) may not be ratified.

improperly appointed officer had performed delegable duties, ratification was not barred.  *Id.* at 1076.[19]

By the same logic, it follows that so long as an improperly appointed person was performing delegable duties, the actions would not be subject to the "no force and effect" directive in § 3348(d)(1).  Effectively, § 3348(d)(1) reads "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347 [of the FVRA] . . . in the performance of any [*nondelegable*] function or duty of a vacant office to which [the FVRA's provisions] apply shall have no force or effect."  That is, actions that are delegable are not nullified.  Only the performances of nondelegable duties are "of no force and effect."[20]

_____

[19]  The dissent in *Gonzalez* found "any function or duty" to be ambiguous, and concluded that the term "refers to duties that Congress directs a single officer to perform, and excludes duties that Congress directs more than one officer to perform."  107 F.4th at 1091 (Christen, J. dissenting).  Otherwise, the dissent contended, the majority opinion "renders the FVRA a near-dead letter because the court decides that the FVRA does not apply to the vast majority of actions taken by officials serving in violation of the Act."  *Id.* at 1086.

[20]  *Gonzales* went on to discuss whether actions taken by improperly appointed officials would otherwise be void (subject to being ratified).  In responding to the argument that its interpretation of the statute would "eviscerate the FVRA's remedial scheme," 107 F.4th at 1076, *Gonzales* suggested that "actions of officers who are exempt from § 3348, including its Ratification Bar, can still be found without legal force based on other provisions of the FVRA."  *Id.* at 1077 (footnote omitted) (citing *SW Gen.*, 580 U.S. at 298–305).  *Gonzales* also pointed out that "the FVRA is not the only limit on agency action."  *Id.* (citing 5 U.S.C. § 706(2)'s limitations on agency action).  *Gonzalez* summarized that because "[v]iolations of the FVRA that are not void under § 3348(d) remain voidable on other grounds, subject to applicable defenses," *id.*, the opinion "does not leave the FVRA toothless."

But, even if remedies might otherwise exist for certain actions of improperly appointed officials, it does not mean—as explained later in this Order—that the court must dismiss Defendants' indictments.

And here, the *Ramirez* and *Garcia* indictments did not result from duties or functions that *only* Essayli could have performed; they were obtained by AUSAs after presentment to a grand jury, and signed by AUSAs (not by Essayli) exercising powers delegated from the Attorney General. *See, e.g.*, 28 U.S.C. §§ 510 (Delegation of authority by Attorney General) & 542 (Assistant United States attorneys appointed by the Attorney General); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) ("Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney."). Further, approving or authorizing the *Ramirez* and *Garcia* indictments in August of 2025 are acts that can be performed by others and are delegable duties. *See, e.g.*, *Kelly v. United States*, 989 F.3d 67, 71 (1st Cir. 2021) (rejecting challenge to indictment because of "unrebutted affidavit testimony that the United States Attorney, *through his designees*, reviewed and approved the indictment") (emphasis added); *United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) ("Under 28 U.S.C. § 515(a) and 28 C.F.R. § 0.13(a), the Attorney General and other senior-level DOJ personnel can authorize department attorneys to conduct 'any legal proceeding . . . which United States attorneys are authorized to conduct.'").

In short, § 3348(d)(1) provides no basis to nullify the challenged actions.

## 2. Other Grounds for Dismissal of the Indictments Also Fail

Ramirez and Garcia argue more generally that the court should declare the indictments void and dismiss them because Essayli "acted without lawful authority in supervising, approving, and appearing as a signatory on the indictment." *Ramirez*, ECF No. 10 at PageID#159. And, again, Rojas—having been indicted by a prior regime—seeks dismissal based on Essayli's presumed ongoing supervision of his case. *See Rojas*, ECF No. 258 at PageID#1241.

