

**U.S. Department of Justice**

*950 Pennsylvania Avenue N.W.*
*Washington, DC 20530-0001*

October 30, 2025

The Honorable Patricia S. Dodszuweit
Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

     Re:    *United States v. Giraud*, No. 25-2635 & *United States v. Pina*, No. 25-2636
           Argued October 20, 2025 before Judges Restrepo, Smith and Fisher

Dear Ms. Dodszuweit:

     As liaison counsel, I certify on behalf of the parties the accuracy of the attached transcript of the October 20 oral argument in these appeals. The transcript includes the court reporter's certification. I am mailing today three hard copies to the Clerk's Office.

               Respectfully submitted,

               PAMELA J. BONDI
                 *Attorney General*

               TODD BLANCHE
                 *Deputy Attorney General*

               STANLEY WOODWARD
                 *Associate Attorney General*

               HENRY WHITAKER
                 *Counselor to the Attorney General*

ALINA HABBA
   *Acting U.S. Attorney*
   *Special Attorney*

MATTHEW R. GALEOTTI
   *Acting Assistant Attorney General*

KATHERINE TWOMEY ALLEN
   *Criminal Division*
   *U.S. Department of Justice*

MARK E. COYNE
   *Supervisory Assistant U.S. Attorney*
   *Chief, Appeals Division*
   *District of New Jersey*
               *950 Pennsylvania Avenue NW*
               *Washington, DC 20530*
               *(202) 616-1935*

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| United States of America, | . | Third Circuit: #25-2635 |
| | . | |
| Appellant, | . | |
| | . | |
| V. | . | |
| | . | |
| Julien Giraud, Jr.; | . | |
| Julien Giraud, III, | . | |
| | . | |
| Appellees. | . | |

................................

| | | |
|---|---|---|
| United States of America, | . | Third Circuit: #25-2636 |
| | . | |
| Appellant, | . | |
| | . | |
| V. | . | |
| | . | |
| Cesar Humberto Pina, | . | |
| | . | |
| Appellee. | . | |

................................

       Transcript from the audio recording of the oral argument held October 20, 2025 at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania. This transcript was produced by Writer's Cramp, Inc., certified court transcribers for the United States Courts of Appeals.

BEFORE CIRCUIT JUDGES:

THE HONORABLE L. FELIPE RESTREPO
The Honorable D. BROOKS SMITH
THE HONORABLE D. MICHAEL FISHER

APPEARANCES:

For Appellant:                Henry C. Whitaker, Esq.
                              United States Department
                              Of Justice
                              Office of the Attorney General
                              Room 5134
                              950 Pennsylvania Ave, NW
                              Washington, DC 20530

                              Mark E. Coyne, Esq.
                              Office of the United States
                              Attorney
                              970 Broad Street-Room 700
                              Newark, NJ 07102

For Appellees:                Abbe D. Lowell, Esq.
                              Lowell & Associates
                              1250 H. Street, NW - Ste. 250
                              Washington, DC 20005

                              James I. Pearce, Esq.
                              Association of Criminal Defense
                              Lawyers of New Jersey
                              Washington Litigation Group
                              Ste. 440
                              5335 Wisconsin Avenue, NW
                              Washington, DC 20015

Transcribing Firm:            Writer's Cramp, Inc.
                              1027 Betty Lane
                              Ewing, NJ 08628
                              609-588-8043

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          JUDGE RESTREPO:  Good morning, everybody.  Before we

2     start, I would just like to acknowledge our staff who are

3     working, notwithstanding the fact that their pay will be

4     delayed.  So it is greatly appreciated.  Please know how much

5     we all appreciate your efforts, and not just the staff, but

6     everybody tethered to the Courts.

7          JUDGE SMITH:  I'll second that.  Having gone through

8     during 37 years as an Article III Judge, a couple of shutdowns

9     before, this is perhaps been the most frustrating given the

10     lack of dialogue.  So I want to thank our Court family

11     throughout the Third Circuit but especially those who are here

12     reliably today.  Thank you.

13          JUDGE FISHER:  And I guess I add, likewise.  I'm

14     thankful to everybody.

15          JUDGE RESTREPO:  So we'll call our case.  Our case

16     is United States of America vs. Giraud and United States of

17     America vs. Pina, 25-2635, 25-2636.  Mr. Whitaker, whenever

18     you're ready, sir.  Good morning.

19          MR. WHITAKER:  Good morning, Your Honor.  Thank you.

20     May it please the Court.  Henry Whitaker for the United

21     States.  And I would save three minutes for rebuttal.

22          JUDGE RESTREPO:  Sure.

23          MR. WHITAKER:  So the -- Congress has afforded the

24     Executive Branch a number of overlapping mechanisms to deal

25     with vacancies in offices that require Senate confirmation.

1    In this case, the Executive Branch admittedly took a series of

2    precise, and precisely timed, steps not to evade or circumvent

3    those mechanisms but rather to be scrupulously careful to

4    comply with them.

5            JUDGE SMITH:  Counsel, could I begin with a question

6    that is based upon my not having seen such a representation

7    before?  But when I picked up your moving brief, what we call

8    the "blue brief" in this case, I was struck by the names on

9    the brief, on the left, Alina Habba, Acting U.S. Attorney, and

10    right underneath, Special Attorney.  And, of course, the usual

11    question that a judge would ask is which?  What?  Who is this

12    person?  What actual position are they serving?  So --

13            MR. WHITAKER:  Sure.  The answer, Your Honor, is --

14            JUDGE RESTREPO:  And when?

15            MR. WHITAKER:  Certainly, Your Honor.  The answer is

16    both.  An acting designation is a designation of duties.  But

17    someone who is acting a particular role always has an

18    underlying appointment.  For example, it's very -- it's

19    typically the case at Main Justice that the First Assistant is

20    a Principal Deputy Assistant Attorney General, for example.

21    And that person would both hold the office of Principal Deputy

22    Assistant Attorney General and, if there is no -- if there is

23    a vacancy in the office for which that person is second in

24    command, would also be the acting by default under the Federal

25    Vacancies Reform Act.

1          In this instance, the situation is not substantively

2    different from that commonly occurring scenario.  Ms. Habba

3    was appointed to the Office of Special Attorney and then

4    designated by the Attorney General to be First Assistant

5    United States Attorney in accordance with long-standing

6    Department of Justice regulations.  So I think it's fair to

7    say, Judge Smith, that she is both.  And what that --

8          JUDGE SMITH:  So are her duties and responsibilities

9    and powers coextensive but not coterminous, or are they

10   coextensive and coterminous?

11         MR. WHITAKER:  I think they are coextensive and

12   coterminous, insofar as she --

13         JUDGE SMITH:  So isn't that a redundancy?

14         MR. WHITAKER:  Well, let me just put it in terms, I

15   think, that -- she is empowered by virtue of her status as

16   Acting United States Attorney to perform all of the functions

17   and duties as --

18         JUDGE FISHER:  So she has full power as Acting

19   United States Attorney?

20         MR. WHITAKER:  Yes.  That's right, Your Honor.  Now,

21   I would just hasten to --

22         JUDGE RESTREPO:  Is that by virtue of her

23   designation to the position?

24         MR. WHITAKER:  It is so, Your Honors, by virtue of

25   her appointment as First Assistant, which, by operation of

1    3345(a)(1) of the Federal Vacancies Reform Act would make her

2    the acting.  Now, I would hasten to clarify that we also have

3    a backup argument in addition to relying on her acting

4    designation that --

5              JUDGE SMITH:  Before that -- and we do want to hear

6    that.  But before you get to that --

7              MR. WHITAKER:  Certainly.

8              JUDGE SMITH:  -- backup argument, are there any

9    functional differences between those two positions, or are

10    they just titles?

11              MR. WHITAKER:  Between -- I apologize.  Between

12    which two positions?

13              JUDGE SMITH:  Between the Acting U.S. Attorney and

14    the Special Attorney?

15              MR. WHITAKER:  Yes, there are differences.  So the

16    Special Attorney appointment and her designation as FAUSA

17    makes her the acting by virtue of the operation of the FVRA.

18    The Attorney General, simply by virtue of appointing somebody

19    as Special Attorney, does not in and of herself have power

20    separate from the FVRA to make someone who was a Special

21    Attorney perform the functions and duties of all the offices.

22       She has general authority under 28 U.S.C. 509 and 510 to

23    designate people to perform her delegable functions.  But that

24    would not include, as a general matter, the ability to make

25    someone acting, except by virtue of the operation of the FVRA.

1   And that's true under 3345(a)(1) because 3345(a)(1) says that

2   the First Assistant to the office of such officer -- and "such

3   officer" refers to the vacant PAS office, in this case, the

4   Office of U.S. Attorney for the District of New Jersey.

5         And she has been, by virtue of her appointment as Special

6   Attorney and designation as FAUSA, she, by operation of that

7   provision of the FVRA, automatically becomes the acting, which

8   empowers her to perform all of the functions and duties of

9   that office.  And there is no requirement in the statute,

10  contrary to the argument from the Defendants, that the First

11  Assistant have held that office as of the moment the vacancy

12  arose.

13        Congress, in the course of legislative debates on the

14  Federal Vacancies Reform Act in 1998, deliberately broadened

15  the language that had previously existed in the statute for a

16  number of years that did, admittedly, require the First

17  Assistant to the be the First Assistant to the particular

18  officer who vacated that -- the posts.

