# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JULIEN GIRAUD, JR., JULIAN GIRAUD III, CESAR HUMBERTO PINA

Defendants-Appellees.

————————————

On Appeal from the United States District Court for the District of New Jersey,
Nos. 1:24-cr-768, 2:25-cr-436 (Brann, C.J. (M.D. Pa.))

————————————

## PETITION OF THE UNITED STATES
## FOR REHEARING EN BANC

————————————

PAMELA J. BONDI
*Attorney General*

TODD BLANCHE
*Deputy Attorney General*

STANLEY WOODWARD
*Associate Attorney General*

PHILIP LAMPARELLO
*Senior Counsel*

HENRY C. WHITAKER
*Counselor to the Attorney General*

MARK E. COYNE
*Supervisory Assistant U.S. Attorney*
*Chief, Appeals Division*
*District of New Jersey*

A. TYSEN DUVA
*Assistant Attorney General*

JOSH A. GOLDFOOT
*Deputy Assistant Attorney General*

KATHERINE TWOMEY ALLEN
*Criminal Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-1935*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION AND STATEMENT OF COUNSEL PURSUANT TO LOCAL RULE 35.1 ............................................................................................................1

STATEMENT OF COURSE OF PROCEEDINGS ......................................................2

    A.    Facts ....................................................................................................................2

    B.    Disposition On Appeal ..................................................................................3

ARGUMENT ........................................................................................................................5

I.    The Panel Improperly Limited Acting Service Under The FVRA .......................5

    A.    Section 3345(a)(1) Is Not Limited To Incumbent First Assistants............5

    B.    Section 3345(b)(1) Does Not Prohibit Acting Service By Withdrawn Nominees ................................................................................8

II.    The Panel's Erroneous Interpretation Of § 3347 Of The FVRA Creates A Conflict With The Federal Circuit ......................................................9

III.    The Case Is Not Moot, And This Court Should Promptly Grant Rehearing En Banc................................................................................................ 14

CONCLUSION ................................................................................................................ 16

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

## Cases

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   35 F.4th 1328 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023) .................... 1, 4, 9

*DeJohn v. Temple Univ.*,
   537 F.3d 301 (3d Cir. 2008) .........................................................................15

*Doe v. City of Albuquerque*,
   667 F.3d 1111 (10th Cir. 2012).....................................................................15

*Gaiambrone v. Comm'r Soc. Sec.*,
   No. 23-2988, 2024 WL 3518305 (3d Cir. July 24, 2024) ...........................................14

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
   107 F.4th 1064 (9th Cir. 2024) .....................................................................12

*Hartnett v. Pennsylvania State Education Association*,
   963 F.3d 301 (3d Cir. 2020) .................................................................... 14, 15

*Kajmowicz v. Whitaker*,
   42 F.4th 138 (3d Cir. 2022) ........................................................................12

*Mayorkas v. Innovation Law Lab*,
   141 S. Ct. 2842 (2021)...............................................................................15

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ..................................................................................6

*Schaghticoke Tribal Nation v. Kempthorne*,
   587 F.3d 132 (2d Cir. 2009) ........................................................................12

*Stand Up for Cal.! v. U.S. Dep't of Interior*,
   994 F.3d 616 (D.C. Cir. 2021), *affirming* 298 F. Supp. 3d 136 (D.D.C. 2018) ..........13

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*,
   513 U.S. 18 (1994) ..................................................................................15

*United States v. Munsingwear*,
   340 U.S. 36 (1950) ..................................................................................15

*United States v. Ramirez,*
   --- F. Supp. 3d ----, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025) .............................13

**Statutes and Rules**

5 U.S.C. § 3345........................................................................ 1, 3, 4, 5, 6, 8, 10

5 U.S.C. § 3345 (1966) ...............................................................................5

5 U.S.C. § 3346..........................................................................................14

5 U.S.C. § 3346 (1966) ...............................................................................5

5 U.S.C. § 3347 ..................................................................................4, 9, 10

5 U.S.C. § 3348 ...............................................................................4, 11, 12

5 U.S.C. § 3349 ............................................................................................6

6 U.S.C. § 113 ..............................................................................................7

7 U.S.C. § 2210 ............................................................................................7

7 U.S.C. § 2211 ............................................................................................7

12 U.S.C. § 5491 ..........................................................................................8

22 U.S.C. § 2651a ........................................................................................7

28 U.S.C. § 503 ..........................................................................................10

28 U.S.C. § 509 ....................................................................................10, 12

28 U.S.C. § 510 ..........................................................................................10

28 U.S.C. § 515 ..........................................................................................10

28 U.S.C. § 516 ..........................................................................................10

28 U.S.C. § 517 ..........................................................................................10

28 U.S.C. § 518 ..........................................................................................10

28 U.S.C. § 519.................................................................................................10

28 U.S.C. § 546..................................................................................................2

29 U.S.C. § 552..................................................................................................7

31 U.S.C. § 301..................................................................................................7

38 U.S.C. § 304..................................................................................................7

43 U.S.C. § 1452...............................................................................................7

44 U.S.C. § 2103...............................................................................................8

28 C.F.R. § 0.15...............................................................................................11

## Other Authorities

144 Cong. Rec. S11037-39 (daily ed. Sept. 28, 1998)......................................5

144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998) ............................................5

*Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177 (2001) ........................6

*Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60 (1999) ......................................................................................13

Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008)..................................................................................................13

Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001) ...................6

S. Rep. No. 105-250 (1998)................................................................................5

**INTRODUCTION AND STATEMENT OF COUNSEL PURSUANT TO LOCAL RULE 35.1**

The undersigned attorneys express a belief, based on a reasoned and studied professional judgment, that rehearing en banc is necessary because the panel's decision involves the following questions of exceptional importance and, as the panel recognized, conflicts with the Federal Circuit's decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023):

(1) Whether the Acting U.S. Attorney was ineligible to serve under the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 et seq., either because she was appointed First Assistant U.S. Attorney after the vacancy arose or had previously been nominated to serve as U.S. Attorney; and

(2) Whether the FVRA prohibits the Attorney General from authorizing the First Assistant U.S. Attorney to prosecute and supervise cases in a district in which the office of U.S. Attorney is vacant.

In resolving those questions, the panel erroneously interpreted the FVRA and held that Alina Habba was not validly serving as the Acting U.S. Attorney for the District of New Jersey and could not prosecute or supervise these criminal cases in her capacity as First Assistant U.S. Attorney because she was a "*de facto*" U.S. Attorney. The panel's "*de facto*" U.S. Attorney standard has created new uncertainty, and its interpretation of the FVRA, a statute that generally applies across the Executive Branch, would invalidate widespread and longstanding Executive Branch practices that are

critical in times of vacancies in offices that require appointment by the President and confirmation by the Senate ("PAS" offices). Indeed, the panel's interpretation of the FVRA would hobble Presidential transitions and has been routinely violated by the last four administrations without any court holding the practice unlawful. Rehearing en banc is warranted.

## STATEMENT OF COURSE OF PROCEEDINGS

### A.    Facts

On January 8, 2025, the Senate-confirmed U.S. Attorney for the District of New Jersey resigned. Add.9. After two individuals served as Acting U.S. Attorney under the FVRA and interim U.S. Attorney under 28 U.S.C. § 546, the Attorney General appointed Ms. Habba as interim U.S. Attorney, effective March 28, 2025. Add.9-10. On June 30, President Trump nominated Ms. Habba for the office of U.S. Attorney, but the Senate never acted on her nomination. Add.10. As the end of Ms. Habba's 120-day interim appointment approached, the Executive Branch, consistent with its view that Ms. Habba should continue to lead the office, used the FVRA to make her the Acting U.S. Attorney, subject to the FVRA's statutory eligibility and timing restrictions. Specifically, on July 24, 2025, the President withdrew Ms. Habba's nomination; Ms. Habba subsequently resigned as interim U.S. Attorney; and the Attorney General appointed her as a Special Attorney and designated her as First Assistant U.S. Attorney for the District of New Jersey. *Id.* Because the office of U.S.

Attorney was vacant and she was the First Assistant to that office, she became the Acting U.S. Attorney under the FVRA's default provision, 5 U.S.C. § 3345(a)(1).

The defendants in these two cases moved to dismiss their indictments and disqualify Ms. Habba and anyone acting under her authority from participating in their prosecutions. Add.11. The district court denied the dismissals, but granted disqualification. *Id.* The government appealed.

## B. Disposition On Appeal

A panel of this Court affirmed. Add.13-32. The panel held that Ms. Habba was not validly serving as Acting U.S. Attorney because she was not the First Assistant at the time the Senate-confirmed U.S. Attorney had resigned, during the previous Presidential administration. Add.13-20. The panel recognized that § 3345(a)(1)'s text "alone is, at first glance, silent" on the issue, but the panel determined that the text "suggest[s] that § 3345(a)(1) triggers at the moment the vacancy arises." Add.14-15. The panel primarily reasoned that a contrary interpretation would render § 3345(a)(2) and (a)(3) and the interim U.S. Attorney statute (§ 546) "*mostly* superfluous." Add.17, 20 (emphasis added). The panel dismissed the longstanding practice, endorsed by the Government Accountability Office and Office of Legal Counsel since 2001 and routinely relied upon during Presidential transitions, of temporarily filling PAS positions by appointing new first assistants after the vacancies occur. Add.18-19.