Ramirez and Garcia argue that voiding the indictment "was the result as to the one defendant at issue in *Giraud II* whose indictment the official had signed while acting without lawful authorization." *Ramirez*, ECF No. 10 at PageID#159–160. But *Giraud II* did not void the indictment—it voided the official's (Alina Habba's) *signing* of the defendant's (Pina's) indictment as "void in violation of [the FVRA]."[21] 2025 WL 2416737, at *27. Indeed, *Giraud II* denied the request to dismiss the indictment (even with a void signature) because,

---

[21] Specifically, *Giraud II* ruled as follows:

> Finally, for the one past action that has been challenged that falls during a term when Ms. Habba was unlawfully appointed, signing Mr. Pina's indictment, the Government does not identify any ratification that has occurred. So although that act may not be automatically "void," it was and remains "voidable." And with no ratification before or since Mr. Pina's challenge, I now declare that action void in violation of [the FVRA].

2025 WL 2416737, at *27 (footnote omitted).

among other reasons, "to dismiss an indictment, a defendant generally must show that some kind of misconduct prejudiced him with regard to the grand jury proceeding."  2025 WL 2416737, at *29 (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988)).  Pina could not show that Habba had any role before the grand jury during the period she was unlawfully serving as the Interim United States Attorney, nor that her role in signing the indictment was anything more than a "technical defect that amounts to harmless error."  *Id.*

Here—unlike with defendant Pina in *Giraud II*—the improperly serving official did not sign the indictments, and so there are no signatures to void.[22]  Moreover, nothing indicates that any presumed role Essayli might have had in approving the indictments prejudiced the grand jury process.[23]  *See, e.g.*, *Bank of Nova Scotia*, 487 U.S. at 256 ("[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." (quoting *United States v. Mechanik*, 475

---

[22]  Nevertheless, the court voids Essayli's appearance on the signature block of the *Ramirez* and *Garcia* indictments.

[23]  At the October 14, 2025 hearing, counsel for the government flatly represented that, prior to the filing of these Motions, Essayli was not involved in any of these three cases.  *See Ramirez*, ECF No. 47 at PageID#497 (hearing transcript) ("I'm affirmatively saying, except for this case since it got to this level, [Essayli] has not been involved in these cases.") (AUSA Robbins).

U.S. 66, 78 (1986))).  Just as important, again, it is undisputed that the indictments here were signed by AUSAs—proper "attorney[s] for the government"—in compliance with Federal Rule of Criminal Procedure 7(c)(1).  *See* Fed. R. Crim. P. 1(b)(1)(B), (D) (defining "attorney for the government" as including "an authorized assistant" of a United States Attorney or "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.").

The grand jury "is a constitutional fixture in its own right."  *United States v. Williams*, 504 U.S. 36, 47 (1992) (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)).  It "is not and should not be captive to any of the three branches."  *Chanen*, 549 F.2d at 1312.  Defendants have not shown a due process violation or misconduct before the grand jury.  Nor have Defendants argued that the grand jury was not properly constituted, or that their indictments are otherwise defective under Federal Rule of Criminal Procedure 12(b)(3).  Even if this court voided Essayli's presumed action in approving Ramirez's and Garcia's indictments, they were still signed by government attorneys and are otherwise proper in form and content.

What is more, the Ninth Circuit reasoned in *Gantt* that "[t]he constitutionality of § 546(d) would not affect the validity of indictments . . . as indictments need only be signed by an 'attorney for the government.'"  194 F.3d at 998 (citing Fed. R. Crim. P. 7(c)(1)).  And as pointed out in *Garcia (Nevada)*, 2025

WL 2784640, at *16, many courts outside the Ninth Circuit agree with *Gantt* on this point and in this context. *See Baldwin*, 541 F. Supp. 2d at 1214 ("Assuming that the appointment of an interim U.S. Attorney, pursuant to § 546(d) violated the Constitution, indictments filed during the tenure of the appointee would still be valid if an authorized Assistant U.S. Attorney signed them."); *see also United States v. Tafoya*, 541 F. Supp. 2d 1181, 1183–84 (D.N.M. 2008) (citing *Gantt*, 194 F.3d at 998); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71–72 (D.P.R. 2000) (same); *cf. United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000) (holding that "an infirmity in the appointment of the United States Attorney—even if one existed—would neither invalidate the notice of appeal nor strip [the First Circuit] of appellate jurisdiction," in part because an AUSA's "ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party") (citing 28 U.S.C. § 516); *United States v. Suescun*, 237 F.3d 1284, 1288 (11th Cir. 2001) ("[E]ven if we were to assume that Keefer's appointment as temporary United States Attorney was invalid . . . we conclude that the appointment did not deprive the district court of jurisdiction to entertain the case and to adjudicate Suescun guilty of the charged offenses.").