19        JUDGE FISHER:  You know, it seems to me, now that

20  you've gotten to the Federal Vacancy Reform Act, you know, it

21  seems to me that the -- in the language of the Federal Vacancy

22  Reform Act, specifically 3345, okay, that Congress expresses a

23  strong preference that the person serving as the, {quote},

24  "Acting Officer" for whatever agency it is, be an experienced

25  person who served in a particular office, or on some other

1    comparable federal office.  That's what it seems to me when I
2    read 3345 and when I read your brief, and I read the
3    opposition's brief, do you agree with that?
4                MR. WHITAKER:  I do not agree with that, actually,
5    Your Honor.  And I think Congress --
6                JUDGE FISHER:  Well -- and how do you -- what -- on
7    what basis do you express that disagreement?
8                MR. WHITAKER:  Well, because the -- 3345(a)(1) talks
9    about the First Assistant, which in Main Justice at least,
10   it's almost always -- and throughout the government, it's
11   almost always a political appointee, actually.  It's --
12               JUDGE RESTREPO:  In U.S. Attorney's Offices?
13               JUDGE SMITH:  Yeah.
14               MR. WHITAKER:  Well, in U.S. Attorney's Offices, it
15   often is a career official.  But I can tell you, Your Honor,
16   we have to interpret the statute consistently across the
17   entire government.  Generally speaking, the First Assistant is
18   absolutely a political appointee.  And I think that is an
19   extremely odd result.
20               JUDGE FISHER:  But there's some language --
21               MR. WHITAKER:  The first -- excuse me.
22               JUDGE FISHER:  -- there's language in 3345 that
23   would reference experience for the person 90 days within the
24   prior 365 days.  So it's hard for me to see when you look --
25   when I look at the total section itself it's because it's --

1    you know, it's not the best and most clearest statute that

2    I've ever read.  I'll grant you that.  There's some confusion

3    in it.  But it does say to me that Congress had a very

4    specific intent.  They wanted an experienced person to be that

5    Acting Officer.

6         MR. WHITAKER:  Well, Your Honor, I think, actually,

7    the contrast between -- Your Honor is referring to the

8    presidential designation authority under 3345(a)(3) only

9    highlights that a similar requirement, actually, is not

10   attached to (a)(1).  And that -- by the way, that's true even

11   under the other side's argument because their argument would

12   allow at Main Justice the Attorney General to appoint First

13   Assistants the second before a PAS Office is vacated.  And

14   that person, you know, with no experience in the agency, a

15   pure political --

16        JUDGE FISHER:  Well, you say -- you point to (a)(1).

17   I mean, (a)(1) specifically says that the First Assistant

18   shall be the Acting Attorney for the Office, the Acting

19   Officer for the Office.  I mean, someone who is a First

20   Assistant -- and I understand that there's -- you know, sure,

21   sometimes, and I'm not going to say most -- sometimes, there

22   may be a political appointment who comes in and becomes the

23   First Assistant.  But that doesn't happen typically until the

24   United States Attorney would get confirmed.

25        MR. WHITAKER:  Your Honor, I can tell you that, in

1   my experience dealing with these issues, the First Assistant

2   is -- throughout the government are overwhelmingly political

3   appointees.  And Congress understood, by the way, when it

4   enacted (a)(1) that agencies were going to have substantial

5   discretion over the identity of the First Assistant.  And

6   there's a specific reference in --

7           JUDGE SMITH:  What do you consider a "political

8   appointee" because all I can tell you is that, in my

9   experience, the appointment of -- selection of the First

10  Assistant in a U.S. Attorney's Office is anything but what I

11  would consider a political appointee.  But that may be how we

12  define the term "political."

13          MR. WHITAKER:  Well, I think the principal

14  definition of a "political appointee" is that -- it's someone

15  who, basically, the agency head is empowered to remove at

16  will.  By the way, that's actually true even when the -- even

17  when the First Assistant is designated as a -- as occupying an

18  underlying career position because there's no dispute that the

19  particular regulation gives the Attorney General authority to

20  switch that designation up as she pleases.

21      And so even when that's a political -- even when the

22  First Assistant even in a U.S. Attorney's Office -- and,

23  again, that's not necessarily the norm throughout the

24  government -- happens to encumber a career spot.  The Attorney

25  General is always empowered to switch that.  And, in fact, she

1   does do that from time to time.  And so I do think that that

2   is -- that kind of at-will authority makes even the designated

3   First Assistants in U.S. Attorney's Office to be something

4   akin to political appointees.  And, sometimes, career

5   officials do occupy political positions.

6       But, Judge Fisher, just to pick up on your point, I think

7   the contrast between the language used in (a)(3) -- and

8   there's also similar language, by the way, in (b)(1) of the

9   statute -- where Congress took pains to specify when it wanted

10  the type of service involved to turn on timing.  And it did

11  not include any such language in (a)(1).

12          JUDGE SMITH:  When you say "timing," you're

13  referring to a duration of time to acquire experience perhaps?

14          MR. WHITAKER:  Well, not just that, Your Honor.  But

15  also  --

16          JUDGE SMITH:  During the periods of time under

17  (b)(1)(a)?

18          MR. WHITAKER:  Well, absolutely, but not just that,

19  I mean, any temporal requirement.  And just to illustrate one

20  thing, I mean, I think, actually, the contrast with (a)(2) is

21  pretty significant because (a)(2), if you remember, (a)(2)

22  permits the President to make designations of acting officials

23  for people who are {quote} "serving in --

24          JUDGE FISHER:  Serves in the office.

25          MR. WHITAKER:  Serves in the office.  And,

1   presumably, there's no requirement that that person have

2   served in the office at the particular time the vacancy arose

3   there.  So I think it's fair to say that, structurally, in

4   (a)(1) --

5           JUDGE FISHER:  So you'll agree with me there that

6   (a)(2) at least talks about someone who has experience in the

7   office?

8           MR. WHITAKER:  Well, no.  Actually, the person,

9   actually, does not have to have any experience in the office

10  because it's actually any PAS official throughout the

11  government.  Marco Rubio, the Secretary of State, was

12  designated the Archivist of the United States.  There does not

13  actually have to be any experience.

14          JUDGE FISHER:  That's -- that is (a)(3).

15          MR. WHITAKER:  No, no.  Under -- that's (a)(2), Your

16  Honor, because what (a)(2) says -- and this has been a

17  longstanding feature of the statute -- is that the President

18  can designate any PAS official confirmed to whatever office as

19  any -- as an acting official in any other PAS office.

20          JUDGE FISHER:  Right.  You're right, in office, yes,

21  I agree.

22          MR. WHITAKER:  Yeah.  And so I think that

23  illustrates that there is no categorical requirement that

24  there be some, like, level of experience associated with the

25  person who is named the acting --

1    JUDGE FISHER:  Well, I don't know.  Maybe we can

2    debate that issue.  But I'm just saying that I -- when I read

3    the statute, it appears to me that experience was in the minds

4    of Congress when they drafted 3345(a).  You can disagree,

5    but --

6    MR. WHITAKER:  Well, I do disagree with that.  And

7    one of the reasons I disagree with that is because -- and we

8    cite this legislative history and the legislative process in

9    our reply brief -- there were actually objections to the

10   narrower language of the First Assistant provision, which did

11   say it's earlier point from the legislative process First

12   Assistant to the office of such officer, and there were

13   objections to that based on the fact that that was too narrow.

14   And Congress deliberately broadened the language to

15   {quote}, in the words of Senator Thompson on the Senate floor,

16   "To depersonalize the First Assistant from being the First

17   Assistant to any particular officer."  And that is a contrast

18   not just with language that was considered earlier in the

19   legislative process but to how the statute was basically

20   phrased starting in 1868 and running up through 1998, which

21   did have explicit language.

22   JUDGE SMITH:  Whichever way Senator Thompson, the

23   late Senator Thompson's comments cut our jurisprudence

24   relative to legislative history, gives very, very little

25   weight to what a single member of Congress says on the floor.

1          MR. WHITAKER:  And I'm happy to accept that.

2          JUDGE SMITH:  I assume that that's for everybody's

3    benefit.

4          MR. WHITAKER:  So -- but the other side makes -- and

5    the District Court made a lot of legislative history.

6          JUDGE SMITH:  I understand.

7          MR. WHITAKER:  And I guess I would just --

8          JUDGE SMITH:  Well, that's -- legislative history

9    generally may be a little different.  A single member of

10   Congress is what I mentioned.

11         MR. WHITAKER:  Fair enough.  But, Judge Smith, I

12   would also point out that there is -- and this is not

13   legislative history.  This is comparison of actual enacted

14   statutes.  The same shift in language, you see, if you compare

15   the pre-1998 actual statute with what Congress enacted in the

16   Federal Vacancies Reform Act -- and the Court should give that

17   deliberate shift in language effect.

18      Now, look.  For sure the 1998 statute was indeed intended

19   to clamp down on certain Executive Branch practices.  And the

20   principal way in which the 1998 statute did that was to

21   abolish the Executive Branch's preexisting practice --

22         JUDGE SMITH:  I agree with --

23         MR. WHITAKER:  -- of --

24         JUDGE SMITH:  -- that statement that you've just

25   made, and it does present one of those so-called 30,000-feet

1   questions, and this -- mine is that.  Would you concede that
2   the sequence of events here -- and, for me, they're unusual,
3   we could recite them if we wanted to take the time, would you
4   concede that there are serious Constitutional implications to
5   your theory here, the government's theory, which really is a
6   complete circumvention it seems of the Appointments Clause?
7          MR. WHITAKER:  I don't think -- I do disagree with
8   that, Judge Smith.  I mean, the Office of United States
9   Attorney is an inferior office that is fully -- that the
10  agency --
11         JUDGE SMITH:  Well, we're -- under Article III,
12  we're an inferior Court, too.  So I -- you know, we're used to
13  denigration of that kind.
14     (Laughter)
15         MR. WHITAKER:  I -- well, I don't mean to be -- I
16  don't mean it to be denigrating.  But --
17         JUDGE SMITH:  No.  The Founders apparently did.
18     (Laughter)
19         MR. WHITAKER:  Well, I mean --
20         JUDGE FISHER:  They'd like superiors.
21         MR. WHITAKER:  -- all "inferior" means is you have a
22  boss who is not the President, and that's true of a United
23  States Attorney.  But here, there's no question that Ms. Habba
24  was appointed by the Attorney General.  So any Appointments
25  Clause problem has been fully satisfied by the fact that she

1   has an AG appointment, and the other side really hasn't

2   seriously disputed that.