The panel also held that Ms. Habba could not serve under the FVRA because she was previously a nominee for the office. The panel recognized that the statutory

bar is phrased in the present tense: "a person may not serve as an acting officer for an office under this section, if … the President *submits* a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1) (emphasis added); Add.20-21. Yet the panel reverted to the past tense in reasoning that Ms. Habba was barred from serving because "the President undisputedly took the statutory action— '*submit[ted]* a nomination'—on June 30 when he nominated Habba for U.S. Attorney." Add.21 (emphasis added; alteration in original).

Finally, the panel held that the FVRA's exclusivity provision prohibited Ms. Habba from prosecuting and supervising cases in her capacity as the First Assistant U.S. Attorney. Add.24-32. The panel stated that the Attorney General "attempted to delegate to Habba the full panoply of powers of a U.S. Attorney" and thus created a "*de facto* U.S. Attorney-by-delegation" that was barred by 5 U.S.C. § 3347, which states that the FVRA "is 'the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office,'" unless another statute expressly authorizes acting service. Add.24-27. The panel recognized that its interpretation of § 3347 conflicts with the Federal Circuit's decision in *Arthrex*, 35 F.4th 1328, and dismissed the decisions of other courts of appeals as irrelevant because they involved the FVRA's remedy provision (§ 3348). Add.28-31. Finally, the panel stated that its holding that the delegation of "*all* the powers of a U.S. Attorney" violates the FVRA's exclusivity provision "does not necessarily mean that *some* delegation by the Attorney General to Habba … would not be permissible." Add.32 (emphases added).

4

# ARGUMENT

## I. The Panel Improperly Limited Acting Service Under The FVRA

The panel improperly limited acting service under the FVRA, and those limits present exceptionally important questions because of the FVRA's significance to the operation of the Executive Branch when PAS offices are vacant.

### A. Section 3345(a)(1) Is Not Limited To Incumbent First Assistants

The panel erred in concluding that service under § 3345(a)(1) is limited to the first assistant who was serving at the time that the vacancy initially arose. That requirement appears nowhere in the statute. The statute instead provides that when a PAS office is vacant, the "first assistant to *the office* of such officer" shall serve in an acting capacity—not the first assistant to the *particular officer* who was serving at the time the vacancy arose. 5 U.S.C. § 3345(a)(1) (emphasis added). The FVRA's legislative history underscores that § 3345(a)(1) is not limited to incumbent first assistants: the FVRA's predecessor used the phrase "his first assistant," 5 U.S.C. §§ 3345, 3346 (1966), and the Senate version of the FVRA used the phrase "first assistant of such officer," S. Rep. No. 105-250 at 25 (1998), but Congress chose to enact the phrase "first assistant *to the office*" in the final bill after concerns had been raised that the Senate version was too restrictive, especially during presidential transitions. *See* 5 U.S.C. § 3345(a)(1); 144 Cong. Rec. S11037-39 (daily ed. Sept. 28, 1998); 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998); USBr.20-22.

Furthermore, § 3345(a)(1) applies "[i]f" a PAS officer "dies, resigns, or *is otherwise unable to perform the functions and duties of the office*" (emphasis added), and the Supreme Court has recognized that a vacancy is "a continuing state," *NLRB v. Noel Canning*, 573 U.S. 513, 539 (2014). Accordingly, § 3345(a)(1) requires determining who the first assistant is whenever a PAS officer "is" unable to perform his functions. Importantly, while "dies" and "resigns" refer to single events, the panel erred by concluding that "is otherwise unable to perform" is also limited to a "single instance." Add.16. The statute does not refer to when the officer "became" unable to perform his functions.

The panel's newfound requirement that the first assistant must have been serving when the vacancy first arose also conflicts with the structure of the statute, which uses backward-looking language that makes eligibility for acting service for certain individuals depend on the state of affairs during the time preceding the vacancy. *See* 5 U.S.C. § 3345(a)(3)(A), (b)(1)(A).

Finally, the panel's decision conflicts with common Executive Branch practice that has been expressly approved by GAO—a component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—and OLC. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001), *available at* https://www.gao.gov/assets/gao-02-272r.pdf; *Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179-81 (2001). Indeed, it is routine practice for a new

administration to appoint non-incumbent first assistants to serve as acting PAS officials to get a new administration up and running, Appx278, 326, rather than having incumbent holdovers from the prior administration perform those important functions. This is especially important because most PAS officers and politically appointed first assistants will have resigned before the Inauguration, which would leave only senior career employees to serve as acting officials under the FVRA.

The panel erroneously believed that the government's widely accepted interpretation of § 3345(a)(1) would render the limits on the President's authority to designate acting officials under subsections (a)(2) and (a)(3) "mostly superfluous" because the President could instead direct the agency head to appoint any person as first assistant and that person would become the acting official under (a)(1). Add.17. At the outset, "mostly superfluous" is not license to rewrite a statute. In any event, in the most important circumstances, when the office of an agency head is vacant, the President often cannot rely on subsection (a)(1) because the first assistant position is a PAS office or must be appointed by the agency head. The panel believed these circumstances are comparatively rare, Add.17, but ignored that there generally is a PAS first assistant to the head of large government agencies, *see, e.g.*, 22 U.S.C. § 2651a(a)(2) (Department of State); 6 U.S.C. § 113(a)(1)(A) (Department of Homeland Security); 7 U.S.C. §§ 2210, 2211 (Department of Agriculture); 43 U.S.C. § 1452 (Department of the Interior); 38 U.S.C. § 304 (Department of Veterans Affairs); 29 U.S.C. § 552 (Department of Labor); 31 U.S.C. § 301 (Department of the Treasury), and it is not

uncommon to find agency-head-appointed first assistants at smaller agencies, *see, e.g.*, 12 U.S.C. § 5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C. § 2103(c) (National Archives and Records Administration). Indeed, on the first day of this Administration, the President relied on (a)(2) and (a)(3) to designate at least 27 acting officials under the FVRA. *See* https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-acting-leaders/; USReply at 6-7.

The government's plain-text interpretation also does not render § 546 superfluous—"mostly" or otherwise. Even under the government's interpretation, the FVRA has various limits that § 546 lacks, such as the general bar on nominees serving as acting officials, 5 U.S.C. § 3345(b)(1)(B), and the inability to have an indefinite appointment by the district court.

**B.** **Section 3345(b)(1) Does Not Prohibit Acting Service By Withdrawn Nominees**

The panel also erroneously concluded that 5 U.S.C. § 3345(b)(1)(B) prohibits a first assistant with a previously withdrawn nomination from serving as the acting official under (a)(1). The bar on acting service by nominees applies when "the President submits" a "nomination … to the Senate for appointment to such office." *Id.* § 3345(b)(1)(B). Because a vacancy is a continuing condition, and the statute uses the present tense, it bars acting service only when there is a presently existing submission of a nomination.

In reaching a contrary conclusion, the panel rewrote the statute. The panel changed the present tense verb "submits" to the past tense "submitted" when it held that Ms. Habba could not serve as Acting U.S. Attorney because the President "took the statutory action—'submit[ted] a nomination'—on June 30 when he nominated Habba for U.S. Attorney." Add.21 (alternations in original).

\* \* \*

The panel's atextual limits on acting service under the FVRA are issues of exceptional importance that apply throughout the Executive Branch and warrant rehearing en banc.

## II. The Panel's Erroneous Interpretation Of § 3347 Of The FVRA Creates A Conflict With The Federal Circuit

The panel's holding that the FVRA's exclusivity provision, 5 U.S.C. § 3347, prohibits the exercise of the delegable functions of a vacant office directly conflicts with the Federal Circuit's decision in *Arthrex*, 35 F.4th at 1336, which held that the "FVRA does not … restrict who may perform a PAS officer's delegable duties when he is absent." The panel recognized that *Arthrex* addressed the same issue presented in this case, and it expressly disagreed with the Federal Circuit. Add.29-30. Rehearing en banc is warranted for that reason too.

The FVRA does not prohibit the Attorney General from authorizing a First Assistant U.S. Attorney to prosecute crimes and supervise litigation in a district in which the office of U.S. Attorney is vacant. The Attorney General has the authority to

prosecute crimes and supervise litigation in all districts, to appoint subordinates within the Department of Justice, and to delegate her authority to those subordinates, including to First Assistant U.S. Attorneys. *See* 28 U.S.C. §§ 503, 509-10, 515-19. Here, the Attorney General delegated the authority to prosecute crimes and supervise litigation in the District of New Jersey to Ms. Habba as the First Assistant U.S. Attorney for the district. Appx161-65.