Defendants also rely on *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), *appeal dismissed*, 2025 WL 2017539 (11th Cir. Feb. 11, 2025),

which dismissed an indictment after concluding that Special Counsel Jack Smith was improperly appointed. *Trump* concluded that because Special Counsel Smith's appointment "violat[ed] the Appointments Clause . . . the actions of Special Counsel Smith in connection with this proceeding must be set aside." *Id.* at 1303. *Trump* is not binding and, in any event, is distinguishable because the indictments at issue here were signed by other attorneys for the United States, but in *Trump* the indictment had been signed by Special Counsel Smith alone. *See Garcia (Nevada)*, 2025 WL 2784640, at *15 (distinguishing *Trump* on that ground); *Giraud I*, 2025 WL 2196794, at *7 (same). Further, in *Trump*, Special Counsel Smith's "involvement in the case had been essentially ubiquitous, and critically included his seeking of the Superseding Indictment on which the proceeding hinged." *Giraud I*, 2025 WL 2196794, at *7 (footnote and editorial marks omitted). Here, in contrast, there is no indication that Essayli had any involvement in the indictments of Garcia and Ramirez, or in the supervision of their or Rojas' cases.[24]

---

[24] Rojas cites *Trump* for the proposition that his indictment should be dismissed for violations of the Appropriations Clause of the Constitution. *See Rojas*, ECF No. 258 at PageID#1243–1244. But *Trump*, although it discussed the issue, did not dismiss that indictment on such ground; it "[left] the matter of funding remedy for any applicable future review." 740 F. Supp. 3d at 1308. Rojas argues that, because Essayli is not lawfully appointed, Essayli has no authority to spend funds authorized by Congress for the Central District. But he does not explain how—even assuming funds are being expended on his prosecution by someone without authority—such expenditures from valid appropriations would render the prosecution invalid.

(continued . . . )

Recognizing that they have no evidence (only information and belief), Ramirez and Garcia ask the court to authorize discovery into the extent of Essayli's involvement in investigating, supervising, or approving their prosecutions while he was acting without authority. But absent some actual basis to suspect undue involvement, that request would amount to a fishing expedition. As noted earlier, the government has affirmatively represented that "except for this case since it got to this level, [Essayli] has not been involved in these cases." *Ramirez*, ECF No. 47 at PageID#497 (hearing transcript). It has long been established that the "'indispensable secrecy of grand jury proceedings,' must not be broken except where there is a compelling necessity," and such necessity "must be shown with particularity." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). As *Giraud II* reasoned in denying a request for similar discovery, "[t]o gain access to grand jury materials, a defendant must show 'that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" 2025 WL 2416737, at *29 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (other citations omitted). "Vague allegations, bald assertions of impropriety, or speculation about what the grand jury materials may reveal are insufficient to establish a particularized need

---

As the government notes, here "there is no dispute about the funding for the grand jury that indicted Rojas or the prosecutors who are prosecuting him." *Ramirez*, ECF No. 33 at PageID#270 n.10.

for disclosure." *Id.* (quoting *United States v. Dudenhoefer*, 2023 WL 7411000, at

*6 (W.D. Pa. Nov. 9, 2023)) (internal quotation marks omitted). Without some

showing of "a particularized need for disclosure," *id.*, the court declines to

authorize such discovery in these cases.[25]

Defendants also rely on *United States v. Bundy*, 968 F.3d 1019 (9th

Cir. 2020), in seeking dismissal with prejudice. *Bundy* upheld the dismissal of an

indictment with prejudice under the district court's supervisory powers as a

sanction for egregious and prejudicial violations of *Brady v. Maryland*, 373 U.S.