3           JUDGE RESTREPO:  And what are the limits?  Are there

4   any limits to that AG appointment?

5           MR. WHITAKER:  Certainly.  There are many limits,

6   Your Honor.

7           JUDGE RESTREPO:  Such as?

8           MR. WHITAKER:  Well, for example, I mean, Ms. Habba

9   serves under the FVRA, subject to the FVRA's time limits.

10  And, right now, she times out in February.  And if February

11  reaches us and there has been no nomination --

12          JUDGE FISHER:  So how does she get to February?

13  Some would say she timed out in calculation in August.

14          MR. WHITAKER:  Oh, I actually don't think that

15  there's any dispute that under the FVRA, she gets until

16  February, Your Honor, because even spotting the Defendants

17  their view that the only relevant vacancy occurred on January

18  8th --

19          JUDGE FISHER:  Right.

20          MR. WHITAKER:  -- under 3346 of the FVRA, that

21  period was tolled when her nomination was withdrawn.  And she

22  gets a new 210-day period measured from July 24th.

23          JUDGE FISHER:  Let me --

24          JUDGE RESTREPO:  So did she --

25          JUDGE FISHER:  Let me ask you a question on

1  3345(b)(1) -- (b)(1) capital (B), okay?  Does that language

2  constitute a nomination bar that would prevent anyone who had

3  been nominated from serving as an acting officer?

4           MR. WHITAKER:  No, certainly not.  It does not --

5           JUDGE FISHER:  Tell us why not.

6           MR. WHITAKER:  Because the language, Your Honor, is

7  phrased in the present tense.  And so what that language is

8  referring to is a nomination that either is currently pending

9  or a nomination that is submitted during that person's acting

10  service because it says -- and it applies to -- and {quote},

11  "The President submits a nomination of such person to the

12  Senate for appointment to such office," not "submitted."  And

13  when Congress uses the present tense, we should presume that

14  that has effect, and that's true under the Dictionary Act and

15  the Supreme Court's case law.  And --

16           JUDGE FISHER:  It doesn't include the past.

17           MR. WHITAKER:  It doesn't include the past.  That's

18  right, Your Honor.

19           JUDGE FISHER:  Okay.

20           MR. WHITAKER:  But I think it would include -- it

21  wouldn't -- nonetheless --

22           JUDGE SMITH:  But it's the future, isn't it?

23           MR. WHITAKER:  It certainly would include -- well,

24  it would include a nomination that's submitted during the

25  person's acting service.  And one important point about that

1    sort of cuts through our FVRA arguments is that a vacancy is a

2    continuing condition.  It doesn't exist that just the moment

3    when a PAS Officer vacates.

4            JUDGE SMITH:  But the submission occurs once at a

5    discrete moment in time, doesn't it?

6            MR. WHITAKER:  Well, sort -- yes and no.  I think

7    that if -- you look at --

8            JUDGE SMITH:  That kind of covers the field.

9        (Laughter)

10           MR. WHITAKER:  Well, I mean, just to be more

11   precise, I mean, if you look up "submits" in the dictionary,

12   Your Honor, you will find, at least in Webster's Third, a

13   definition that says something like "to send or commit for

14   consideration."  And I think it's the latter bit that what we

15   have here, to commit for consideration.  And so if you have a

16   nomination that was submitted in the past and the President

17   has not taken steps to withdraw it, he is continuing to commit

18   that nomination for consideration present tense.  And so it's

19   fair to read --

20           JUDGE SMITH:  This is present perfect tense, and I

21   thank my eighth grade English teacher, Ms. Lutz (phonetic),

22   whom I actually had a crush on if I have to admit it.

23       (Laughter)

24           JUDGE SMITH:  But she -- I do remember a few of the

25   things she taught me.

1          MR. WHITAKER:  And I think if you construe it to be
2     present perfect tense, I mean, that's game over for them
3     because -- and the U.S. Supreme Court's decision in the <u>Hewitt</u>
4     case proves it because, in the <u>Hewitt</u> case, what the Supreme
5     Court was faced with was a statute that referred to a sentence
6     that has been imposed.  And the question was whether that
7     language applied to a sentence that had been vacated.  And the
8     Supreme Court said, no, no, no.  It does not apply to a
9     sentence that has been vacated because "has been imposed" is
10    phrased in the present perfect tense, and it refers to an
11    event that occurred in the past but has continuing
12    significance.

13         And under that framework, if -- even though a nomination
14    may have been submitted in the past, once it has withdrawn, it
15    is void and cannot result in confirmation.  So it does not
16    have continuing significance under the Supreme Court's
17    reasoning in <u>Hewitt</u>.

18         JUDGE RESTREPO:  Let me take you back to February of
19    next year.  So let's assume that the clock is running in
20    February.  Can Ms. Habba resign from the position then be
21    reappointed or re-designated by the Attorney General for
22    another 200-and-some-odd days?

23         MR. WHITAKER:  No, she cannot be re-designated under
24    the FVRA, if -- unless there is -- a nomination is submitted
25    in that time.  And if there is a nomination that is submitted

1    between now and February or even one submitted afterwards --

2              JUDGE RESTREPO:  Her nomination?

3              MR. WHITAKER:  No, no, no.  It could not be her

4    nomination.  She is not eligible to be both the nominee and

5    the "Acting."

6              JUDGE FISHER:  Wait a minute.  Wouldn't --

7              MR. WHITAKER:  It would have to be the nomination of

8    someone else.

9              JUDGE FISHER:  Wouldn't that nominee have to be

10   confirmed --

11             MR. WHITAKER:  No.

12             JUDGE FISHER:  -- because we're still dealing with

13   the vacancy?  The vacancy is the vacancy that Sellinger

14   created on January the 8th.

15             MR. WHITAKER:  No, no.  The nominee would not --

16             JUDGE SMITH:  It's not --

17             MR. WHITAKER:  No, the nominee would not have to be

18   confirmed.

19             JUDGE SMITH:  Oh, I'm sorry.  The second part of his

20   question, the Sellinger nomination resignation, does create

21   the vacancy we're talking about, does it not?

22             MR. WHITAKER:  Well, we're willing to assume that

23   for purposes of this case.

24             JUDGE SMITH:  All right.

25             MR. WHITAKER:  We -- I don't think -- we did take

1  the position below that the -- a new -- the vacancy was

2  created when she resigned on July 24th.  Nothing about that

3  dispute is material to this appeal.  And we are certainly

4  perfectly willing to spot the Defendants the view that the

5  vacancy -- the only relevant vacancy occurred on January 8th,

6  and the Court does not need to decide that issue.

7      But it would absolutely -- under 3346, Your Honor, it

8  would -- the time would be tolled by a pending nomination, and

9  indeed, even a second pending nomination, actually.  So -- and

10  I think that specifically contemplates that there's nothing

11  unusual about the current status quo in the District of New

12  Jersey where you have an acting official who is serving, and

13  there is no present nominee.  That's a circumstance that

14  Congress explicitly contemplated would occur under the Federal

15  Vacancies Reform Act.

16      And I -- you know, we haven't talked to Your Honors about

17  the delegation argument.  I'm anxious to make sure that --

18          JUDGE RESTREPO:  It's --

19          MR. WHITAKER:  -- I've answered any of the Court's

20  questions about delegation.  I do see that my red light is on,

21  but --

22          JUDGE RESTREPO:  Well, are there any powers that are

23  delegated to Ms. Habba that are not delegated to a Senate-

24  confirmed U.S. attorney?

25          MR. WHITAKER:  In candor, Your Honor, our view of

1   that is "no."  But that's actually not, I think -- does not

2   detract from our position.  I mean, there are significant

3   differences.  And again, we have to interpret the statute

4   broadly as it applies across the entire --

5          JUDGE SMITH:  Has the Department ever taken that

6   position previously --

7          MR. WHITAKER:  Oh --

8          JUDGE SMITH:  -- that is to, again, use the two

9   words I used toward the beginning of your argument, that not

10  only are the duties and powers of the Special Assistant

11  coextensive but coterminous?

12         MR. WHITAKER:  Oh --

13         JUDGE SMITH:  Has the Department --

14         MR. WHITAKER:  Oh, absolutely.

15         JUDGE SMITH:  -- taken that position before?

16         MR. WHITAKER:  We took that position in the <u>Arthrex</u>

17  case, Your Honor, and we actually won that in the Federal

18  Circuit --

19         JUDGE SMITH:  Well --

20         MR. WHITAKER:  -- in very similar circumstances --

21         JUDGE SMITH:  But that didn't involve a United

22  States Attorney's Office either.

23         MR. WHITAKER:  Well, no, Your Honor.  But --

24         JUDGE SMITH:  I said has the Department ever taken

25  that position?