The plain text of the FVRA does not prohibit that delegation: the FVRA does not prohibit the exercise of delegable functions or provide a remedy for the unlawful exercise of delegable functions. The FVRA authorizes temporary service by "acting" officials, who exercise both delegable and non-delegable functions. 5 U.S.C. § 3345(a). The FVRA's exclusivity provision states that the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a PAS office, unless there is a recess appointment or another statute expressly authorizes the designation of an acting official for the office. *Id.* § 3347(a). It does not purport to prohibit the exercise of delegable functions by non-acting officials.

The distinction between an acting official and a delegee is significant. An acting official derives her authority from the FVRA, is authorized to perform *all* "the functions and duties of the office" for which she is acting, and assumes the title of the vacant office. A delegee, by contrast, derives authority only to the extent another official has delegated powers to her, is subject to the limits on that delegation, and may not use the

acting title for the vacant office. Section 3347(a) simply does not address the exercise of delegable functions by non-acting officials.

Furthermore, the FVRA's remedy provision invalidates only the performance of the *non*-delegable, exclusive functions and duties of a vacant office. *See* 5 U.S.C. § 3348(a)(2)(A)(ii), (B)(i)(II), (d). There is no reason why Congress would have prohibited the exercise of otherwise lawfully delegated duties of a vacant office in § 3347 but then provided no remedy for violating that prohibition in § 3348.

The panel erroneously rejected the distinction between acting officials and delegees and held that § 3347 prohibited the delegation at issue here because Ms. Habba was a "*de facto*" U.S. Attorney who had been delegated all the functions of the U.S. Attorney. Add.25-27. The panel emphasized that its holding "does not necessarily mean that some delegation by the Attorney General to Habba—or to any First Assistant U.S. Attorney—would not be permissible," because a "more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision." Add.32. Indeed, defense counsel conceded at oral argument that the Attorney General can lawfully delegate many functions to Ms. Habba, including "probably" "the right to prosecute all criminal cases arising out of the District of New Jersey." Tr.35-36. It is in fact routine for the Attorney General to broadly delegate her authority, such as her delegation to the Deputy Attorney General to exercise all the non-exclusive functions of the Attorney General, which includes the non-exclusive functions of *each and every U.S. Attorney*. *See* 28 C.F.R. § 0.15(a); 28 U.S.C.

§ 509. There is no reason why Congress would have prohibited the delegation of *all* the delegable duties of an office but allowed the delegation of all but one (or two, or three, or four) of those duties. The plain text of the FVRA makes clear that § 3347 is the exclusive means of service as an "acting" official and that § 3348(d) invalidates the exercise of exclusive, non-delegable functions of vacant offices. Those are the limits that Congress chose.

The panel also erred by dismissing the relevance of § 3348. Instead of trying to reconcile § 3347 and § 3348, the panel dismissed out of hand this Court's decision in *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022), and decisions of the Ninth, Second, and D.C. Circuits on the ground that they addressed the FVRA's remedy provision rather than its exclusivity provision. *See* Add.30-31. But those decisions confirm that the FVRA's remedy provision is limited to the unlawful exercise of non-delegable, exclusive functions, and thus they strongly support the conclusion that § 3347 does not prohibit the delegation of non-exclusive functions. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024) (holding that the FVRA's ratification bar "applies only to those duties of an officer that are nondelegable"); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009) (holding that the FVRA did not prohibit a subordinate officer from performing a delegable function of a vacant PAS office); *Stand Up for Cal.! v. U.S. Dep't of Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) (observing that the "FVRA forecloses the delegation of exclusive duties and authorities to a successor official after expiration of

the statutorily authorized 210-day period of acting-capacity service"), *affirming* 298 F. Supp. 3d 136, 150 (D.D.C. 2018) (holding that the exercise of delegable duties of a vacant PAS office by the principal deputy after his acting service had expired did not violate the FVRA).

The panel's interpretation of § 3347 directly conflicts with the Federal Circuit's decision in *Arthrex* and is in tension with Ninth, Second, and D.C. Circuit decisions interpreting the FVRA. It also directly conflicts with the Central District of California's holding in these precise circumstances that § 3347 does not prohibit the First Assistant U.S. Attorney from exercising prosecutorial and supervisory authority delegated by the Attorney General, even when the office of U.S. Attorney is vacant. *See United States v. Ramirez*, --- F. Supp. 3d ----, 2025 WL 3019248, at *18 (C.D. Cal. Oct. 28, 2025). And it conflicts with the longstanding interpretations of the FVRA by OLC and GAO, which approve the settled practice of principal deputies continuing to run offices pursuant to delegated authority even after the FVRA's limits on acting service have expired. *See Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999); Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP. Rehearing en banc is warranted.

## III. The Case Is Not Moot, And This Court Should Promptly Grant Rehearing En Banc

As a result of the panel's ruling, on December 8, 2025, Ms. Habba resigned and accepted a different position as Senior Advisor to the Attorney General for U.S. Attorneys. *See* https://x.com/AlinaHabba/status/1998101999024550125. The Attorney General accepted her resignation, noting that the Department will seek further review of the panel's decision and that "Alina intends to return to lead the U.S. Attorney's Office for the District of New Jersey" if the decision is reversed. *See* https://x.com/AGPamBondi/status/1998102734680318084. Ms. Habba has confirmed that intention. Add.33. To ensure continuity of leadership in accordance with the panel's and the district court's decisions, the Attorney General designated three officials to collectively supervise the U.S. Attorney's Office for the District of New Jersey. *See* https://www.justice.gov/opa/pr/department-justice-leadership-announces-new-personnel-appointments-and-authorizations.

Ms. Habba's resignation did not moot this appeal of the disqualification orders.[1] The party claiming mootness "bears the heavy burden of persuading the court that there is no longer a live controversy." *Hartnett v. Pennsylvania State Education Association*, 963 F.3d 301, 305-06 (3d Cir. 2020) (quotation marks and brackets omitted). Voluntary

---

[1] The expiration of the time for acting service under § 3346 on February 19, 2026, also will not moot the appeal because if the President nominates someone for the position of U.S. Attorney, that would trigger a new time period in which Ms. Habba could serve as the acting officer. *See* 5 U.S.C. § 3346(a)(2); *Gaiambrone v. Comm'r Soc. Sec.*, No. 23-2988, 2024 WL 3518305, at *3 (3d Cir. July 24, 2024) (unpub.).

cessation "will moot a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 306 (quotation marks omitted). A defendant's temporary compliance with a court order while "'forcefully maintain[ing]'" the legality of its conduct pending further proceedings does not moot a case. *Id.* (citing *Doe v. City of Albuquerque*, 667 F.3d 1111, 1117 n.5 (10th Cir. 2012); *DeJohn v. Temple Univ.*, 537 F.3d 301, 310 (3d Cir. 2008)). The situation here is similar to *Doe*, where the defendant city's compliance with an injunction did not moot the case (or the city's appeal) because the city "indicated its intent to reenact the challenged ban should [the court of appeals] reverse the district court's decision striking it down." 667 F.3d 1117 n.5; *see Hartnett*, 963 F.3d at 306. The same analysis applies here.[2]

This Court should promptly grant rehearing en banc because the panel's "*de facto*" U.S. Attorney standard has created further uncertainty in the District of New Jersey. Indeed, several defendants are now challenging the current supervisory structure in the U.S. Attorney's Office as a violation of § 3347 on the grounds that allocating among

---

[2] If this Court determines that the case is moot, it should vacate the panel's and district court's decisions under *United States v. Munsingwear*, 340 U.S. 36, 39-40 (1950), because mootness would prevent further review in a case that otherwise warrants it. Ms. Habba decided in her personal capacity to resign, so this is not a situation where "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari." *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994). The equities favor vacatur because the panel's decision hobbles a broadly applicable federal law, potentially creating consequences far beyond the New Jersey U.S. Attorney's Office. *See Munsingwear*, 340 U.S. at 41; *see, e.g., Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021) (vacating under *Munsingwear* where government's policy change caused mootness).

three officials the delegable authority of a U.S. Attorney still results in a "*de facto*" U.S. Attorney. *See, e.g., United States v. Navinvala*, No. 24-cr-099, Dkt. No. 281 (D.N.J. Dec. 29, 2025). Although meritless, those challenges further illustrate that the panel's atextual interpretation of § 3347 warrants reconsideration.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

PAMELA J. BONDI
  *Attorney General*

TODD BLANCHE
  *Deputy Attorney General*

STANLEY WOODWARD
  *Associate Attorney General*

PHILIP LAMPARELLO
  *Senior Counsel*

HENRY C. WHITAKER
  *Counselor to the Attorney General*

MARK E. COYNE
  *Supervisory Assistant U.S. Attorney*
  *Chief, Appeals Division*
  *District of New Jersey*

A. TYSEN DUVA
  *Assistant Attorney General*

JOSH A. GOLDFOOT
  *Deputy Assistant Attorney General*

*s/ Katherine Twomey Allen*
KATHERINE TWOMEY ALLEN
  *Criminal Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-1935*

January 2026

## COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This petition complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,892 words. This petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

3.      The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4.      This document was scanned for viruses with the most recent version of Microsoft Defender Antivirus, which is continuously updated, and according to that program is free of viruses.