83 (1963). It applied this test:

---

[25] As for obtaining discovery into the government's charging decisions, Defendants would need to overcome Federal Rule of Criminal Procedure 16(a)(2), which precludes "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court explained that there is a "presumption of regularity" that applies to "prosecutorial decisions, and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* at 464 (quoting *United States v. Chemical Found., Inc.*, 272 US. 1, 14–15 (1926)). "Of course, a prosecutor's discretion is 'subject to constitutional constraints[,]'" *id.* (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)), such as those "imposed by . . . the Due Process Clause of the Fifth Amendment." *Id.* In reversing a grant of discovery on a claim of selective prosecution, *Armstrong* reasoned in part that discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Id.* at 468. It thus imposed "a rigorous standard for discovery in aid of" a selective prosecution claim. *Id.* The Supreme Court explained that courts require "some evidence tending to show the existence of the essential elements of" such a claim. *Id.* at 470. It must be based on "a credible showing" and not "personal conclusions based on anecdotal evidence." *Id.*

Although the Supreme Court analyzed a claim of selective prosecution, this court is guided by *Armstrong*'s reasoning in the present context regarding Essayli's role in bringing the *Ramirez* and *Garcia* indictments. Applying a "rigorous standard" requiring a "credible" showing of "some evidence," the court denies a request for discovery into "the extent to which Mr. Essayli investigated, supervised, or approved [their] prosecutions while acting without lawful authority." *Ramirez*, ECF No. 10 at PageID#162.

> A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."

*Bundy*, 968 F.3d at 1030 (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). But *Bundy* reiterated that dismissal with prejudice is "[t]he most drastic remedy." *Id.* at 1031. "Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is '(1) flagrant misbehavior and (2) substantial prejudice.'" *Id.* (quoting *United States v. Kearns*, 5 F.3d 1252, 1253 (9th Cir. 1993)). And *Bundy* recognized that dismissal even without prejudice is not necessary if there are other less drastic options available. *Id.*

Here, as reasoned earlier, there has been no showing that Essayli's supervision as Acting United States Attorney improperly interfered with the grand jury process or led to any other specific actions that prejudiced Defendants. Everything before the court indicates that the prosecution's substantive actions have been performed by lawfully appointed AUSAs. There has been no showing of a need for dismissal, much less the "drastic remedy" of dismissal with prejudice. *Id.* at 1031.

In support of dismissal or other remedies, Defendants point out that the government has repeatedly attempted to utilize similar methods of installing Acting United States Attorneys in the Districts of New Jersey, Nevada, New Mexico, and the Eastern District of Virginia (among others). But when Essayli assumed the acting role on July 29, 2025, no court had disapproved of the practice. *Giraud II* disqualified the Acting United States Attorney for the District of New Jersey on August 21, 2025, but an appeal of that decision is pending in the Third Circuit. *Garcia (Nevada)* similarly disqualified the Acting United States Attorney for the District of Nevada—but that decision came on September 30, 2025, after the motions were filed in these cases, and after the government had filed its Opposition. Neither of those decisions is binding on this district court. No other court—and significantly, no circuit court—has yet ruled. And certainly the statutes and legal issues surrounding the filling of vacant PAS offices are complicated. In the present posture, the court finds no reason to impose *Bundy*'s "drastic remedy" of dismissal with prejudice, or dismissal without prejudice, merely because the government did not concede and chose to resist efforts to disqualify Essayli in this district. The proceedings have not reached a stage in this court where sanctions for egregious government conduct such as those imposed in *Bundy* are appropriate.