1        MR. WHITAKER:  Well, we defended -- we certainly

2   defended the legality of the situation at the PTO there.  And

3   we took the position that the Commissioner of Patents, who was

4   delegated all of the powers of the PTO Director, which was a

5   vacant PAS office --

6        JUDGE SMITH:  And you had a vacancy in the director

7   position and a second vacancy in --

8        MR. WHITAKER:  The deputy was also vacant.  And

9   there was a standing delegation in the PTO that said, in that

10  circumstance, the Commissioner of Patents takes over.  And

11  that is longstanding practice in the Executive Branch.  For

12  example, in the Biden administration, Brian Boynton was the

13  acting at the beginning of the administration, and then after

14  he timed out under the FVRA and there was no nomination, he

15  ran the Civil Division for all four -- much of four years,

16  purely by delegation from the Attorney General.  And there was

17  no, as far as I'm aware, challenge to his appointment as

18  somehow being unlawful.

19       And that's because when the Attorney General delegates

20  someone the duties associated with a PAS Office, that is a

21  distinct kind of service from acting service under the FVRA,

22  and there are at least two significant distinctions.  Number

23  one, when the Attorney General delegates powers, she is

24  limited by the delegation statutes themselves in what power

25  she can delegate.  For example, we point this out in our reply

1    brief.  The Attorney General cannot delegate to a subordinate

2    the power to appoint inferior officers, which by the

3    Constitution, must be done personally by the head of the

4    Department.

5         Another example -- and there -- and even apart from that,

6    the U.S. Supreme Court recognized in 1974 that there are other

7    limits in statute on the Attorney General's broad authority,

8    otherwise broad authority, to delegate functions under Section

9    510.  In that case, it was the wiretap statute.  And there are

10   many other examples that exist in the statutes today, like,

11   for example, the Foreign Intelligence Surveillance Act

12   warrants.  So there are limits there.

13        But even apart from that, there are limits that the FVRA

14   imposes because -- and we have no quarrel with this.  Section

15   3347 of the FVRA would prohibit, and does prohibit, the

16   Attorney General by delegation to make someone an acting

17   official.  And that's -- but that's not what we've done with

18   respect to the delegation piece of our argument for Ms. Habba.

19        And it is often the case, and Congress recognized this in

20   the legislative history itself, that PAS offices have purely

21   delegable functions.  And -- but Congress recognized that,

22   nonetheless, when there is a vacancy in a PAS office and the

23   FVRA's time limit is expired, we can keep the lights on, and

24   we can continue to have officials exercise the functions of

25   those offices purely by delegation.  That's a distinct kind of

1    service.

2          JUDGE SMITH:  As this Panel struggles to get to what

3    Congress intended, what the words mean as best we can,

4    separate from the District Court's interpretation of FVRA

5    Sections 3347 and 3348, the District Court also looked to a

6    number of canons of construction, and I won't mention them

7    here.

8          But I believe that you have stated in your opening brief

9    that those canons, at least those invoked by the District

10   Court, in your words, cut decisively in favor of the

11   government's understanding of the statutory scheme.  Those,

12   I'm pretty sure, were your words, but I don't recall that you

13   went on to explain how they do.  I -- the related canons, the

14   canons, I think, that were referred to the surplusage canon,

15   the general specific canon.  How -- do you want to say --

16   explain what I don't think your brief did was how they -- at

17   least how they were not helpful?

18         MR. WHITAKER:  Well, I think that -- I mean, I think

19   it's fair to say that the -- one of the main canons the

20   District Court relied on was the general and specific canon.

21   I think that's true.  There's no problem with regard to that

22   canon because there isn't a conflict or even superfluity in

23   the relevant statutes, Your Honor.  These are statutes that

24   work together as an integrated whole to provide the Executive

25   Branch with a number of options to take advantage of when PAS

1   offices are vacant.  Those statutes have their own independent
2   requirements and various benefits.
3         JUDGE FISHER:  Talking about that, don't you find it
4   strange that Congress said you -- the Attorney General can
5   appoint a person as interim Attorney General only for 120
6   days?  Then you go to the FVRA, and you're finding a way to
7   circumvent that 120 days?  Isn't that a conflict itself?
8         MR. WHITAKER:  I don't think so.  And, Your Honor,
9   Congress recognized in the FVRA itself that there could be
10  office-specific statutes that exist alongside the FVRA.  And
11  that's been true for --
12        JUDGE FISHER:  But I don't know how much more
13  clearer you can be than say, "120 days is a limit."
14        MR. WHITAKER:  Well, Your Honor, we obviously
15  disagree with that.  I mean, we do think that you can have
16  successive 120-day appointments in certain circumstances.  But
17  even spotting that view, I mean, there still would be -- it's
18  -- there's still -- and I take it that the other side does not
19  dispute that the -- 546 is not the more specific statute when
20  somebody initially is -- when Vikas Khanna, for example,
21  became Acting United States Attorney on January 8th initially.
22        And if it's not the most specific statute then, it's very
23  difficult to see how it could be a more specific statute
24  simply because several months have elapsed.  And I would
25  commend to Your Honor the Hooks case in the Ninth Circuit,

1   which recognizes that officer-specific statutes can exist

2   harmoniously alongside the FVRA.  And it's not unusual,

3   actually, for the Executive Branch to select the option, or in

4   this -- to select the option of one statute or the other.  And

5   that just means that there are distinct ways of filling the

6   vacancy, each with their own distinct benefits and drawbacks,

7   but neither is superfluous with any of the others, and still

8   less is there any conflict between those two things.

9        And we have no quarrel with the fact that, like, yes, if

10  the Attorney General elected to use the interim appointment

11  statute, that would supersede an FVRA vacancy.  But it's

12  equally true that if the President, for example, as happened

13  here, removed an interim United States Attorney, then that

14  would turn the FVRA back on subject, of course, to the FVRA's

15  time limits and eligibility limits.  And there are limits.  We

16  are not asking for a limitless power to designate acting

17  officials.  We colored inside the lines here.  The lines are

18  complex.  And that's why we had to take those complicated

19  steps to make --

20            JUDGE RESTREPO:  What are the outside limits under

21  your matrix?

22            MR. WHITAKER:  Well, for example, under the FVRA,

23  you are limited by time.  You are limited by eligibility.  If

24  the President wants to designate someone under (a)(2) or

25  (a)(3), there are very specific eligibility limits.  You

1    cannot have someone be both the acting and the nominee, except

2    in a very narrow circumstance where somebody was the First

3    Assistant before the vacancy arose and served at least 90

4    days.  And we don't -- we have no quarrel with the fact that

5    as long as she is the acting, she is not eligible to be the

6    nominee and the acting.  If we submitted her nomination again,

7    she would have to cease her acting service.

8         And there are substantial limits.  With respect to the

9    delegation piece, as I mentioned, there are limits on the

10   Attorney General's authority to delegate functions.  I've been

11   discussing those.  And also, you cannot -- as far as the FVRA

12   is concerned, you cannot delegate, by virtue of the Attorney

13   General's general vesting and delegation statutes, all of the

14   functions and duties of an office in an acting capacity.

15        And what that means is you can't give someone the title

16   of "Acting" just simply by delegation, and you cannot commit

17   to that person any exclusive functions associated with the

18   office.  And that's true -- and I think that's true by virtue

19   of the plain language of 3347(a), which speaks of making the

20   FVRA the exclusive means of making someone acting, which means

21   all of the functions and duties of the office.  And that's not

22   what a delegation does.

23        JUDGE RESTREPO:  Let me just be clear on one thing.

24   So under the delegation theory, is there an expiration date?

25   Is that the February date you're referring to earlier?

1      MR. WHITAKER:  No, no, there isn't -- there would

2  not be a time limit on performing functions by delegation.

3      JUDGE RESTREPO:  So she could serve in that capacity

4  at the pleasure, we'll say, of the Attorney General?

5      MR. WHITAKER:  Yes, I mean, but she would be serving

6  in a different capacity than what she's serving now.

7      JUDGE RESTREPO:  She's doing the same thing.  She'd

8  be doing the same job, maybe the different title.

9      MR. WHITAKER:  Well, but I think we would take a

10  great risk, I think, if we did that, that there could be some

11  court that could conclude that there is, in fact, a

12  delegation, an exclusive function.  And, like, our view is

13  that there are no exclusive functions, like, cards on the

14  table.  That is, in fact, our view.  But there have been

15  suggestions in this case that, oh, well, maybe 18 U.S.C. 3731,

16  which is about interlocutory appeals, may be an exclusive

17  function.  And I suppose that if we made her -- if we were

18  solely relying on the delegation theory, we would take a risk

19  that that kind of a function might be called into question at

20  some later point.

21      And that's why the Executive Branch's practice is not as

22  by default to have these offices performed solely by

23  delegation.  We expend a considerable effort to install acting

24  officials and, yes, to try to secure Senate confirmation of

25  those officials, as is shown by the confirmation a couple

1    weeks ago of 16 United States Attorneys.  So we are not

2    circumventing the statute.  We are applying the statutes as

3    Congress wrote them, which are complex and sometimes require

4    us to jump through a lot of hoops to get there.

5              JUDGE RESTREPO:  No doubt.  Anything else?  Okay.

6    Thank you very much.  We'll see you on rebuttal.  Good

7    morning, Mr. Lowell.

8              MR. LOWELL:  Good morning, Your Honors, and may it

9    please the Court.  I am Abbe Lowell.  I am arguing on behalf

10   of both the Appellees, reserving three minutes for amicus, as

11   the Court has ordered.  I appreciate the time today.  I think

12   the best thing I can do is start answering the same questions

13   that you asked, learned counsel from the other side.  And I'd

14   start, therefore, with the one that Judge Smith stated when

15   you asked looking at the titles on the Appellate brief, "Who

16   is Ms. Habba?" as I am standing at the podium today.

17        And I think the answer is, as I've now cobbled it

18   together, the government cites a chimera of seven different

19   statutes that they alternate, depending on what they are

20   trying to accomplish, to call her the Interim U.S. Attorney,

21   and Acting U.S. Attorney, the First Assistant U.S. Attorney,

22   or a Special Attorney.