                    *s/ Katherine Twomey Allen*
                    Katherine Twomey Allen

# ADDENDUM

## TABLE OF CONTENTS

Panel Opinion ..............................................................................Add.1

Declaration of Alina Habba .......................................................Add.33

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 25-2635 & 25-2636

_____

UNITED STATES OF AMERICA,
Appellant

v.

JULIEN GIRAUD, JR.; JULIEN GIRAUD, III
(D.C. Criminal No. 1:24-cr-00768-001&002)

CESAR HUMBERTO PINA,
also known as Flipping NJ
(D.C. Criminal No. 2:25-cr-00436-001)

_____

On Appeal from the United States District Court
for the District of New Jersey
District Judge:  Honorable Matthew W. Brann

_____

Argued October 20, 2025

Before:  RESTREPO, SMITH and FISHER, *Circuit Judges*.


(Filed: December 1, 2025)


Pamela J. Bondi, Attorney General
Todd Blanche, Deputy Attorney General
Katherine T. Allen
Matthew R. Galeotti
Henry C. Whitaker [ARGUED]
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Alina Habba, Acting U.S. Attorney & Special Attorney
Mark E. Coyne
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
        *Counsel for Appellant*

R. Trent McCotter
Catholic University of America
School of Law
3600 John McCormack Road NE
Washington, DC 20064
        *Counsel for Separation of Powers Clinic, Amicus Appellant*

Thomas S. Mirigliano
Law Office of Thomas S. Mirigliano
40 Wall Street, 32nd Floor

New York, NY 10005

Gina A. Amoriello
1515 Market Street
Philadelphia, PA 19102
     *Counsel for Julien Giraud, Jr., and Julien Giraud, III,
Appellees in No. 25-2635*

John P. Bolen
David A. Kolansky
Abbe D. Lowell [ARGUED]
Isabella M. Oishi
Lowell & Associates
1250 H Street NW, Suite 250
Washington, DC 20005

Gerald Krovatin
Krovatin Nau
60 Park Place, Suite 1100
Newark, NJ 07102
     *Counsel for Cesar Humberto Pina, Appellee in No. 25-
2636*

James I. Pearce [ARGUED]
Washington Litigation Group
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015
     *Counsel for Association of Criminal Defense Lawyers
of New Jersey, Amicus Appellee*

Debra Loevy
Loevy & Loevy
311 N Aberdeen Street, 3rd Floor

Chicago, IL 60607
*Counsel for Former United States Attorneys, Amicus Appellee*

Thomas A. Berry
Cato Institute
1000 Massachusetts Avenue NW
Washington, DC 20001
*Counsel for CATO Institute, Amicus Appellee*

Mark A. Berman
Hartmann Doherty Rosa Berman & Bulbulia
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
*Counsel for Lloyd Doggett, Wayne T. Gilchrest, Stephen F. Lynch, Frank Pallone Jr., Bennie Thompson, Nydia M. Velazquez, Amicus Curiae*

Anne Burton-Walsh
Aguilar Bentley
171 E Ridgewood Avenue, Suite 201
Ridgewood, NJ 07450
*Counsel for Christopher Shays, John Leboutillier, Mickey Edwards, Peter Smith, Tom Petri, Jim Greenwood, David Trott and Barbara Comstock, Amicus Curiae*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

The United States Attorneys' offices are some of the most critical agencies in the Federal Government. They play an important role in the criminal and civil justice systems and are vital in keeping our communities safe. The U.S. Attorney leading each office is an officer whose appointment requires Senate confirmation. Where a vacancy exists, Congress has shown a strong preference that an acting officer be someone with a breadth of experience to properly lead the office. It is apparent that the current administration has been frustrated by some of the legal and political barriers to getting its appointees in place. Its efforts to elevate its preferred candidate for U.S. Attorney for the District of New Jersey, Alina Habba, to the role of Acting U.S. Attorney demonstrate the difficulties it has faced—yet the citizens of New Jersey and the loyal employees in the U.S. Attorney's Office deserve some clarity and stability.

Congress has crafted various means through which agency authority is exercised absent a Senate-confirmed officer. When a presidentially appointed and Senate-confirmed officer resigns, the generally applicable Federal Vacancies Reform Act (FVRA) authorizes certain people to perform that officer's duties in an acting capacity subject to time limitations. In addition to the FVRA, other statutes expressly authorize the President, a court, or the head of an agency to designate

someone to perform the duties of specified offices in an acting or interim capacity. Parallel to these grants of acting or interim authority, many statutes grant agency heads broad authority to delegate their own duties to other employees of their agencies.

These cases require us to consider the intersection of these various statutes to determine whether Habba is lawfully acting as U.S. Attorney for the District of New Jersey under the FVRA or has been lawfully delegated the full scope of powers of an Acting U.S. Attorney. The defendants in two criminal cases moved to dismiss their indictments and to disqualify Habba from participating in their prosecutions, arguing that she is unlawfully serving as Acting U.S. Attorney. The District Court denied the motions to dismiss, but it granted the motions to disqualify Habba from the prosecutions. The Government appeals. We will affirm.

I.

A.

The Constitution requires that "Officers of the United States" be nominated by the President and confirmed by the Senate, except that Congress may authorize certain other means of appointment for "inferior Officers." U.S. Const. art. II, § 2, cl. II. An officer is "any appointee exercising significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). This presidential appointment and Senate confirmation process is widely referred to as the PAS process.

Congress has required the appointment of U.S. Attorneys to follow the PAS process. 28 U.S.C. § 541(a); *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (noting that the default method of appointment for principal and inferior officers is the PAS process). The PAS process can be lengthy, so Congress has provided various means by which

someone can fill the PAS officer's role in an acting or interim capacity until the Senate confirms a presidentially appointed nominee. Such acting or interim service is permitted, despite the Constitution's Appointments Clause, for a "limited time, and under special and temporary conditions." *United States v. Eaton*, 169 U.S. 331, 343 (1898).

The FVRA is the generally applicable statute for temporarily filling vacant PAS positions. *See* 5 U.S.C. §§ 3345–47. "If an officer of an Executive Agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," then certain people can fill the role in an acting capacity. *Id.* § 3345(a). The FVRA first provides that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to" time limitations. *Id.* § 3345(a)(1). First assistants "automatically assume acting duties under (a)(1)," with no action required by the Executive. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017). Alternatively, "the President (and only the President) may" override the automatic elevation of the first assistant and instead direct a different PAS officer, 5 U.S.C. § 3345(a)(2), or an employee with the requisite amount of experience within the agency, *id.* § 3345(a)(3), to fill the role in an acting capacity.

The FVRA further limits who can fill the role. "[A] person may not serve as an acting officer for an office under this section, if . . . during the 365-day period preceding the [vacancy], such person" either never was the first assistant or was the first assistant for fewer than ninety days, "and the

7

President submits a nomination of such person to the Senate for appointment to such office." *Id.* § 3345(b)(1).

Finally, service as an acting officer under the FVRA is time-limited. "[T]he person serving as an acting officer . . . may serve in the office . . . for no longer than 210 days beginning on the date the vacancy occurs." *Id.* § 3346(a)(1). The 210-day clock is tolled during the time a nomination for the vacant office is pending before the Senate. *Id.* § 3346(a)(2). A rejection or withdrawal of the nomination triggers a new 210-day clock for acting service under the FVRA, again subject to tolling during the pendency of a second nomination. *Id.* § 3346(b).

The FVRA provides that it is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of" a PAS office. *Id.* § 3347(a). There is an exception if some other "statutory provision expressly . . . authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." *Id.* § 3347(a)(1)(A). However, a "statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency" is not a statutory provision that falls within the exception to the FVRA's exclusivity provision. *Id.* § 3347(b). In other words, general vesting and delegation statutes cannot be used to "temporarily authoriz[e] an acting official to perform the functions and duties" of a PAS office. *Id.* § 3347(a).

Congress expressly authorized additional means of temporarily filling vacant U.S. Attorney offices in 28 U.S.C. § 546(a): "[T]he Attorney General may appoint a United States

attorney for the district in which the office of United States attorney is vacant." An interim U.S. Attorney appointed this way may not be someone whose nomination the Senate previously rejected, but the Attorney General otherwise has ample discretion in her choice. *See id.* § 546(b). However, an interim selection under § 546 is subject to a shorter 120-day time limit. *Id.* § 546(c)(2). After 120 days, "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

Separate and apart from the preceding statutes, which authorize the temporary assumption by certain people of an officer's powers, Congress has granted the Attorney General broad delegation authority. "All functions" of the Department of Justice "are vested in the Attorney General," subject to exceptions not relevant here. *See id.* § 509. The Attorney General may authorize "any other . . . employee . . . of the Department of Justice" to perform "any function of the Attorney General." *Id.* § 510. Additionally, the Attorney General is empowered to appoint special attorneys "to assist United States attorneys." *Id.* § 543(a). And the Attorney General may "specifically direct[]" a special attorney, or any officer of the Department of Justice, to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a).