### 3. *Essayli Is Disqualified from Participating in Defendants' Prosecutions as Acting United States Attorney, But Remains the First Assistant*

The court has concluded that Essayli is not lawfully serving as Acting United States Attorney. His future actions in that capacity would include actions that are void or voidable, as he would be exercising power that he does not lawfully possess. *See Giraud I*, 2025 WL 2196794, at *8 (citing *Collins*, 594 U.S. at 258); *cf. Lucia v. S.E.C.*, 585 U.S. 237, 251 (2018) ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188 (1995))). Essayli cannot continue to perform any role as Acting United States Attorney, including prosecuting or supervising these cases in that role. If he were to do so, his actions would violate the exclusivity provisions of § 3347(a)(1). Accordingly, the court disqualifies Essayli from participating in or supervising Defendants' cases as Acting United States Attorney.[26]

---

[26] The government also argues that Defendants lack standing to challenge their indictments on the ground that Essayli was improperly serving as Acting United States Attorney because they were not harmed. *See Ramirez*, ECF No. 33 at PageID#270–271. Defendants, however, certainly have standing to defend themselves and to raise any legitimate defense on their own behalf. *See, e.g.*, *Campbell v. Louisiana*, 523 U.S. 392, 400 (1998) ("It is axiomatic that one has standing to litigate his or her own due process rights"). But they lack standing to seek such affirmative relief on behalf of *other* defendants (who may not wish to disqualify Essayli or who simply do not care). *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.") (citations omitted).

As the government points out, however, Essayli was properly appointed as a Special Attorney and designated as the FAUSA for the Central District. *See* Gov't Suppl. Mem. at 4; *Ramirez*, ECF No. 46 at PageID#472. Although Essayli was never lawfully serving as Acting United States Attorney, he remains the FAUSA. *See Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 424 (6th Cir. 2024) ("In acting-officer situations, 'the general expectation [is] that an acting officer will continue to occupy his own office and perform its duties even while he is temporarily acting in another office.'") (quoting Designating an Acting Dir. of Nat'l Intel., 43 Op. O.L.C. 291, 2019 WL 6655655, at *9 (Nov. 15, 2019)). The court has no basis to preclude Essayli from performing the lawful duties of a FAUSA. And in *that* capacity, he could supervise these prosecutions (even though he cannot do so as Acting United States Attorney).

Contrary to Defendants' argument, if Essayli supervises these prosecutions as the FAUSA, he would not be doing so in violation of the FVRA because that statute precludes him from serving as Acting United States Attorney. The FVRA says nothing about other duly-authorized positions. That is, Essayli would not be "continu[ing] to wield the U.S. Attorney's powers." Def's Suppl. Mem. at 7; *Ramirez*, ECF No. 47 at PageID#486 (hearing transcript).

This is so even if, as Defendants argue, the office of the United States Attorney for the Central District "shall remain vacant" until someone is lawfully

appointed to perform its duties.  *See* 5 U.S.C. § 3348(b)(1).[27]  Until then, the

Attorney General may perform those functions and duties.  *See* 5 U.S.C.

§ 3348(b)(2).  And, through various provisions, the Attorney General may delegate

many, if not most, of those duties to other officials.  *See, e.g.*, 28 U.S.C. §§ 509,

510, 515, 516, 519, 542, and 543; 28 C.F.R. § 0.137.[28]

---

[27]  Section 3348(b) provides:

> Unless an officer or employee is performing the functions and
> duties in accordance with sections 3345, 3346, and 3347, if an
> officer of an Executive agency (including the Executive Office of
> the President, and other than the Government Accountability
> Office) whose appointment to office is required to be made by the
> President, by and with the advice and consent of the Senate, dies,
> resigns, or is otherwise unable to perform the functions and duties
> of the office—

> (1) the office shall remain vacant; and

> (2) in the case of an office other than the office of the head of an
> Executive agency (including the Executive Office of the President,
> and other than the Government Accountability Office), only the
> head of such Executive agency may perform any function or duty
> of such office.