23        And to put it in context, to answer the question that you

24   asked momentarily ago, Judge Restrepo, when you asked, "What

25   are the outside limits of each of those?" counsel conceded

1   that in one of those paths, the delegation path, there is no

2   limit.  There is no outside limit.  So how can you construct

3   the very carefully crafted set of statutes which presumes that

4   you're trying to put somebody in place with the advice and

5   consent of the Senate -- I'll come back to that in one second

6   -- to say that there is some way that the Attorney General can

7   appoint somebody to the important job of U.S. Attorney

8   forever, or at least as long as the President's term sits.

9        You also asked, Judge Fisher, about canons and then so

10  did Judge Smith.  Well, one canon, of course, is you don't

11  take a statute completely by cobbling together a line or a

12  word.  You do look, as this Court said in the <u>Paek vs.</u>

13  <u>Attorney General</u> case, for the meaning of the statute, looking

14  at its context in its broader context of its purpose, for

15  example.

16       With that in mind, I think there are three things the

17  Court should look at when it is applying the statutes in this

18  case, one is that the Appellant's approach undercuts the

19  importance Constitutional preference for high-ranking

20  officials to be placed in their positions only after there is

21  advice and consent.  Judge Smith asked about the Appointments

22  Clause in this case that comes through because of the statute

23  that Congress enacted to provide that there would be advice

24  and consent in this appointment.

25       The second, as you said, Judge Fisher, is that another of

1    the purposes and the context is to find somebody who has some

2    degree of experience in functioning in the capacity of U.S.

3    Attorney.  And the third is to avoid what happened in this

4    case.  Again, the trigger in 1998 was what the Justice

5    Department tried to do in taking Assistant Attorney General B.

6    Lann Lee, Bill Lann Lee, and turn him into a forever

7    appointment, which was exactly the reason why Congress

8    revisited it.

9    As to this question, both -- two of you have asked, that

10    purpose of finding experienced and transitional people

11    actually works in both (a)(1), (a)(2), and (a)(3).  In (a)(1),

12    it is an automatic function of the First Assistant.  And as

13    Judge Smith, you ask, "What's political?"  Well, let's just

14    use this case.  Vikas Khanna, who immediately took the role of

15    Acting U.S. attorney upon the resignation of U.S. Attorney

16    Sellinger, had been in his office for 12 years.

17    Not just that.  It's interesting that in this case he was

18    allowed to maintain in his non-political role for an

19    additional six weeks after the President took office, contrary

20    to counsel's statement.  I've practiced as much as you have

21    probably heard cases.  First Assistants are not political

22    appointees.  They tend to be across 93 U.S. Attorney's

23    Offices, people who are from that office.

24    (a)(2) and (a)(3) serve different parts.  (a)(3) does

25    incorporate the experiential and continuity.  (a)(2), though,

1   at least puts meat to the other purpose of this construct,

2   which is to put the Senate involved to make sure that somebody

3   is holding office with some check or balance of the other

4   branch of government, which, of course, happens because it has

5   to be another presidentially appointed Senate-confirmed

6   people.

7       So you can strip out any word you want, but if you look

8   again not to legislative history, as you said, Judge Smith, as

9   to what Senator X said on one portion of the debate.  But as

10  to the purpose, as to the context, which is important

11  legislative history, you can step back and see that they're

12  constructing this -- I don't know -- jerry-rigged away to get

13  Ms. Habba to be in power for the entirety contradicts.

14      The other thing that you asked, besides the outside

15  limits that I would address before you have any other

16  questions that would go to our position, is that on the

17  delegation part, the government points out that, somehow, this

18  case, Arthrex, saves the day for them where, in fact, it does

19  not for two reasons.  One is 3347 does not speak in the phrase

20  "duties and functions" the same way 3348 does.  In fact, 3348

21  has in its first three words "in this section."

22      To put it in an easier way to frame, 3347 says, if you

23  are improperly appointed, you can't do anything.  What 3348

24  says, even though you shouldn't have gotten that power and you

25  shouldn't have been delegated that power, there are only

1    certain things which can't be ratified.  What makes this an

2    interesting point from the government's point of view is then

3    they go backwards and confess that there's nothing that is not

4    delegable in the appointment that they want to have Ms. Habba

5    serve.  Putting aside that that's illusory, it still means

6    that 3348 and 3347 are not contiguous, which this Court also

7    confirmed.  I can't ever say the name, <u>Kajmowicz</u>, and your

8    concurrence and concurrence on that.

9         JUDGE RESTREPO:  So why -- what's wrong with the

10   government's argument that the Attorney General has the

11   authority to appoint her under 546?

12        MR. LOWELL:  The -- I didn't hear the end.

13        JUDGE RESTREPO:  What's the problem as it were?

14   Where do you take issue with the government's position that we

15   have delegation authority under 546?

16        MR. LOWELL:  There' -- it wouldn't be delegation.

17   It would be a different mechanism.  546 gives the Attorney

18   General the authority to put somebody in as Interim U.S.

19   Attorney --

20        JUDGE RESTREPO:  Right.

21        MR. LOWELL:  -- for a very specific point of time,

22   120 days, and has a disqualification if that person is also

23   going to be the nominee that functions in that fashion for

24   that period of time.  That's an Interim U.S. attorney.

25        You'll notice in the briefs that you asked about -- look

1   at the cover sheet that Judge Smith asked.  She's not claiming
2   to be the interim any longer.  That's a phrase she used below.
3   She is now asking the Court to confirm that she's two things
4   at the same time an acting and a special.  So 546 can come
5   into play after the automatic function of the FVRA, whether it
6   be (a)(1), (a)(2), or (a)(3).  And that becomes vacant because
7   you have -- the Attorney General has that power, but only for
8   120 days.  And as one of you asked, it's not the opposite.
9       You can't -- after you have exhausted 546, then put in
10  3345 because by definition, 3345 kicks in when there is a
11  presidentially appointed Senate-confirmed vacancy, which is
12  not the same as when an interim who has none of those things
13  have left her job --
14              JUDGE FISHER:  Mr. Lowell --
15              MR. LOWELL:  -- which is the case of Ms. Habba.
16              JUDGE FISHER:  Mr. Lowell, let me ask you on a
17  delegation question.  Do you agree that the Attorney General
18  can delegate some functions and duties in this case to Ms.
19  Habba?
20              MR. LOWELL:  There's no doubt that the Attorney
21  General, by way of delegation, can do what attorneys general
22  have done for decades, which is to --
23              JUDGE FISHER:  But where do you draw the line?
24              MR. LOWELL:  The line is drawn in that you cannot
25  delegate all the functions of the Attorney General.

1        JUDGE FISHER:  But which part?  It's been very
2    elusive, both in the briefs and questions to Mr. Whitaker.
3    What functions can't be delegated?

4        MR. LOWELL:  Well, can I flip it and say let's start
5    with the text of the statute which says to supervise legal
6    proceedings to be able to be involved in the phrase of that?
7    What is a legal proceeding?  It's a case.  It's an
8    investigation.  It's the way this statute has worked forever.
9    You appoint somebody for a specific purpose.  It is for the
10   case of.  Maybe it's for a series of cases.  I now need a
11   Special Attorney, as the Justice Department has recently done
12   in the appointment of an individual to be the mortgage fraud
13   czar.  That is a specific kind of legal proceeding in which
14   those delegation statutes work.

15       There has never been, except for the way this
16   administration is constructing and asking you to concur, that
17   you can delegate all the powers of a U.S. Attorney by making
18   that person the delegable 515 Special Attorney.  That's never
19   happened, and it's not even the words of the statute.

20       JUDGE FISHER:  Could the Attorney General in this
21   case delegate to Ms. Habba the right to prosecute all criminal
22   cases arising out of the District of New Jersey?

23       MR. LOWELL:  I think you could probably get that
24   part done, but that's not what's happened here.  It is -- she
25   can do criminal.  She can do civil.  She can appoint people.

1    She can designate which offices people can be in.  She can

2    give speeches as the chief law enforcement federal officer in

3    the District of New Jersey.  You and I could go through a

4    whole list of things that a U.S. Attorney does which is not

5    consistent with the concept of being a Special Attorney.

6            JUDGE SMITH:  It's -- you would concede, however,

7    that the 515 Special status is phrased broadly within the

8    statute?  When it refers to specially appointed, it talks

9    about being authorized to proceed -- to conduct any kind of

10   legal proceeding.  That's pretty broad.

11           MR. LOWELL:  Any kind of legal proceeding, okay.

12   That is -- I agree.

13           JUDGE SMITH:  Civil or criminal.

14           MR. LOWELL:  That is a broad phrase.

15           JUDGE SMITH:  Civil or criminal.

16           MR. LOWELL:  "Any kind of legal proceeding" is a

17   broad phase.  But --

18           JUDGE SMITH:  Including grand jury proceedings and

19   proceedings before committing magistrates, etc., etc.

20           MR. LOWELL:  Yes.  I understand that -- and agree

21   that is a broad phase taken out of the context of both its

22   history, practice, and what's done.  But counsel has conceded

23   something very important standing at this podium, that they

24   are saying that all the powers of a U.S. Attorney are

25   delegable from that 515 or combination of 509, 510 and 515.

1   That's what makes this an unusual, and we believe an improper,
2   delegation.  You can supervise legal proceedings.  But to make
3   that three words mean that you can do all the other things of
4   a U.S. Attorney is their concession that she is acting as the
5   U.S. Attorney by way of a delegation that gives her the job
6   but without the title.

7   So in their interpretation of this delegation function,
8   the only thing she doesn't have is that certificate on the
9   wall that says "United States Attorney for the District of New
10   Jersey."  But for that and what they used to call the gravitas
11   of having that title, she can do everything.