## B.

On January 8, 2025, the presidentially appointed and Senate-confirmed U.S. Attorney for the District of New Jersey, Phillip R. Sellinger, resigned. Then-First Assistant U.S. Attorney Vikas Khanna automatically assumed the functions and duties of the office pursuant to the FVRA and became the Acting U.S. Attorney for New Jersey. 5 U.S.C. § 3345(a). On March 3, under the new presidential administration, Attorney

General Pamela Bondi appointed John Giordano as Interim U.S. Attorney for New Jersey pursuant to 28 U.S.C. § 546(a). Giordano resigned three weeks later, at which time the Attorney General appointed Alina Habba as Interim U.S. Attorney, also pursuant to § 546(a). Habba was sworn in on March 28. On June 30, President Donald Trump nominated her for the permanent role. The Senate never acted on the nomination.

As § 546's 120-day deadline approached, the United States District Court for the District of New Jersey issued a standing order pursuant to 28 U.S.C. § 546(d) providing that Desiree Grace—the First Assistant U.S. Attorney at the time— would be Interim U.S. Attorney effective upon the expiration of Habba's 120-day term under § 546.[1] In response, the Department of Justice terminated Grace's employment. Then, on July 24, the Trump administration took several steps: (1) the President withdrew Habba's nomination for U.S. Attorney; (2) Habba resigned as Interim U.S. Attorney; (3) the Attorney General issued an order appointing Habba as "Special Attorney" to the Attorney General, accompanied by a letter authorizing Habba to conduct "any kind of legal proceedings . . . which United States Attorneys are authorized to conduct" pursuant to 28 U.S.C. § 515, App. 161–62, 165; and (4) in the same order, the Attorney General also designated Habba as First Assistant U.S. Attorney, which purported to mean that Habba automatically became Acting U.S. Attorney pursuant to the FVRA, 5 U.S.C. § 3345(a)(1). As a result of these moves,

---

[1] The date on which the 120-day limit expired was disputed before the District Court. *See* App. 49. But it is not an issue presented in this appeal.

the Government contends that Habba is the Acting U.S. Attorney for the District of New Jersey.

## C.

With his criminal trial for drug trafficking and firearm charges approaching, Julien Giraud Jr. filed a motion to dismiss his indictment on July 27, arguing that Habba's appointment was unlawful. Julien Giraud III, indicted on the same charges as Giraud Jr., joined that motion the following day. The District Court stayed all trial and pretrial matters, and our Court designated and assigned Judge Matthew W. Brann, Chief Judge of the United States District Court for the Middle District of Pennsylvania, for the disposition of this "and all related cases." D. Ct. Dkt. 103.

The District Court ruled on August 1 that the Girauds were not entitled to dismissal of their indictments, but deferred ruling on their motion to disqualify Habba pending further briefing. Cesar Pina then filed a motion to dismiss his wire fraud, money laundering, and bribery charges on August 11, raising many of the same arguments as the Girauds. Pina's case was reassigned to Judge Brann, and the Girauds and Pina agreed to combine their motions for a single oral argument.

On August 21, the District Court issued an opinion and order. As it had done with the Girauds' motion, the District Court denied Pina's motion to dismiss his indictment. But the District Court granted the Girauds' and Pina's motions to disqualify Habba from their prosecutions. The District Court also stayed its order pending resolution of any appellate proceedings. This timely appeal quickly followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the laws of the United States). We

11

ordinarily lack jurisdiction over an appeal from a pre-trial order issued in a criminal proceeding. *United States v. Whittaker*, 268 F.3d 185, 191 (3d Cir. 2001). However, the collateral order doctrine permits a small class of orders to be appealed before a final judgment on the merits. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such an order must (1) conclusively determine a disputed question, (2) resolve an important issue separate from the merits of the action, and (3) be effectively unreviewable on appeal. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981). Here, the District Court's order (1) conclusively determines the disputed question of Habba's ability to prosecute these proceedings, (2) resolves the issue of her power to act, which is important and separate from the merits of the two criminal cases, and (3) is effectively unreviewable on appeal because the Government ordinarily will not appeal a conviction and generally cannot appeal an acquittal. *See Whittaker*, 268 F.3d at 192. Therefore, we have jurisdiction to review the order disqualifying Habba under 28 U.S.C. § 1291 pursuant to the collateral order doctrine.[2]

In considering the District Court's disqualification order, we review factual findings for clear error. *United States v. Shah*, 43 F.4th 356, 362 n.4 (3d Cir. 2022). We consider the District Court's assessment of the proper legal framework and

---

[2] The orders denying the motions to dismiss the indictments in these cases are unreviewable interlocutory orders and are not at issue in this appeal. *See United States v. Soriano Nunez*, 928 F.3d 240, 243 (3d Cir. 2019). Additionally, the appeal is limited to prospective relief (Habba's disqualification) and Habba's current role, so we do not consider the validity of her interim appointment or the District Court's appointment of Desiree Grace.

questions of statutory interpretation *de novo*. *See Whittaker*, 268 F.3d at 193–94; *United States v. Junius*, 86 F.4th 1027, 1030 (3d Cir. 2023). We review the District Court's ultimate decision about whether disqualification is appropriate for abuse of discretion. *Whittaker*, 268 F.3d at 194.

III.

A.

The Government argues that Habba is the Acting U.S. Attorney for New Jersey under the FVRA by virtue of her designation as First Assistant U.S. Attorney. In considering this claim, we must decide: (1) whether only the first assistant in place at the time of a PAS officer's resignation automatically assumes acting officer duties under § 3345(a)(1); and (2) whether the nomination bar in § 3345(b)(1) prevents a person from assuming acting officer duties even if her nomination is no longer pending before the Senate. We answer both questions in the affirmative.

These questions require us to interpret the FVRA, and "we will 'start where we always do: with the text.'" *Al-Hasani v. Sec'y United States Dep't of Homeland Sec.*, 81 F.4th 291, 296 (3d Cir. 2023) (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021)). But "[w]e do not examine the language in isolation." *Hayes v. Harvey*, 903 F.3d 32, 41 (3d Cir. 2018). "Rather, in examining the statutory language, 'we take account of the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008)). "In doing so, 'we must give effect, if possible, to every clause and word of [the] statute.'" *Fischer v. United States*, 603 U.S. 480, 486 (2024) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). The statutory structure—

13

and, when necessary, statutory history—can aid our textual analysis. *See Snyder v. United States*, 603 U.S. 1, 10 (2024).

1.

The Government claims that Habba became Acting U.S. Attorney under the FVRA by virtue of the automatic first-assistant provision, 5 U.S.C. § 3345(a)(1), because the Attorney General designated her First Assistant U.S. Attorney on July 24, and the office of U.S. Attorney was vacant at that time. It challenges the District Court's holding that the FVRA permits a first assistant automatically to fill the vacant office only if the first assistant is already in that role at the time the vacancy occurs. *United States v. Giraud*, __ F. Supp.3d __, No. 1:24-CR-00768, 2025 WL 2416737, at *14 (D.N.J. Aug. 21, 2025). The question, then, is whether an administration can appoint a new first assistant at any time during a vacancy in a PAS office (subject to the FVRA's time limits) and have that later-appointed first assistant automatically become the acting officer.

The text of subsection (a)(1) alone is, at first glance, silent as to whether the first assistant must be in the role at the time of the vacancy. 5 U.S.C. § 3345(a)(1). Nevertheless, the answer can be found in the overall structure of the statutory scheme and by reading subsection (a)(1) within the context of its surrounding subsections. Section 3345(a)(1) provides that, if a PAS office becomes vacant, "the first assistant to the office" shall serve as the acting officer. As the District Court observed, "the vacancy provision and the first assistant provision function in a simple if-then form, indicating that the promotion of the first assistant occurs automatically at the moment of the vacancy." *Giraud*, 2025 WL 2416737, at *14; *see also SW Gen., Inc.*, 580 U.S. at 305 (describing a first assistant's "automatic" assumption of acting duties). The

14

President may essentially override the automatic first assistant appointment by choosing a different person who qualifies under subsections (a)(2) or (a)(3), but neither the President nor anyone else has a role in the automatic elevation of the first assistant when the vacancy occurs. *See* 5 U.S.C. § 3345(a).

Subsection (a)(2) allows the President to direct another PAS officer to assume the acting officer role, and subsection (a)(3) allows the President to direct an employee with the requisite amount of experience within the agency to assume the acting officer role. *Id.* § 3345(a)(2), (3). In subsection (b), Congress further narrowed who can take on an acting role by barring a person otherwise eligible under subsection (a) if the President nominates that person to the office. *Id.* § 3345(b)(1). Taken together, the text of subsections (a)(2), (a)(3), and (b) indicate that Congress intended to honor the Senate's advice-and-consent role, but also recognized a need for some flexibility in choosing an acting officer—so it cabined the pool of eligible people to those the Senate has already confirmed or those with experience within the agency.