[28]  Although § 3448(d)(2) provides that "only the head of such Executive agency may
perform any function or duty of such office," the court does not read that to mean the Attorney
General must personally perform all the functions and duties of the United States Attorney for
the Central District.  Rather, the more specific statutes that define the Attorney General's role
govern her powers.  To the extent the provision is ambiguous, the court's reading is consistent
with the FVRA's legislative history on this point, which provides:

> [Under § 3348], except in the case of the head of an executive
> agency, only the head of that agency himself or herself could
> perform any function or duty of the office as defined in the
> legislation.  Delegable functions of the office could still be
> performed by other officers or employees, but the functions and

(continued . . . )

Such a result, in this instance, stems largely from the statutes and regulations that establish the structure of the Department of Justice and define the Attorney General's duties and powers.  Those statutes and regulations permit the delegation of many—if not most—of the Attorney General's duties.  They permit the appointment of officers to perform those delegated duties.  And they authorize AUSAs to perform duties that are not exclusive to the office of the United States Attorney.  *See, e.g.*, *Baldwin*, 541 F. Supp. 2d at 1196 ("Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney."); *Weyhrauch*, 544 F.3d at 974 ("Under 28 U.S.C. § 515(a) and 28 C.F.R. § 0.13(a), the Attorney General and other senior-level DOJ personnel can authorize department attorneys to conduct "any legal proceeding . . . which United States attorneys are authorized to conduct.").

The FVRA, however, does not deal only with vacancies in the Department of Justice.  It is a broader statute, addressing acting service across a wide range of PAS offices throughout the Executive branch—many of which may be governed by statutes or regulations defining "functions and duties" in more restrictive terms and limiting authority to delegate.  *See, e.g.*, *Gonzalez*, 107 F.4th

---

duties to be performed only by the officer whose appointment is by the President by and with the advice and consent of the Senate could be performed solely by the head of the executive agency.

S. Rep. No. 105-250, at 18.

at 1080 ("[E]ven assuming various department heads can delegate virtually all of their functions or duties, this does not change Congress's authority under the current statutory regime to alter the scope of those delegations, as it has done before.") (citing several statutes that limit delegation of powers of department heads); *SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 80 (D.C. Cir. 2015) (discussing the role of the General Counsel of the National Labor Relations Board and stating that "if the General Counsel's office were vacant, the NLRB would not be issuing complaints.") (internal quotation marks and citation omitted), *affirmed*, 580 U.S. 288 (2017).

The court shares Defendants' concern that this result appears to "be little remedy at all." Def's Suppl. Mem. at 7; *Ramirez*, ECF No. 47 at PageID#486 (hearing transcript). And the court generally agrees that the Department of Justice "should not be able to accomplish effectively what the statute says [it] cannot do outright." *Ramirez*, ECF No. 47 at PageID#502 (hearing transcript). This court's role, however, is to apply the statutes as written and as interpreted by binding case law. The result—that Essayli may perform certain functions and duties as the FAUSA—stems from the power of the Attorney General to delegate authority. "But concerns regarding the current ability of department heads to delegate authority do not sound in statutory interpretation; rather, they are concerns of 'undesirable policy consequences.'" *Gonzales*, 107 F.4th at 1080 (quoting *Bostock*

53

*v. Clayton County*, 590 U.S. 644, 680 (2020)).  "[The court] cannot concern [itself] with policy consequences.  'The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress.'"  *Id.* (quoting *Bostock*, 590 U.S. at 680–81).[29]

## IV.  CONCLUSION

Simply stated:  Essayli unlawfully assumed the role of Acting United States Attorney for the Central District of California.  He has been unlawfully serving in that capacity since his resignation from the interim role on July 29, 2025.  Essayli may not perform the functions and duties of the United States Attorney as Acting United States Attorney.  He is disqualified from serving in that role.

---

[29]  Likewise, in *Kajmowicz* the Third Circuit observed:

> Still, we acknowledge that most statutes that confer authority will permit subdelegation, which means that many statutory functions and duties will be ratifiable under the Vacancies Reform Act.  *See Stand Up for Cal.! v. Dep't of Interior*, 298 F. Supp. 3d 136, 137 (D.D.C. 2018) ("[I]n practice, there are very few duties that cannot be delegated to an 'acting' officeholder . . . or even another official who acts in the place of the principal pursuant to agency regulations or orders."), *aff'd*, 994 F.3d 616 (D.C. Cir. 2021); *see also Arthrex*, 35 F.4th at 1337 (noting that the scope of section 3348 is "vanishingly small").  Congress, however, can always recalibrate section 3348.  If it wishes, it can bring statutory duties within section 3348(d)'s ambit by writing or rewriting those statutes to require only the named officer perform those duties.  *See Stand Up for Cal.!*, 994 F.3d at 622.