12   Now, the answer to that question, that it cannot be what
13   that delegation is, is your question.  The question is, if
14   that's the case, (a)(1) is superfluous, (a)(2) is superfluous,
15   (a)(3) is superfluous, 546 is superfluous because they have
16   now constructed a way in which somebody never has to be
17   nominated and confirmed and can serve all the functions of a
18   U.S. Attorney forever.

19   JUDGE FISHER:  And, Mr. Lowell, where does 3347 fit
20   in here in this picture?

21   MR. LOWELL:  In this case, what it would mean is
22   because they violated (a)(1), because they violated -- she
23   didn't qualify for (a)(2), because she doesn't qualify for
24   (a)(3), 3347 now says the actions that you have taken are null
25   and void.  They are null and void, especially because in 3347,

1    Judge, that (b) section is the one that specifically says you

2    cannot rely on the general delegation authorities of an office

3    is not what we mean in 3345, 6 and 7.  It has to be something

4    that is expressly given.  So what 3347 does is say, this was

5    not expressly given.  You don't have the authority to act.

6    And that's where they're basically conflating the definitions

7    in 3348 to 3347 come about.

8         JUDGE SMITH:  When you just enumerated the various

9    {quote} "violations" that the government had committed, you

10   began with 3345(a).  And I don't think we talked a lot about

11   that, so I thought if you could explain what that violation

12   specifically is.

13        MR. LOWELL:  Sure.  The entirety of 3345(a) was

14   based on a structure that basically did not have the Attorney

15   General have any role.  3345(a)(1) --

16        JUDGE SMITH:  And (a)(1) was specifically what I had

17   in mind.  I'm sorry I didn't state it that way.

18        MR. LOWELL:  Okay.  Then in (a)(1), the idea for

19   both continuity and, as one of you pointed out, the idea of

20   having something with experience, is a "shall" point.  It's

21   automatic.  It doesn't require anybody to do anything at the

22   moment that the presidentially appointed-Senate confirmed

23   vacancy occurs.  That was in January of 2025.

24        JUDGE SMITH:  But was the position --

25        MR. LOWELL:  She --

1          JUDGE SMITH:  -- taken by the District Court

2    consistent with the text?  Or let me put it another way.  Was

3    it expressly stated by the District Court that it had to be

4    the incumbent First Assistant?

5          MR. LOWELL:  In a way because the District Court --

6          JUDGE SMITH:  In a way.

7          MR. LOWELL:  Well, I mean, let me take the "in the

8    way" out.

9          JUDGE SMITH:  What I'm getting at is couldn't

10    Congress, when it drafted the statute, have clarified that in

11    such a way that it had to be the person in the position at

12    that discrete point in time?

13          MR. LOWELL:  I think Congress did when it changed

14    the phrase earlier on from "any person" can take that role to

15    then "any officer" to "any -- the First Assistant of the

16    office of the officer."  The government wants to take that

17    change to mean that it broadened the ability of (a)(1) to

18    encompass somebody not at the moment of vacancy.

19          I think the natural reading of that change in the statute

20    is 180 degrees opposite.  When somebody is the First Assistant

21    to the office, what it is saying is in the "shall" part, the

22    reason that Ms. Habba doesn't qualify (a)(1) because somebody

23    else did.  Vikas Khanna was the First Assistant at the moment

24    that the presidentially appointed Senate-confirmed U.S.

25    Attorney vacated the office.  It didn't happen a month later.

1    It didn't happen three months later.  It happened

2    instantaneously.  There was a person in place.  That person

3    was the First Assistant, and that's why the "shall" came into

4    being.

5        If the government is correct that (a)(1) applies anytime

6    after that first person resigned at any point, then, again, in

7    the canon, you've made (a)(2) superfluous.  You've made (a)(3)

8    superfluous.  Their argument back to us, "Well," to use their

9    phrase, "it's not entirely superfluous."  And then they point

10   to the possibility that both the principal officer and the

11   deputy at the same time are Senate-confirmable people, such

12   that -- okay.  But as we point out in our response to their

13   argument, their hypothetical would basically mean that it's

14   superfluous 98% of the time.

15       So to answer your question again, Judge Smith, if you're

16   asking why (a)(1) doesn't work here, it doesn't work because

17   there's a difference between (1), (2), and (3).  (2) and (3)

18   gives the President power.  (a)(1) doesn't give either the

19   President or the Attorney General the power when that vacancy

20   occurs.  It's a "shall," and it's automatic, and it was

21   purposeful, and it worked exactly the way it was supposed to

22   work in this case.

23       Then when the President, using his power which he

24   properly had, not to want, that automatically designated First

25   Assistant U.S. Attorney by taking that person out.  The

1    President had a -- the Attorney General had a 546 way of doing

2    it.  She did it.  She appointed first Mr. Giordano and then

3    Ms. Habba.  That exhausted that statute's 120 days.  And

4    having done that, there was no longer that presidential-

5    appointed Senate-confirmed vacancy in which 3345(a) could come

6    back through (a)(1).  It just can't happen that way.

7          JUDGE FISHER:  What about the {quote} "nomination

8    bar in (b)(1)(b)?"  Where does that work in here, if at all?

9          MR. LOWELL:  Well, it works.  To put it in an

10   opposite fashion, I would say that what (b)(1)(a) -- or you're

11   saying -- the (b) function works to say that even (a)(1),

12   there can be a disqualifier for an (a)(1) First Assistant

13   ascending to the job of U.S. Attorney if two things, one is

14   that that person isn't nominated, and two, hasn't served for

15   at least 90 days.

16         JUDGE FISHER:  Right.

17         MR. LOWELL:  So there's no inconsistency.  No one

18   has ever -- we have never argued that there's no limitation to

19   (a)(1), but it's a very narrow one.

20         JUDGE FISHER:  Right.

21         MR. LOWELL:  And that was Congress's intent because

22   when there was a greater one, the number of days, that's an

23   (a)(2) and (a)(3).

24         JUDGE FISHER:  Well, does the fact -- so does the

25   fact that Ms. Habba was nominated once preclude her from --

```
 1          MR. LOWELL:  It --
 2          JUDGE FISHER:  -- fitting into 3345?
 3          MR. LOWELL:  It's -- it does for the reasons that
 4   can be best summarized by reference to the Supreme Court's
 5   case in Southwest General.  Even though the government wants
 6   to say that, in that case, the Supreme Court didn't squarely
 7   address it, it kind of did.  And the reason it did was because
 8   the sequence of events are identical to this case, in that
 9   case, in which there was a person submitted.  It was returned.
10   It was resubmitted.  And in that regard, the person who
11   brought the challenge was challenging in the period in which
12   it {quote} "was not pending."
13       The government wants to make "submits" to be the
14   equivalent of the word "pending."  I don't know where they get
15   that from, except by saying the "S" at the end of "submit"
16   equals "pending."  But we know that's not the case because the
17   Supreme Court had the exact same phrase and said, in effect,
18   two things, one, that this was happening at the time similarly
19   to Ms. Habba.  And here's something else that you would know,
20   even though they want to diminish the impact of Southwest
21   General.
22       If they were right, the Supreme Court issued an Opinion
23   that was theoretical because the challenge that occurred by
24   that person --
25          JUDGE SMITH:  How --
```

1      MR. LOWELL:  -- that person would have lacked

2   standing.

3      JUDGE SMITH:  How does the Supreme Court issue

4   Opinions that are theoretical?

5      MR. LOWELL:  Well, "theoretical" is not the right

6   word.  It would have been --

7      JUDGE SMITH:  I'm glad the Chief Justice isn't here

8   right now to hear that.

9      MR. LOWELL:  When you see him, apologize for me.

10     JUDGE SMITH:  I'll see him soon.  Thank you.

11     MR. LOWELL:  The answer to your question is not

12  theoretical.  What we know is Southwest General applies

13  because if it isn't in the exact same frame that makes her

14  unqualified under that provision, then the Supreme Court would

15  have, on its own, said, by the way, this person no longer has

16  standing because it was {quote} "pending at the time."  And

17  more importantly than that, they pointed out that in the

18  sequence of events that occurred in this case, neither the

19  government in that case even asserted that "pending" was the

20  same as "submits" and said in its Opinion the Court of Appeals

21  accepted that the timing made no difference.  And the Supreme

22  Court said, we also concur that the timing made no difference.

23     JUDGE FISHER:  Mr. Lowell, if we conclude that she's

24  properly in place as the Acting United States Attorney, when

25  do you calculate that her term would expire?

1          MR. LOWELL:  If you go through and say, 546 no
2      longer applies.  Somehow, she got to be (a)(1) even though
3      she's not (a)(2) and (a)(3) and her submission to the Senate
4      did not disqualify her, and if you get through all those hoops
5      to say that she's still acting, it's a hard hypothetical
6      because I have just jumped over six different hoops.

7          Having said that, I suspect that you have to now put into
8      effect the temporal limits on anybody serving in (a)(2) and
9      (a)(3).  But it gets you a far way to be able to get you
10     there.  It doesn't -- in the acting part, she has a limit, 210
11     days, or perhaps it was 300 if it existed at the time of the
12     transition.

13         JUDGE FISHER:  Yes.  But what about --
14         MR. LOWELL:  But then, Judge, how do you deal with
15     them saying she's Special Attorney?

16         JUDGE FISHER:  What about the withdrawal provision?
17         MR. LOWELL:  Say it again.
18         JUDGE FISHER:  What about the withdrawal provision,
19     since her nomination was withdrawn?  Does that give her
20     another 210 days?