The Government argues that "the FVRA does not require a first assistant to be the incumbent at the time the vacancy first arose" to qualify for automatic elevation to acting status. Appellant's Br. 18. The Government points out that the statute does not state that the first assistant must be in the role at the time of the vacancy, and a vacancy is a "continuing state," so—it says—the first assistant provision applies any time during the vacancy. *Id.* at 18–19. It also observes that the statute refers to the first assistant "to the office," not "the first assistant to a particular PAS officeholder at a particular time." *Id.*

There is, however, contrary textual evidence to suggest that § 3345(a)(1) triggers at the moment the vacancy arises,

thereafter leaving (a)(2) and (a)(3) as the only means of selecting a different acting officer. First, § 3345(a) uses present-tense verbs ("dies, resigns, or is otherwise unable to perform") indicating a single, immediate occurrence, as opposed to, for example, the present perfect tense (has died, has resigned), which could indicate past actions with continued relevance. *Hewitt v. United States*, 606 U.S. 419, 427–28 (2025). Further, to the extent the Government relies on the phrase "is otherwise unable to perform" (in contrast to "dies" or "resigns") to demonstrate that § 3345(a) refers to a continuing state, Gov. Br. at 19, such an argument fails. Here, the residual "otherwise" provision is limited by the list of specific examples that precede it. Like "dies" and "resigns," "otherwise unable to perform" must be read to refer to a single instance. *Fischer*, 603 U.S. at 489–90. (holding that the "otherwise" clause in 18 U.S.C. § 1512(c)(2) is limited by preceding examples in (c)(1)).

The Girauds cogently respond that the statute's use of the definite article "the" in reference to "the first assistant," rather than "a" first assistant, "clearly refers to the deputy already in place at the time the vacancy arises." Giraud Br. 15. According to the Girauds, this interpretation of (a)(1) avoids "the elaborate safeguards in subsections (a)(2), (a)(3), and (b)(1) collaps[ing] into irrelevance." *Id.* at 18. Pina's argument is similarly apt: he points out that the FVRA repeatedly makes expressly clear that "the President (and only the President)" may select the acting officer and that the Government's approach would violate that language by giving the Attorney General broad discretion under the FVRA to appoint acting PAS officers by designating them first assistants. Pina Br. 27–28; *see also* 5 U.S.C. § 3345(a)(2), (a)(3), (c)(1).

Indeed, the upshot of the Government's argument is that, while subsections (a)(2) and (a)(3) narrowly constrain

who "the President (and only the President)" may direct to take an acting role, subsection (a)(1) allows the President or Attorney General to, in effect, appoint almost anyone, whether or not the person is previously Senate-confirmed to another role, and whether or not the person has any recent experience in the agency. To overcome a superfluity argument, the Government contends that "subsections (a)(2) and (a)(3) . . . play an important role" when the first assistant job itself is a PAS office and also vacant when the primary office is vacant. Appellant's Br. 22. It provides one example: the roles of Secretary of State and its first assistant, Deputy Secretary of State. *Id.*; *see also* 22 U.S.C. § 2651a(a)(2). But this would seem to be a rare circumstance compared to first assistant jobs that are not PAS offices. The Government's reading would render subsections (a)(2) and (a)(3) mostly superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001) (rejecting an interpretation that would effectively render statutory language superfluous except in "the most unusual circumstances").

In addition, the Government's reading would create surplusage out of 28 U.S.C. § 546, which provides that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," 28 U.S.C. § 546(a), with the appointment limited to 120 days, *id.* § 546(c)(2). According to the Government, Congress passed § 546 allowing the Attorney General to appoint almost anyone Interim U.S. Attorney for a strictly limited 120-day period, and Congress simultaneously intended the generally applicable FVRA to allow the appointment of almost anyone to automatically assume the Acting U.S. Attorney role for 210 days (or more when the time limit is tolled during pending nominations), nearly double § 546's 120-day allotment. That

reading renders § 546(b) and (c)(2) meaningless. *See TRW Inc.*, 534 U.S. at 29.

The Government further argues that the statutory structure supports its view because in other parts of § 3345, Congress used "backward-looking language that makes eligibility for acting service . . . depend on the state of affairs during the time preceding the vacancy." Appellant's Br. 19. The lack of a "backward-looking eligibility requirement" in (a)(1), says the Government, supports its view of the vacancy as a continuing state and, therefore, (a)(1) applies at any time during the vacancy. *Id.* at 20. But there is a logical reason for the fact that subsection (a)(1) does not impose "backward-looking" restrictions, *id.* at 19, while subsections (a)(2) and (a)(3) do. Subsection (a)(1) is automatic and requires no participation by the Executive or anyone else—when the vacancy arises, the first assistant "shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). It is triggered at a single instance: the moment the vacancy arises. Subsections (a)(2) and (a)(3), on the other hand, include backward-looking language because the President may use these alternative methods at any time after the vacancy arises, but his choices are cabined to a certain subset of qualified individuals, and those qualifications are determined by looking backward from the moment the vacancy arose.

The Government finally argues that past practice by various administrations indicates its reading of the statute aligns with Congress's intent. This argument is unpersuasive. First, just because a practice previously went unchallenged does not mean it complies with the FVRA. *See Medellin v. Texas*, 552 U.S. 491, 531–32 (2008) (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)) ("[T]he Court has been careful to note that '[p]ast practice does not, by itself, create

power.'"). Second, in 2020, the Government "failed to identify a single example of a post-vacancy first assistant serving in an acting capacity prior to enactment of the FVRA." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27–28 (D.D.C. 2020). This indicates that any existing practice of elevating later-named first assistants is a recent development ripe for review—not a practice to which Congress has acquiesced or a process essential to the Government's ability to function.

Third, Congress replaced the previous Vacancies Act with the FVRA in response to the Executive branch's widespread practice—dating back through several administrations—of appointing temporary designees in contravention of existing law and the Appointments Clause.[3] By 1998, many "acting officers filled high-level positions, sometimes in obvious contravention of the Senate's wishes," beyond the then-120-day limitation period. *SW Gen.*, 580 U.S. at 295. "Perceiving a threat to the Senate's advice and consent power," Congress "replaced the Vacancies Act with the FVRA." *Id.* The final statute was a compromise: Congress granted the Executive additional flexibility by lengthening the limitations period and expanding "the pool of individuals the President could appoint as acting officers." *Id.* at 307. But while it granted this added flexibility, Congress—as it has done

---

[3] This statutory history is "the sort of textual evidence everyone agrees can sometimes shed light on meaning." *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting). It is not legislative history—for example, the committee reports and statements from individual Senators to which the parties in these cases sometimes cite—"the mining of which is 'disfavored' as a statutory interpretation strategy." *Al-Hasani*, 81 F.4th at 298 n.4 (quoting *Thomas v. Reeves*, 961 F.3d 800, 817 n.45 (5th Cir. 2020) (Willett, J., concurring)).

on many occasions since George Washington's first Presidential term—acted in response to the "interbranch conflict" and "tensions" arising from the Executive branch's continued attempts to contravene the Senate's advice-and-consent power. *See id.* at 294–95.

Textually and structurally, within the context of the full statutory framework Congress has provided, the Government's reading of the FVRA's first assistant provision is not persuasive because it renders other FVRA and § 546 provisions mostly superfluous. Rather, we agree with the District Court that "[t]he most natural reading" of subsection (a)(1) is that only the first assistant in place at the time of the vacancy automatically assumes acting status under the FVRA because it is the reading that "better harmonizes the various provisions in [the FVRA and § 546] and avoids the oddities that [the Government's] interpretation would create." *Rep. of Sudan v. Harrison*, 587 U.S. 1, 8, 15 (2019). Therefore, Habba is not eligible to serve as Acting U.S. Attorney under the FVRA's first-assistant provision, 5 U.S.C. § 3345(a)(1), because she was not the First Assistant U.S. Attorney at the time the vacancy arose.

2.

Even if the FVRA's first assistant provision did allow a later-appointed first assistant automatically to ascend to the role of acting officer, Habba would still need to overcome the FVRA's nomination bar. The FVRA provides that "a person may not serve as an acting officer for an office under this section, if . . . the President submits a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1).

The Government argues that the nomination bar does not apply to Habba because it is limited to pending nominees

20

only. It contends that use of the present-tense "submits" in the statute "requires consideration of the status at the time of the covered action, not before." Appellant's Br. 26. Because "the covered action is Ms. Habba's acting service," the Government says, "the focus of the statute is on her nomination status at the time of her acting service, not when her nomination was pending in the past." *Id.*

The problem for the Government is the lack of textual support for its position. Nothing in the statute indicates the bar lifts when a nomination is no longer pending. "Submit" means "to present or propose to another for review, consideration, or decision." Submit, Merriam-Webster.com.[4] The phrase "the President submits a nomination" suggests a one-time action: the President's "submi[ssion]" of "a nomination." 5 U.S.C. § 3345(b)(1)(B). "[I]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . words used in the present tense include the future as well as the present." *Carr v. United States*, 560 U.S. 438, 448 (2010) (quoting 1 U.S.C. § 1).