*Kajmowicz*, 42 F.4th at 151.

For the reasons stated, however, the court does not dismiss Defendants' indictments, as they were lawfully signed by other attorneys for the government and there has been no showing of due process violations or other irregularities in Defendants' prosecutions resulting from Essayli's unlawful service as Acting United States Attorney.  Moreover, Essayli remains the FAUSA and may perform the functions and duties of *that* office.

IT IS SO ORDERED.

DATED:  October 28, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

# APPENDIX

## THE FEDERAL VACANCIES REFORM ACT

### 5 U.S.C. § 3345.  Acting Officer

**(a)** If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—

> **(1)** the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;

> **(2)** notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or

> **(3)** notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if—

>> **(A)** during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and

>> **(B)** the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule.

**(b)(1)** Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if—

> **(A)** during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person—

      **(i)** did not serve in the position of first assistant to the office of such officer; or

      **(ii)** served in the position of first assistant to the office of such officer for less than 90 days; and

    **(B)** the President submits a nomination of such person to the Senate for appointment to such office.

  **(2)** Paragraph (1) shall not apply to any person if—

    **(A)** such person is serving as the first assistant to the office of an officer described under
subsection (a);

    **(B)** the office of such first assistant is an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate; and

    **(C)** the Senate has approved the appointment of such person to such office.

**(c)(1)** Notwithstanding subsection (a)(1), the President (and only the President) may direct an officer who is nominated by the President for reappointment for an additional term to the same office in an Executive department without a break in service, to continue to serve in that office subject to the time limitations in section 3346, until such time as the Senate has acted to confirm or reject the nomination, notwithstanding adjournment sine die.

## 5 U.S.C. 3346. Time Limitation

**(a)** Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—

    **(1)** for no longer than 210 days beginning on the date the vacancy occurs; or

    **(2)** subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

**(b)(1)** If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.

**(2)** Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve—

    **(A)** until the second nomination is confirmed; or

    **(B)** for no more than 210 days after the second nomination is rejected, withdrawn, or returned.

**(c)** If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

## 5 U.S.C. § 3347.  Exclusivity

**(a)** Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless—

    **(1)** a statutory provision expressly—

        **(A)** authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or

        **(B)** designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or

    **(2)** the President makes an appointment to fill a vacancy in such office during the recess of the Senate pursuant to clause 3 of section 2 of article II of the United States Constitution.

**(b)** Any statutory provision providing general authority to the head of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies.

## 5 U.S.C. § 3348.  Vacant office

**(a)** In this section—

> **(1)** the term "action" includes any agency action as defined under section 551(13); and

> **(2)** the term "function or duty" means any function or duty of the applicable office that—

>> **(A)(i)** is established by statute; and

>>> **(ii)** is required by statute to be performed by the applicable officer (and only that officer); or

>> **(B)(i)(I)** is established by regulation; and

>>> **(II)** is required by such regulation to be performed by the applicable officer (and only that officer); and

>>> **(ii)** includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

**(b)** Unless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347, if an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—

> **(1)** the office shall remain vacant; and

> **(2)** in the case of an office other than the office of the head of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office), only the head of such Executive agency may perform any function or duty of such office.

**(c)** If the last day of any 210-day period under section 3346 is a day on which the Senate is not in session, the second day the Senate is next in session and receiving nominations shall be deemed to be the last day of such period.

**(d)(1)** An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any

function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect.