21         MR. LOWELL:  No, I think it disqualified her from
22     the get go, and so she doesn't get that 210 days.

23         JUDGE FISHER:  Well, assume that that's -- we
24     conclude to the contrary on that.  Could she get another 210
25     days until February?

1          MR. LOWELL:  I don't think the trigger to get
2     another 210 days is the withdrawal of her nomination as the
3     way the section of 3346 would work to prevent that from
4     happening.  But it doesn't obviate that they want you to parry
5     between your idea that, somehow, she could get 210 stacked on
6     210, and I don't know why there wouldn't be another 210, and
7     then them coming to you and saying, on the other hand, she's
8     also the Special Attorney who doesn't have any time limits
9     whatsoever.

10          JUDGE SMITH:  Mr. Lowell, I don't know that the
11    question I'm about to ask has import for the case before us.
12    But we will have to write an Opinion, and it may be important
13    to us in the course of that process.  We have, as you know,
14    received a number of amicus briefs, and the amici have been
15    helpful in this case.  The Cato amicus brief is generally
16    congenial to your position.

17          The brief identifies one point, though, on which they
18    disagree with the District Court, and it may be that the
19    government -- that this is an important point, even if not in
20    this case, for the Department.  According to the District
21    Court, (a)(1) is triggered and this is {quote} "only when the
22    Senate-confirmed officer leaves office {paren} (and not also
23    when an Acting Officer leaves office.)"  Cato contended in
24    their brief that would prove too much.  Do you have a
25    position?  Do you agree?

1     MR. LOWELL:  When he -- they wrote that, I got

2  confused by the parenthetical.  So I can come back to each

3  person arguing their theory of how you can cobble together

4  parts of the 33 series statutes are coming up with a way to

5  avoid the most natural, not just reading of (a)(1), but the

6  reason it was put into effect and its history from going from

7  any person to the office or to the office of the officer.  And

8  so my view of the Cato, I hadn't really thought about it as

9  in-depth as you have just asked the question.  I might need to

10 think about it to see if it matters --

11    JUDGE SMITH:  That's --

12    MR. LOWELL:  -- in your having to deal with this

13 issue, which I don't think it does.  I think you and I are

14 saying, it may not have anything to do with this is that I

15 think it gets to -- it may read {sic} too far, but you don't

16 have to get there because (a)(1) is not available in its own

17 terms, and it's for own purpose, in its own context.  I'd like

18 to think a moment of whether or not that parenthetical change

19 is anything I just said.

20    JUDGE SMITH:  Okay, thank you.

21    MR. LOWELL:  I'd like to then, given that we had

22 expired, again, amicus said that they could get a few seconds,

23 and I would like that.  Thank you, Judges.

24    JUDGE RESTREPO:  Good morning, Mr. Pearce.

25    MR. PEARCE:  Good morning.  May it please the Court.

1    James Pearce, the Association of Criminal Defense Lawyers of
2    New Jersey.  The District Court's disqualification of Ms.
3    Habba was correct for two principal reasons.  First, she is
4    not eligible under the Federal Vacancies Reform Act because
5    she was not the First Assistant at the time the vacancy arose
6    and because of her contemporaneous nomination to the same
7    position.  Second, the Attorney General's purported delegation
8    squarely conflicts with the FVRA's exclusivity provision, and
9    a contrary holding would eviscerate that statute's core
10   purpose.
11        More broadly, the Executive Branch's acts of
12   circumvention in this case, trying to get around three
13   different statutes that provide adequate safeguards to the
14   filling of the U.S. Attorney's position, are troubling.  That
15   position, as then Attorney General Robert Jackson said more
16   than 80 years ago, has more control over the life, liberty,
17   and reputation than any person in America.
18        Now, Judge Smith, I'd actually like to pick up with the
19   question that you just asked about the Cato brief.  I'm not
20   here on behalf of Cato, but I do think that's an important
21   question, and that got to the interpretation of the language
22   in 3345(a)(1), the change from "to the officer" to "the office
23   of such officer."  And I think that what the Cato brief
24   provides is an explanation that ultimately has no impact on
25   this case but best squares what Congress was trying to do.

1     And I think that was to put in place a rule that First

2 Assistants have to be in place at the time of the vacancy.

3 But that also can occur when there is a valid acting or

4 interim.  So if that valid acting or interim is -- then has to

5 resign or dies, you could have the First Assistant in place at

6 that time take that position.

7     It does not mean, however, what the government argues,

8 which is that there's just this flee -- excuse me, free-

9 floating rule that the First Assistant at any time during the

10 vacancy can come in and fill the position.  And that -- also,

11 the explanation that Cato provides squares with what Congress

12 was trying to do at the time.  It is true there was some

13 dispute about whether there would be an adequate reservoir, so

14 to speak, of experienced individuals to come and fill the

15 office.

16     And at the time of the 1998 legislation, and that the

17 particular debate, there was the First Assistant Rule, and

18 then there was the rule that it could be a Senate-confirmed

19 individual.  What was added was (a)(3), 3345(a)(3), the

20 provision that allows for a sufficiently senior individual who

21 has served in the agency for a certain number of days.  That

22 would give the President the kind of flexibility if he, or

23 she, thought the First Assistant wasn't of the sort that would

24 carry out his, or her, agenda and could then go into what are

25 presumably hundreds, maybe more, officials who could then fill

1  that role under (a)(3).  But that change did not broaden and

2  permit this anytime any available First Assistant Rule, which

3  would swallow (a)(2) and (a)(3) for the reasons that the

4  District Court gave below.  I'd like to briefly just focus on

5  -- well, my time is up.  May I make --

6          JUDGE RESTREPO:  Please go ahead.

7          MR. PEARCE:  -- two other quick points?  One is the

8  reliance on executive practice that the government makes.  And

9  there are a couple of responses that I think are important to

10  put on the table here.  One is none of the examples that I

11  heard the government say had to do with U.S. Attorneys, right?

12  U.S. Attorney is a role that goes all the way back to the

13  1789, essentially, the Founding and the Judiciary Act.  It

14  predates the Department of Justice as a whole.

15      And so whatever executive practice may have built up is

16  entirely distinct from what you do with U.S. Attorneys

17  positions, nor has Congress acquiesced.  So I think the

18  government at page -- I think it's 37 at their brief, cite a

19  2009 statute that refers to acting or temporary capacity.  But

20  in so doing, it blows right by what the language actually says

21  there.  There, it was -- Congress is saying, no payment for

22  individuals who essentially have overstayed their time.

23      That's not acquiescence.  That's Congress using one of

24  the few tools in its toolkit to push back the appropriations

25  power and say, it's not acquiescing to this practice of either

1   delegated power or individuals staying well beyond their
2   expiration date.

3       And then finally, the government's argument really just
4   boils down to, on this executive practice point, to urge the
5   Court to allow these folks to stay in power because that's
6   what the government has done for such a long period of time.
7   And that's neither -- that can't be right, and it isn't right.
8   And one, I think, recent example that proves that is in the
9   2018 Supreme Court decision <u>Lucia against The Securities and</u>
10  <u>Exchange Commission</u>.

11      The question there was, are SEC Administrative Law Judges
12  officers of the United States?  And one of the arguments on
13  the other side was, if the Court were to adopt a holding that
14  ALJs in the Securities and Exchange Commission were officers,
15  that that would call it -- cast doubt on thousands of civil
16  servants and call into question and cast doubt upon a century
17  of Executive Branch and congressional practice with respect to
18  investigative commissions.  But the Court implicitly -- the
19  Supreme Court implicitly rejected that by holding to what the
20  language and the law of the Appointments Clause required.  And
21  so at the end of the day, Executive Branch practice must yield
22  in the face of clear law.

23      Last point, and I'll sit down, which is that at the core
24  of this case, the government has thwarted Congress's attempt
25  and its Constitutional obligation to regulate the filling of

1   U.S. Attorneys positions.  Not only does, under 541, the

2   default provision that requires presidential nomination and

3   Senate confirmation, have they first submitted a nomination

4   and withdrawn it.  They have then sort of moved their way

5   around the U.S. Attorney-specific provision in 546, the FVRA,

6   and now, the delegation theory that has no time limits and

7   would, in essence, permit the Attorney General to set up a

8   shadow government of delegated U.S. Attorneys throughout the

9   country.  That just can't be right, and for those reasons, the

10  Court should affirm.

11          JUDGE RESTREPO:  Thank you.  Mr. Whitaker.

12          MR. WHITAKER:  Thank you, Your Honor.  Just a few

13  quick points.  On the surplusage argument on the FVRA, I mean,

14  the President on January 20th of this year designated at least

15  27 individuals under (a)(2) and (a)(3).  That doesn't sound

16  like surplusage to me.  In fact, (a)(2) and (a)(3) are very

17  commonly invoked and are meant actually to broaden the

18  government's discretion, not to narrow it.  So you shouldn't

19  read (a)(2) and (a)(3) in any way to limit the scope of

20  (a)(1).

21          Number two, on Southwest --

22          JUDGE FISHER:  Any of them in United States

23  Attorney's Offices?

24          MR. WHITAKER:  I don't believe there were any in

25  United States Attorney's Offices, Your Honor.  But I do think

1    that the FVRA is a generally applicable statute, and you

2    should read it as a whole to apply to all the somewhat --

3            JUDGE FISHER:  I understand.

4            MR. WHITAKER:  -- thousand PAS positions in the

5    government.

6        Number two, on Southwest General, counsel focused a lot

7    on Southwest General, implicitly resolving the pending

8    nomination issue.  But in Footnote 2, the Supreme Court

9    specifically flagged this issue and said that they were not

10   deciding that issue.  Southwest General is -- it's not just a

11   question of implicitly not deciding it.  They told you they

12   were not deciding it.  So Southwest General is in no way

13   contrary to the government's position on the pending

14   nomination issue.