The present act in question is the President's submission of the nomination. There is a time before "the President submits a nomination," and there is a time after "the President submits a nomination." 5 U.S.C. § 3345(b)(1)(B). Just because the President later may withdraw the nomination does not erase the fact that he submitted it. Here, the President undisputedly took the statutory action—"submit[ted] a nomination"—on June 30 when he nominated Habba for U.S. Attorney. The FVRA includes no additional language to indicate that her

---

[4] https://perma.cc/3299-7SVC.

nomination needs to be pending for the bar to continue to apply.

The Government's primary response to this clear statutory language is its claim that this interpretation of the nomination bar constitutes a "lifetime ban," arguing that such a ban is "disproportionate to the separation-of-powers problem that Congress sought to address in" this subsection of the FVRA. Appellant's Br. 27. The Girauds, on the other hand, call this "lifetime ban" argument "a straw man" and contend that the ban is meant to last only for the duration of the vacancy at issue. Giraud Br. 32. "Because Ms. Habba was nominated to fill this specific vacancy," the Girauds conclude, "she is barred from acting service during its duration." *Id.*[5]

The text and structure of the statute align with the defendants' arguments, not the Government's. The FVRA is triggered when a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). "[T]he person serving as an acting officer as described under section 3345" is time-limited, and that limitation is calculated based on "the date the vacancy occurs."

---

[5] Pina additionally cites *SW General* in support of the application of the nomination bar. Pina Br. 40–41. This reliance is misplaced. While the decision includes language that facially aligns with the defendants' interpretation, the Supreme Court declined to decide whether the nomination bar continues to apply after a nomination is withdrawn. *SW Gen.*, 580 U.S. at 298 n.2 (noting that the Court "proceed[ed] on the same assumption" as the Court of Appeals); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 72 n.3 (D.C. Cir. 2015) (noting that although the nomination was no longer pending, the Board did "not argue that [this] should make a difference in our analysis," so the Court assumed it did not).

*Id.* § 3346(a)(1). The FVRA provides that "[i]f the first nomination for the office" is rejected or withdrawn, then "the [eligible acting officer] may continue to serve as the acting officer" for a set period afterward. *Id.* § 3346(b)(1). Likewise for a second rejected or withdrawn nomination. *Id.* § 3346(b)(2)(B). The use of the word "continue" indicates that eligibility for acting officer status remains tied to the PAS officer vacancy—the acting officer may continue to be the first assistant who automatically assumed acting officer status when the vacancy occurred or, if the President so decides, an eligible PAS officeholder or an experienced agency employee. *Id.* § 3345(a)(1)–(3).

After a new PAS officer is confirmed by the Senate for a vacant PAS office, the FVRA no longer has any effect. When that new PAS officer later "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the FVRA is freshly triggered, with re-set time limitations under § 3346. *Id.* § 3345(a). Given that the FVRA operates anew with each vacancy, the best reading of the nomination bar is that it prohibits from acting service those whose nomination the President submits for the vacant office that triggered the FVRA in the first place.

Additionally, the Government's reading of the nomination bar cuts against its own separation-of-powers argument. Its interpretation would mean that even rejected nominees—not merely withdrawn nominees—could serve as later-appointed acting officers under the FVRA. That interpretation simply does not fit with the FVRA's structure. The nomination bar in subsection (b) is part of an overall statutory scheme that includes subsections (a)(1), (2), and (3), and taken together, they indicate Congress's intent to preserve the Senate's advice-and-consent role and provide a narrowly cabined pool of eligible people who can temporarily fill the

23

acting role. A statute that clearly prevents both rejected and withdrawn nominees from serving as later-appointed acting officers during the vacancy in question is not "disproportionate to the separation-of-powers problem that Congress sought to address in" the FVRA. Appellant's Br. 27. On the contrary, allowing rejected (and withdrawn) nominees to serve as later-appointed acting officers during that vacancy would significantly undercut Congress's solution to its separation-of-powers concerns.

Based on the text of subsection (b) and its context within the overall structure of the FVRA, we conclude that a person continues to be ineligible for acting officer status after the President withdraws her nomination because the withdrawal of a nomination necessarily happens after "the President submits a nomination." Therefore, the nomination bar prevents Habba from serving as Acting U.S. Attorney under the FVRA.

## B.

The Government contends that, even if Habba is not the Acting U.S. Attorney under the FVRA, she nonetheless "may continue to exercise prosecutorial and supervisory authority . . . pursuant to the Attorney General's express delegation of authority to her in her capacity as Special Attorney and First Assistant U.S. Attorney." Appellant's Br. 27. This broad delegation is directly contrary to the exclusivity provision of the FVRA.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office," 5 U.S.C. § 3347(a), unless a statute expressly authorizes another means of acting or interim service in a specified office, *id.* § 3347(a)(1). As we have already discussed, § 546, which specifically authorizes the Attorney General to designate an interim U.S. Attorney for a 120-day

term, is just such a statute. But the FVRA also prohibits the use of general vesting and delegation statutes to "temporarily authoriz[e] an acting official to perform the functions and duties" of a PAS office. *Id.* § 3347(a), (b).

The Attorney General appointed Habba as a Special Attorney pursuant to 28 U.S.C. § 515. Congress has vested "[a]ll functions" of the Department of Justice (with a few exceptions irrelevant here) "in the Attorney General." 28 U.S.C. § 509. The Attorney General may "authoriz[e] the performance by any other . . . employee . . . of the Department of Justice of any function of the Attorney General." *Id.* § 510. Habba's appointment came with a delegation authorizing Habba to "conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct." App. 161. The District Court held that this broad language in the appointment letter conferred on Habba the "full panoply of powers of a" U.S. Attorney. *Giraud*, 2025 WL 2416737, at *20. It also noted that "it is no mere coincidence that Habba was named a Special Attorney and delegated this authority as part of a single series of moves made with the express goal of installing her as the Acting United States Attorney." *Id.* at *21.

The Government claims that the Attorney General "validly delegated to Ms. Habba . . . the authority to conduct and supervise legal proceedings in the District of New Jersey." Appellant's Br. 29. And the Government expressed at oral argument its view that Habba's authority is "coextensive and coterminous" with that of a U.S. Attorney, Oral Arg. Tr. 5, with no time limit on the performance of those "functions by delegation," *id.* at 29; *see also id.* ("[O]ur view is that there are no exclusive functions" of the office of U.S. Attorney that cannot be delegated). As the District Court found, the Attorney

25

General thus attempted to delegate to Habba the full panoply of powers of a U.S. Attorney.

This *de facto* U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision. 5 U.S.C. § 3347(a), (b). The vesting and delegation statutes in 28 U.S.C. §§ 509 and 510 are "statutory provision[s] providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency," and so they do not overcome the FVRA's exclusivity provision. 5 U.S.C. § 3347(b). Under the Government's delegation theory, Habba may avoid the gauntlet of presidential appointment and Senate confirmation and serve as the *de facto* U.S. Attorney indefinitely. This view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546.

The Government's arguments to the contrary are unavailing. The Government first contends that the FVRA's exclusivity provision does not apply to Habba because it applies only to acting officials and Habba is not an acting official—rather, she was delegated "the office's delegable duties," something the Government views as quite different than being an acting official. Appellant's Br. 34. The Government says that acting officials can perform all powers of the office—including those that are non-delegable—whereas non-acting officials like Habba can perform only

26

delegable powers that have been delegated to them. *Id.* 33–35.[6]
The Government asserts that "the FVRA concerns the means
of designating an 'acting official' to perform all the functions
and duties of an office, not the means of delegating some or all
the office's delegable duties to a non-acting official." *Id.* at 34.
Because § 3347(a) does not specifically refer to delegation, the
Government reasons that the exclusivity provision is
inapplicable to officials exercising delegated powers, rather
than powers assumed under the FVRA. *Id.*

The Government reads into the FVRA a distinction that
is not there. An acting officer is simply one who "perform[s]
the functions and duties of the office temporarily in an acting
capacity subject to the time limitations of section 3346." 5
U.S.C. § 3345(a)(1). Section 3347(a)(1) similarly refers to an
acting official as one who "perform[s] the functions and
duties" of a PAS office "temporarily in an acting capacity." *Id.*
§ 3347(a)(1). The statutory language indicates that an acting
official is one who performs the functions and duties of an
office, so contrary to the Government's suggestion, Habba is
an acting official subject to the FVRA's limitations.[7] The
FVRA is clear that the Government cannot sidestep the FVRA
by using a "statutory provision providing general authority to

---

[6] Regardless of any distinction between an acting
official and a non-acting official, the Government's position
is that there are no differences between Habba's powers and
the powers of a Senate-confirmed U.S. Attorney. Oral Arg.
Tr. 21–22.

[7] The Government agrees that "[a]n acting designation
is a designation of duties." Oral Arg. Tr. 4.

the head of an Executive agency . . . to delegate duties." 5 U.S.C. § 3347(b).

Next, the Government points to decisions from both our Court and our sister courts of appeals that, it says, support its contention that the FVRA's exclusivity provision does not bar a "non-acting official" from exercising delegable powers. Appellant's Br. 37–39. None of these cases support the delegation of authority at issue here.