**(2)** An action that has no force or effect under paragraph (1) may not be ratified.

**(e)** This section shall not apply to—

**(1)** the General Counsel of the National Labor Relations Board;

**(2)** the General Counsel of the Federal Labor Relations Authority;

**(3)** any Inspector General appointed by the President, by and with the advice and consent of the Senate;

**(4)** any Chief Financial Officer appointed by the President, by and with the advice and consent of the Senate; or

**(5)** an office of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) if a statutory provision expressly prohibits the head of the Executive agency from performing the functions and duties of such office.

## 5 U.S.C. § 3349a. Presidential inaugural transitions

**(a)** In this section, the term "transitional inauguration day" means the date on which any person swears or affirms the oath of office as President, if such person is not the President on the date preceding the date of swearing or affirming such oath of office.

**(b)** With respect to any vacancy that exists during the 60-day period beginning on a transitional inauguration day, the 210-day period under section 3346 or 3348 shall be deemed to begin on the later of the date occurring—

**(1)** 90 days after such transitional inauguration day; or

**(2)** 90 days after the date on which the vacancy occurs.

# UNITED STATES ATTORNEYS

## 5 U.S.C. § 541.  United States attorneys

**(a)** The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

**(b)** Each United States attorney shall be appointed for a term of four years.  On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

**(c)** Each United States attorney is subject to removal by the President.

## 5 U.S.C. § 542.  Assistant United States attorneys

**(a)** The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires.

**(b)** Each assistant United States attorney is subject to removal by the Attorney General.

## 5 U.S.C. § 543.  Special attorneys

**(a)** The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country.

**(b)** Each attorney appointed under this section is subject to removal by the Attorney General.

**(c)** Indian country.--In this section, the term "Indian country" has the meaning given that term in section 1151 of title 18.

## 5 U.S.C. § 546.  Vacancies

**(a)** Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

**(b)** The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

**(c)** A person appointed as United States attorney under this section may serve until the earlier of—

> **(1)** the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

> **(2)** the expiration of 120 days after appointment by the Attorney General under this section

## 5 U.S.C. § 547.  Duties

Except as otherwise provided by law, each United States attorney, within his district, shall—

> **(1)** prosecute for all offenses against the United States;

> **(2)** prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned;

> **(3)** appear in behalf of the defendants in all civil actions, suits or proceedings pending in his district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery of any money exacted by or paid to these officers, and by them paid into the Treasury;

> **(4)** institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings; and

> **(5)** make such reports as the Attorney General may direct.

<u>THE ATTORNEY GENERAL</u>

## 28 U.S.C. § 509.  Functions of the Attorney General

All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General except the functions—

**(1)** vested by subchapter II of chapter 5 of title 5 in administrative law judges employed by the Department of Justice;

**(2)** of the Federal Prison Industries, Inc.; and

**(3)** of the Board of Directors and officers of the Federal Prison Industries, Inc.

## 28 U.S.C. § 510.  Delegation of authority

The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

## 28 U.S.C. § 515.  Authority for legal proceedings; commission, oath, and salary for special attorneys

**(a)** The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

**(b)** Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath.  The Attorney General shall fix the annual salary of a special assistant or special attorney.

## 28 U.S.C. § 516.  Conduct of litigation reserved to Department of Justice

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

## 28 U.S.C. § 519.  Supervision of litigation

Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

## CERTIFICATE OF COMPLIANCE AND SERVICE

1.      The body of this letter contains 350 words, thereby complying with the 350-word limit in Federal Rule of Appellate Procedure 28(j).

2.      This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), the typestyle requirements of Rule 32(a)(6), and the formatting requirements of Third Circuit Local Appellate Rule 32.1, and has been prepared in a proportionally spaced, 14-point serif typeface using Microsoft WORD for Microsoft 365's word processing system.

3.      The PDF version of this letter was prepared on a computer that is automatically protected by a virus detection program, namely a continuously updated version of Trellix Endpoint Security, and no virus was detected.

4.      I caused a copy of this letter to be filed upon all counsel of record through the notice of electronic filing generated by this Court electronic case filing system.


Mark E. Coyne
Supervisory Assistant U.S. Attorney
Chief, Appeals Division