15       Number three, on delegation, you absolutely would have to

16   go into conflict with Arthrex to rule against us on that

17   issue.   Arthrex was not only about 3348 as contrary to what

18   counsel said.  And Arthrex -- because the question in Arthrex

19   was just whether the Commissioner of Patents had authority to

20   act.   And Arthrex did argue that 3347(a) precluded that, and

21   Arthrex rejected that argument quite properly.  And that

22   reasoning was cited approvingly by this Court in Kajmowicz.

23   So you would have to go into conflict with Arthrex to resolve

24   it against us.

25       Secondly, this absolutely has happened before in U.S.

**1**    Attorney's Office in terms of delegation.  And in Footnote 6

**2**    of our opening brief, we cite examples where individuals timed

**3**    out as Acting United States Attorney under the FVRA and

**4**    continued to exercise the functions and duties of that office

**5**    by delegation.  And no one seemed to think that was a problem

**6**    until Alina Habba got appointed to that office.

**7**         Number three, counsel conceded that if the appointment

**8**    order in this case had just said the Attorney General

**9**    hereby delegates --

**10**        JUDGE SMITH:  Excuse me, Mr. Whitaker, and I do hate

**11**   to interrupt.  But you -- are you suggesting anything more

**12**   than just a recitation of the history here when you said, "And

**13**   nothing like that had happened until Alina Habba was

**14**   nominated" --

**15**        MR. WHITAKER:  Well, I guess --

**16**        JUDGE SMITH:  -- because one thing that I have been

**17**   very much aware of and would have said before my own

**18**   questioning began is that, Ms. Habba, nothing about this

**19**   involves, in my view, Ms. Habba personally.  This is about the

**20**   statutes.  This is about the separation of powers.  This is

**21**   about an important position within the firmament of our

**22**   government.

**23**        This is about process, which is what the system that we

**24**   operate under every day is all about, whether it's due process

**25**   or whether it's just process provided by procedural rules or

1    substantive law.  And so I just want to say that, and I'm sure
2    my colleagues agree, that this is not a personal thing.  So I
3    wanted to give you an opportunity to indicate whether that was
4    your suggestion or not.

5            MR. WHITAKER:  No, Your Honor.  I guess my
6    suggestion is that the government -- what the government has
7    done here with Alina Habba is consistent with longstanding
8    practice.  And in many of those instances, that practice went
9    unchallenged, even --

10           JUDGE SMITH:  All right.  All right.  Since you said
11   that, I do have to ask you this.  I've heard this -- your
12   argument about consistency, and I didn't think that you would
13   say that.  But let -- indulge me, please, with this recitation
14   of my understanding of the recent history here, and tell me
15   where I'm wrong, and I may be at some point.  We go back to
16   March 24th, and the President announces on Truth Social that
17   Ms. Habba will be our Interim U.S. Attorney for the District
18   of New Jersey, effective immediately.  Now, he was wrong about
19   "effective immediately," I believe, right?

20           MR. WHITAKER:  Well, I think the President was not
21   speaking in lawyerly terms, but I think the President was, in
22   effect --

23           JUDGE SMITH:  Well, dates are something that we can
24   refer to and not have to be a lawyer.  But let's skip over
25   that.  I don't want to get into a side argument.

1        And then Attorney General Bondi swears in Ms. Habba as

2    the Interim U.S. Attorney.  And then on June 30, there is, I

3    believe, a nomination by the President of Ms. Habba to be the

4    United States Attorney, 120 days elapsed on July 1.  After

5    that, one of the issues in one of the cases here is the

6    signature of Ms. Habba on the Pina Indictment, not of great

7    concern to what's before us right now.

8        On July 22nd, 120 days elapsed after the Truth Social

9    announcements I just referenced a minute ago.  Next, the

10   District Court appoints Desiree Grace, First Assistant as the

11   U.S. Attorney, effective July 22 or upon expiration of 120

12   days after the appointment of Ms. Habba.  Grace, of course, is

13   terminated from the DOJ.  Attorney General Bondi announces on

14   X that Grace has just been removed.  The President withdraws

15   the Habba USA nomination.  Ms. Habba resigns as the Interim

16   United States Attorney.

17       And then Attorney General Bondi appoints Ms. Habba

18   Special Attorney to the Attorney General with authorization to

19   conduct all proceedings that USAs may conduct, and we've gone

20   over the statute that that seems to be within her province.

21   Then Attorney General Bondi appoints Ms. Habba to First

22   Assistant position vacated by Grace.  And then Ms. Habba

23   purports to automatically elevate the Acting U.S. Attorney by

24   virtue of being the First Assistant U.S. Attorney because the

25   USA role was vacant.  Was there anything in my recitation of

1    this series of events that was inaccurate?

2          MR. WHITAKER:  I don't believe so, Your Honor.  But,
3    I guess --

4          JUDGE SMITH:  All right.  With that said, having
5    said -- and told us numerous times how common practice has
6    played into this -- and I don't care about dates.  I don't
7    care about names -- can you come up with an example of any
8    time that such a concatenation of events has occurred with
9    respect to the appointment of a United States Attorney?

10         MR. WHITAKER:  Well, I guess I cannot.  But I guess
11   I would say that what that series of precise and precisely
12   timed events is not in substance from what the Executive
13   Branch has done in other contexts and analogous contexts.  And
14   we cite in Footnote 6 of our brief other examples where FAUSAs
15   timed out under the FVRA and exercised their authority solely
16   through -- solely by delegation.  And I don't believe that
17   anybody challenged those delegations.

18       And if I could just make one final point.  Counsel
19   conceded that if the Order here had just said, "I delegate to
20   Ms. Habba authority to conduct these criminal cases," it would
21   be just fine.  And if that's the case, it is impossible to --
22   the only issue before the Court right now are the Recusal
23   Orders in this case.  And it's impossible to see how that
24   conceded fact becomes different because the delegation is a
25   wholesale one rather than a retail one because I guess we

1    could do exactly what we've done here by just having the AG

2    issue Orders for every single criminal case.

3        And that doesn't make any sense, and it is very common

4    for there to be wholesale delegations of the Attorney

5    General's authority, and no one has questioned this.  For

6    example, the Deputy Attorney General has authority -- a

7    standing delegation of all the AG's authority to supervise all

8    of the U.S. Attorney's Offices.  And that's not invalid.  And

9    if that's okay --

10        JUDGE FISHER:  Well, one answer to your point about

11    the delegation.  Pina was indicted before the delegation had

12    happened.

13        MR. WHITAKER:  Well, I believe that's right, Your

14    Honor.  But, of course, the Indictments -- the dismissal --

15        JUDGE FISHER:  So the question is her continued

16    ability to prosecute?

17        MR. WHITAKER:  Exactly.  But that's -- that, of

18    course, is not before the Court.  And I think it would be in

19    some tension, by the way, with the Supreme Court's recent

20    jurisprudence on facial challenges to say that, because there

21    might be some problem with the powers that Ms. Habba was

22    delegated more broadly by the AG, that, somehow, would

23    invalidate her Delegation Order as it applies to these

24    specific cases and indeed all cases in the District of New

25    Jersey.  And that's fully consistent with --

1          JUDGE FISHER:  Mr. Lowell listed a litany of things

2     that he didn't think that would be covered by a delegation.

3     Did you agree with that litany?

4          MR. WHITAKER:  I'm not sure I have exactly what

5     litany he had in mind.  But I guess I will say this, that --

6          JUDGE FISHER:  And if you could just tell us one

7     thing that she --

8          MR. WHITAKER:  Well, her --

9          JUDGE FISHER:  -- it's incapable to delegate.

10         MR. WHITAKER:  She can't appoint officers of the

11    United States.  She can't approve certain kinds of FISA

12    warrants under the relevant delegation statutes.  Like, there

13    are limits on the AG's ability -- and I went through those.

14    Initially, there are limits on the AG's ability to delegate

15    functions to subordinate officials that are imposed not just

16    by the FVRA but also other statutes that just govern --

17         JUDGE FISHER:  But those delegations wouldn't relate

18    necessarily to the work -- to her work as the acting or

19    delegated United States Attorney in New Jersey?

20         MR. WHITAKER:  I agree with that.  I agree with

21    that, Your Honor.  But I actually think that that doesn't

22    matter.  And there are substantial limits.  They may not

23    necessarily be implicated by this specific case.  But the

24    Court has to interpret the statute consistently across all the

25    offices in the Executive Branch and all the Attorney General's

1    powers.

2        And if the Court does that, Alina Habba is fully

3    empowered to supervise these criminal cases by delegation in

4    the same way that Assistant United States Attorneys, as the

5    District Court observed, are fully authorized to conduct

6    criminal proceedings by dint of authority that traces back

7    directly to the Attorney General, not just, by the way, by

8    virtue of delegating the U.S. Attorney's authority, but also

9    delegating the AG's own authority to supervise criminal cases

10   and conduct litigation as defined by the statutes in 28 U.S.C.

11   in the 500s.  Are there any further questions that I can

12   answer for the Court?

13         ALL:  (No verbal response).

14         MR. WHITAKER:  We would ask that the

15   Disqualification Orders be reversed.  Thank you.

16         JUDGE SMITH:  Thank you very much.

17         JUDGE RESTREPO:  Thank you.  Thank you for

18   everybody's briefs and arguments.  Have a great day.

19     (Court adjourned)

20                         CERTIFICATION
21   I, Lewis Parham, certify that the foregoing is a correct
22   transcript from the electronic sound recording of the
23   proceedings in the above-entitled matter.
24
25
26   Lewis Parham                        10/30/25
27
28   _____        _____
29   Signature of Transcriber            Date