Our Court's discussion of delegable and non-delegable duties in *Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022), occurred in the context of the FVRA's remedial provisions found in 5 U.S.C. § 3348. That section provides that when a PAS office is vacant, and no one is filling the office on an acting basis under the FVRA, the office remains vacant and "only the head of [the] Executive agency may perform any function or duty of such office." 5 U.S.C. § 3348(b). "An action taken by" any other person "shall have no force or effect" and "may not be ratified." *Id.* § 3348(d). Section 3348 defines "function or duty" for the purposes of that section as "any function or duty of the applicable office that . . . is required by statute to be performed by the applicable officer (and only that officer)." *Id.* § 3348(a)(2)(A)(ii). The qualifier "and only that officer" means that § 3348 applies only to non-delegable duties. *Kajmowicz*, 42 F.4th at 148. Therefore, if a statute "expressly bar[s] subdelegation or mandate[s] exclusivity, then the authority constitutes a 'function or duty.' If not . . . officials may ratify exercises of that authority under the [FVRA]." *Id.* at 149 (quoting 5 U.S.C. § 3348(a)(2)(A)).

But *Kajmowicz* is inapplicable. That case was about the *ex-post* ratification of an acting officer's action. An acting Attorney General promulgated a rule under the Attorney General's statutory authority. *Id.* at 146. Regardless of whether

the acting Attorney General was properly appointed, the Senate-confirmed Attorney General William Barr later ratified the rule. *Id.* We said the ratification was valid because the Attorney General's rulemaking authority granted by the firearms-related statute at issue was delegable—there was no question that the Attorney General could have delegated that authority to the Director of the Bureau of Alcohol, Tobacco, and Firearms, for example. *Id.* at 150. We declined to address whether the acting officer was improperly appointed because the later ratification of the rule was dispositive. *Id.* at 144. Indeed, we noted the acting officer issue "raised significant and largely unresolved constitutional and statutory questions." *Id.*

Here, we are not concerned with which of Habba's actions the Attorney General or a later-Senate-confirmed U.S. Attorney could ratify. Rather, the issue before us is whether the Attorney General can broadly delegate to Habba the authority "to conduct in the District of New Jersey, any kind of legal proceedings . . . which United States Attorneys are authorized to conduct," pursuant to 28 U.S.C. §§ 509 and 510. App. 161.

Of the out-of-circuit cases, only *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), addresses the effect, if any, of the FVRA's exclusivity provision on officials exercising delegated powers, and *Arthrex* is not persuasive. That case involved a challenge to a decision by the Commissioner for Patents denying Arthrex's request for the Director of the Patent and Trademark Office to review a Patent Trial and Appeals Board decision. *Arthrex*, 35 F.4th at 1332. Because the offices of both the Director and the Deputy Director were vacant, the Commissioner exercised the "non-exclusive functions and duties of the [Director]" to deny Arthrex's request. *Id.* Arthrex argued that the FVRA precluded the Commissioner from ruling on the rehearing request, but the Federal Circuit held that the "the FVRA applies only to non-

29

delegable duties" and "deciding rehearing requests is a delegable duty." *Id.* at 1335 (citing 5 U.S.C. §§ 3348(a)(2), (d)(1)–(2)). The court also believed that its reading of § 3348(a)(2) did not conflict with § 3347(b) because "§ 3347(b) makes clear that the FVRA still applies to . . . nondelegable duties." *Id.* at 1338.

Of course, *Arthrex* is not binding on our Court. Notably, despite quoting some language from *Arthrex*, we chose not to adopt the Federal Circuit's reasoning when deciding *Kajmowicz* and instead focused our analysis on the text of § 3348. *Kajmowicz*, 42 F.4th at 147–52. The Federal Circuit in *Arthrex* applied the definition of "function or duty" in § 3348(a)(2) to the entire FVRA. 35 F.4th at 1335–36. But that definition expressly applies only "[i]n this section," namely, the remedial provisions in § 3348. *See* 5 U.S.C. § 3348(a)(2). Based on this textual limitation, we decline the Government's invitation to apply the Federal Circuit's reasoning to this case.

The remaining cases the Government cites all relate to § 3348 rather than § 3347. *Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. U.S. Department of Homeland Security*, 107 F.4th 1064 (9th Cir. 2024), like our decision in *Kajmowicz*, considered whether the ratification bar of § 3348(d)(2) applied "only to 'functions or duties' that are singularly entrusted by statute or regulation to that officer, and in other words are 'nondelegable.'" *Id.* at 1068. The Ninth Circuit also stated that its holding with respect to the meaning of "function or duty" in § 3348 did "not alter § 3347(b)'s dictate regarding general vesting-and-delegation statutes." *Id.* at 1078. Similarly, the Second Circuit in *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir. 2009), relied solely on § 3348 to determine that acknowledgment of the existence of Indian tribes was not a function or duty required to be performed only by the Assistant Secretary of the Interior,

*id.* at 135, and it never mentioned the FVRA's exclusivity provision, *see generally id.* at 134–35. In *Stand Up for California! v. U.S. Department of the Interior*, 994 F.3d 616 (D.C. Cir. 2021), the District of Columbia Circuit cited § 3348, not § 3347, and the appellants did not raise their FVRA claims on appeal, so the FVRA was merely a "guidepost[] . . . in analyzing the challenge to delegated authority." 994 F.3d at 622 n.2; *see also id.* at 622.

Finally, the Government argues that interpreting the FVRA's exclusivity provision to bar individuals from exercising delegable powers would undermine the operation of the federal government. Appellant's Br. 45. But even if that might be a consequence of Congress's enactment of the FVRA exclusivity provision, we are not tasked with resolving such policy concerns. *See United States v. Safehouse*, 985 F.3d 225, 238 (3d Cir. 2021) ("The public-policy debate is important, but it is not one for courts."). Regardless, the Government concedes that it is not aware of any powers of a U.S. Attorney that are not delegable. Appellant's Br. 43. And it recognizes the implication of its reading—that the FVRA's exclusivity provision creates "only a minimal constraint" preventing a temporary official like Habba from using a formal "Acting" title while still allowing her to exercise all the powers of the vacant office. *Id.* at 43–44. This delegation theory would create a means for the Department of Justice to circumvent the FVRA's exclusivity provision, effectively permitting anyone to fill the U.S. Attorney role indefinitely. This should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute. *See* 5 U.S.C. § 3346; 28 U.S.C. § 546(c)(2); *see also Eaton*, 169 U.S. at 343

(acting or interim service in a PAS office is permitted for a "limited time, and under special and temporary conditions.").

Moreover, as the District Court noted, our decision that the delegation of all the powers of a U.S. Attorney would run afoul of the FVRA's exclusivity provision does not necessarily mean that some delegation by the Attorney General to Habba—or to any First Assistant U.S. Attorney—would not be permissible. *Giraud*, 2025 WL 2416737, at *26 n.257. The Government is dismissive of this view, claiming that delegation to multiple individuals rather than one results in a "*reductio ad absurdum*." Appellant's Br. 45. "It is not evident," it asserts, "why that distinction would be material." *Id.* But it might be material, as it is possible a more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision—though we do not decide that today because those are not the facts of this case. As it stands, Habba alone is exercising all the powers of a U.S. Attorney, making her an Acting U.S. Attorney whose appointment is not FVRA-compliant.

### IV.

Habba is not the Acting U.S. Attorney for the District of New Jersey by virtue of her appointment as First Assistant U.S. Attorney because only the first assistant in place at the time the vacancy arises automatically assumes the functions and duties of the office under the FVRA. Additionally, because Habba was nominated for the vacant U.S. Attorney position, the FVRA's nomination bar prevents her from assuming the role of Acting U.S. Attorney. Finally, the Attorney General's delegation of all the powers of a U.S. Attorney to Habba is prohibited by the FVRA's exclusivity provision. Therefore, we will affirm the District Court's disqualification order.

## DECLARATION OF ALINA HABBA

I, Alina Habba, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. On December 1, 2025, a panel of the United States Court of Appeals for the Third Circuit affirmed the order of the United States District Court for the District of New Jersey (Hon. Matthew W. Brann, Ch. U.S.D.J., sitting by designation) disqualifying me from the *Giraud* and *Pina* prosecutions on the grounds that I cannot lead the U.S. Attorney's Office for the District of New Jersey (USAO-NJ) as Acting U.S. Attorney or through being delegated the powers of a U.S. Attorney. *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025).

2. As a result, on December 8, 2025, I resigned from the USAO-NJ and accepted appointment as Senior Advisor to the Attorney General for U.S. Attorneys. I still would have resigned from the USAO-NJ, however, even if the Attorney General had not appointed me to my current position, because I did not and do not want the controversy over my authority to lead the USAO-NJ to interfere with the Office's critical and important work.

3. If the Court of Appeals en banc or the Supreme Court reverses the decisions of the *Giraud* panel and Chief Judge Brann, I intend to return to my prior position leading the USAO-NJ.

I declare, under penalty of perjury, that the foregoing is true to the best of my knowledge and belief.

_____
Alina Habba
Senior Advisor to the Attorney General
U.S. Department of Justice

Date: January 13, 2026